UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA HEALTHCARE SYSTEM, INC., d/b/a/ SOUTHERN CALIFORNIA HOSPITAL AT CULVER CITY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CULVER CITY; MAYOR ALEX FISCH, in his official capacity; VICE MAYOR DANIEL LEE, in his official capacity; COUNCIL MEMBER YASMINE-IMANI MCMORRIN, in her official capacity; COUNCIL MEMBER ALBERT VERA, in his official capacity; COUNCIL MEMBER GORAN ERIKKSSON, in his official capacity,<br><br>Defendants. | Case No. 2:21−cv−05052−MCS−RAO<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION [11] AND MOTION TO FILE AMICUS BRIEF [37]** |

Plaintiff Southern California Healthcare System, Inc. ("SCHCC") seeks to enjoin enforcement of "An Ordinance of the City of Culver City, State of California,

1

Establishing Hazard Pay for On-Site Hospital Workers at Covered Hospitals" (the "Ordinance," ECF No. 12-1), adopted by defendant City of Culver City (the "City") on June 14, 2021 and effective on July 14, 2021. *See* Mot. for Prelim. Inj. ("Motion"), ECF No. 11. Defendants filed an Opposition and SCHCC filed a Reply. Opp'n, ECF No. 26; Reply, ECF No. 44. The Court considered the brief attached to the Motion to File Amicus Brief (ECF No. 37) and therefore denies that motion as moot. The Court held oral arguments and took the matter under submission.

## I. BACKGROUND

The Ordinance requires that "On-Site Hospital Workers" at "Covered Hospitals" receive five additional dollars per hour for 120 days beginning July 14, 2021. SCHCC, the City's only acute care hospital, is the only "Covered Hospital" subject to the Ordinance. The Ordinance specifically provides:

> Hospital Workers shall be entitled to no less than five dollars ($5.00) per hour in Premium Hazard Pay for each hour worked on-site at a Covered Hospital in the City for an Employer. If an Employer already provides hourly Premium Hazard Pay as of the effective date of this Ordinance, such compensation shall be credited as part of the additional five dollars per hour required by this section. In no event shall any Premium Hazard Pay provided prior to the effective date of this Ordinance be credited as part of the compensation due under this section.

Ordinance at p. 11.

> Section 5, Exemption for Collective Bargaining Agreement, states:
>
> All of the provisions of this Ordinance, or any part thereof, may be expressly waived in a collective bargaining agreement, but only if the waiver is explicitly set forth in the agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute a waiver of all or any of the provision of this Ordinance.

*Id.* at p. 13.

> Section 6, No Waiver of Rights, states:
>
> Except for a collective bargaining agreement provision made pursuant to Section 5, any waiver by an Employee of any or all of the provisions of

> this Ordinance shall be deemed contrary to public policy and shall be void and unenforceable.

*Id.*

The Ordinance provides a private right of action to workers aggrieved by a violation. *Id.* at p. 12. "[T]hrough this Ordinance, the City seeks to compensate essential Hospital Workers for their daily sacrifices and the ongoing risks and burdens they and their families face while providing vital services to the community during the pandemic and in the coming weeks and months…" *Id.* at p. 10. The Ordinance continues:

> [B]y requiring premium hazard pay for their work during the COVID-19 pandemic, the City aims (1) to protect the health and welfare of its essential Hospital Workers, their families, and their community; (2) to recognize and compensate Hospital Workers for the risks and burdens they face every day and will continue to face in the coming months; (3) support stable incomes among Hospital Workers; and (4) promote job retention by ensuring Hospital Workers are adequately compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner.

*Id.*

SCHCC has 1,083 employees, 147 of which are non-union employees. *See* Decl. of Rosanne Dickerson ("Dickerson Decl.") ¶¶ 3, 5, ECF No. 11-6. Two unions represent most of SCHCC's non-managerial staff: California Nurses Association and the Service Employees International Union-United Healthcare Workers-West ("SEIU"). *See* Decl. of Luis Padilla Jr. ("Padilla Decl.") ¶ 3, ECF No. 11-2. Two collective bargaining agreements ("CBAs") govern both unions' labor-management relationship with SCHCC. *Id.* ¶ 4. SCHCC and SEIU completed CBA renewal negotiations on April 29, 2021 and SEIU members ratified SEIU's CBA on May 10, 2021. *Id.* ¶ 6. SCHCC agreed to increase wages over a three-year term under the CBAs. *See* Dickerson Decl. ¶ 14.

SCHCC filed this lawsuit on June 22, 2021, alleging in part that the National Labor Relations Act, 29 U.S.C. § 141, *et seq.* ("NLRA") preempts the Ordinance, the Ordinance violates the Equal Protection Clause, and the Ordinance violates the Contract

Clauses of the U.S. and California Constitutions. *See* Compl., ECF No. 1.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit balances these factors using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## III. JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS

Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy. Fed. R. Evid. 201. SCHCC seeks judicial notice of the Ordinance (Ex. A); emails and text messages (Exs. B-E); a Culver City council meeting agenda (Ex. F); and "COVID-19 Positive Healthcare Worker and First Responders Data, Los Angeles County," published by the Los Angeles County Department of Public Health ("LADPH") (Ex. G). *See* Pl.'s Req. for Judicial Not., ECF No. 12. Defendants oppose consideration of Exhibits B-E only. *See* Defs.' Opp'n to Pl.'s Req. for Judicial Not., ECF No. 12.

The Court may consider the Ordinance, meeting agenda, and the proffered data, as they are undisputed matters of public record. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (a court may "take judicial notice of the records of state agencies and other undisputed matters of public record."). The Court does not take judicial notice of reasonably disputed facts in the judicially-noticed documents. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court need not consider the emails and text messages because they have no impact on the Motion's adjudication. *Santa Monica Nativity Scenes Cmte. v. City of Santa Monica*, 784 F.3d 1286, 1298 n.6 (9th Cir. 2015) (denying requests for judicial notice "on the

grounds that the documents to be noticed are irrelevant") (citation omitted). In fact, as shown in the concise Relevant Background section, much of the parties' narrative and declarations offer information or averments that do not bear on the relatively straightforward legal questions before the Court. *Compare* Mot. 5-6 (detailing text messages to impute politicized intent) *with* Reply 2 ("[T]he court need not inquire into the sausage-making of this political 'compromise' in order to grant this motion."). In ruling on the Motion, the Court relies only on relevant evidence. To the extent evidence subject to an objection was not discussed in this Order, that evidence was not relevant to the Motion's adjudication. To the extent evidence is relied on in this Order without discussion of an objection, the objections to that evidence are overruled.

Defendants seek judicial notice of partial transcripts from city council meetings (Exs. A-F); another copy of the Ordinance (Ex. G); LADPH press releases (Exs. K-M); and partial minutes of a city council meeting (Ex. AA). *See* Defs.' Req. for Judicial Not., ECF No. 26-1. The Court considers these documents, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities..., and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"), but not reasonably disputed facts in them. *Lee*, 250 F.3d at 688–89. Remaining evidentiary objections (ECF Nos. 26-2, 44-3) are overruled. *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.") (citing *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept… hearsay for purposes of deciding whether to issue the preliminary injunction.")).

## IV.   DISCUSSION

SCHCC argues that a preliminary injunction must issue because: (1) the NLRA preempts the Ordinance, (2) the Ordinance violates the Equal Protection Clause, and (3)

the Ordinance violates the Contract Clauses of the U.S. and California Constitutions. The Court considers whether SCHCC has established a likelihood of success on each theory in turn.

**A. NLRA Preemption**

SCHCC relies on the *Machinists* preemption,[1] which prevents state and local regulation where "Congress intended that the conduct involved be unregulated because [it should be] left 'to be controlled by the free play of economic forces.'" *Int'l Ass'n of Machinists v. Wis. Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976) (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971)). Namely, *Machinists* preemption precludes states and localities from restricting "economic weapons" of "self-help" permitted by federal law, such as strikes and lockouts. *Id.* at 147. The "NLRA is concerned with ensuring an equitable bargaining process, not with the substantive terms that may emerge from such bargaining." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20-21 (1987). Accordingly, *Machinists* preemption does not preempt "minimum labor standards" which do not affect the process of collective bargaining, but rather set the minimum terms that form the backdrop of the bargaining process. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755-56 (1985). "The Ninth Circuit has… held that in extreme cases, 'substantive requirements could be so restrictive as to virtually dictate the results of the [collective bargaining and self-organizing process].'" *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1187 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016) [hereinafter "*Am. Hotel*"] (quoting *Chamber of Commerce of U.S. v. Bragdon,* 64 F.3d 497, 501 (9th Cir. 1995)).

SCHCC argues that the Ordinance "is an even more extreme intrusion into the bargaining process than" the preempted wage ordinance in *Bragdon* because it "dictates

---

[1] Footnotes in SCHCC's Reply rely on *Garmon* preemption, and SCHCC's briefing ostensibly infers that Section 8(d) of the NLRA is an express preemption provision independent of *Machinist* preemption. The Court disregards the Reply's new preemption grounds and rejects SCHCC's inexplicable attempt to create a novel strand of preemption independent of *Garmon* and *Machinist*.

wages and benefits to be paid as to one employer and then as to only a subset of its employees, nearly all of whom are subject to a CBA." Mot. 10. But the *Bragdon* ordinance mandated exact wages and benefits based solely on third-party collectively bargained agreements. 64 F.3d at 502-03. The ordinance was preempted because it affected "the bargaining process in a much more invasive and detailed fashion" than cases involving minimum wage laws and interfered with collective bargaining that the NLRA protects. *Id.* at 502, 504. The Ordinance here is more like regulation of minimum labor standards upheld on appeal than the intrusive substantive terms decreed in *Bragdon*. *See, e.g., Metro. Life Ins.*, 471 U.S. at 754 (minimum mental health care benefits under insurance policies and employee healthcare plans not preempted); *Fort Halifax,* 482 U.S. at 3-4 (law requiring severance payment to all employees affected by plant closure not preempted); *Am. Hotel*, 834 F.3d at 963–66 (ordinance setting higher minimum wage and paid leave requirements for hotel workers not preempted). Unlike *Bragdon*, the Ordinance here does not command the entire division of employees' compensation—it sets a blanket hourly pay premium without prescribing other wage and benefit requirements. And in contrast to *Bragdon*—where existing CBAs could result in ordinance violations if not renegotiated—SCHCC's current CBAs won't give rise to Ordinance violations. SCHCC stressing that the Ordinance targets one employer and certain employees does not make this case like *Bragdon* with respect to preemption:

> While *Bragdon* emphasized that the Contra Costa County ordinance "targets particular workers in a particular industry," we have since explained on several occasions that the NLRA does not authorize us to pre-empt minimum labor standards simply because they are applicable only to particular workers in a particular industry. It is now clear in this Circuit that state substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market.

*Associated Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 990 (9th Cir. 2004) (citations omitted).

The Ordinance is instead like the ordinance analyzed by the Honorable Otis D. Wright II that mandated similar wage premiums and prohibited reduced pay in response to that ordinance. *Cal. Grocers Assn. v. City of Long Beach*, 2021 WL 736627, at *5 (C.D. Cal. Feb. 25, 2021). In arguing for a preliminary injunction, the plaintiff grocers contended that the ordinance interfered with the mechanics of collective bargaining because it "prohibit[ed] employers from offsetting labor costs by lowering any form of compensation 'in any way.'" *Id.* at *4. Judge Wright denied injunctive relief, finding that the ordinance did not unduly interfere with collective bargaining because, among other things, it did not prohibit all ways in which the grocers could offset increased labor costs incurred by the ordinance. *Id.; see also Nw. Grocery Ass'n v. City of Seattle*, 2021 WL 1055994, at *2-5 (W.D. Wash. March 18, 2021) (no likelihood of NLRA preemption where ordinance conferred premium pay for 120 days); *Nw. Grocery Ass'n v. City of Burien*, 2021 WL 1554646, at *4-5 (W.D. Wash. April 20, 2021) (same).

Judge Wright's reasoning applies to this case. The *Cal. Grocers Ass'n* ordinance and the Ordinance merely prohibit reducing pay or discharging employees *in retaliation* to the ordinance. *See* Ordinance at pp. 12-13. Neither ordinance prohibits offsetting increased compliance costs in *every* way—for example, by reducing benefits for reasons unrelated to the Ordinance. More importantly for preemption purposes, nothing in the Ordinance prohibits future voluntary negotiations between SCHCC and the unions. Quite the opposite, the Ordinance provides that "[a]ll of the provisions of this Ordinance, or any part thereof, may be expressly waived in a collective bargaining agreement…" Ordinance at p. 13. SCHCC assertion that the parties are not obligated to renegotiate does not mean that the Ordinance forecloses negotiations such that preemption is necessary. *Fort Halifax*, 482 U.S. at 21 ("The mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for there is nothing in the NLRA which expressly forecloses all state regulatory power with respect to those issues that may be the subject of collective bargaining.").

In any event, SCHCC's contention that a temporary $5 wage supplement is so

"onerous" that it compels preemption finds no precedential support:

> Plaintiffs cannot identify a single case where any court held that a minimum labor standard was so onerous that it rendered the statute preempted. This makes sense. Establishing preemption in this context is hard to do, and the Supreme Court has cautioned that "preemption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax,* 482 U.S. at 2. The Court ventures to guess that a minimum wage standard would need to have a degree of outrageousness—an amount that is completely arbitrary and has no rational basis with respect to its intended purpose—for it to be considered an extreme case that compels preemption.

*Am. Hotel*, 119 F. Supp. 3d at 1191-92.

The Court declines SCHCC's invitation to make new law by enjoining a legislature's temporary wage supplement on NLRA preemption grounds.[2] SCHCC has not shown it is likely that the Ordinance interferes with the collective bargaining process in a sufficiently "invasive and detailed fashion," nor has it otherwise provided valid grounds to permit preemption. *Am. Hotel*, 834 F.3d at 963 (clarifying that minimum labor standards merely provide the "backdrop for negotiations" and are not preempted by the NLRA, despite the fact that such standards can interfere with labor-management relations); *Fort Halifax*, 482 U.S. at 20 (rejecting argument that a state law "intrude[d] on the bargaining activities of the parties because the prospect of a statutory obligation undercuts an employer's ability to withstand a union's demand for severance pay").

**B. Equal Protection**

SCHCC advances a "class of one" theory under the Equal Protection Clause, arguing that the Ordinance irrationally singles out SCHCC for discrimination. *See* Mot. 11-17. To succeed on a "class of one" theory under the Equal Protection Clause, a plaintiff must demonstrate that a state or local government: (1) "intentionally" (2) treated the plaintiff "differently than other similarly situated" persons (3) "without a

---

[2] At the hearing, SCHCC could not cite a case enjoining an ordinance providing temporary wage increases on NLRA preemption grounds. The Court likewise could find no such authority.

rational basis." *Gerhart v. Lake Cty., Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

SCHCC's equal protection theory is unlikely to succeed because SCHCC identifies no "similarly situated" entity treated differently by the Ordinance. *Elizondo v. City of Junction City*, 669 F. App'x 855 (9th Cir. 2016) (denial of preliminary injunction affirmed where "the situations of other property owners… were not sufficiently similar because they did not present all of the unique issues posed by the" condition affecting the plaintiff's property). The Motion simply states that the Ordinance "treats similarly situated employers different from SCHCC" and cites to the Complaint's allegation that the City contains over two dozen licensed health care facilities. Mot. 11-13 (citing Compl. ¶ 123). But entities "allegedly treated differently in violation of the Equal Protection Clause are similarly situated only when they are 'arguably indistinguishable.'" *Erickson v. Cty. of Nevada ex rel. Bd. of Supervisors*, 607 F. App'x 711, 712 (9th Cir. 2015) (quoting *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008)). SCHCC proffers no competent evidence for this Court to compare SCHCC's relevant characteristics with those of other health care facilities, let alone does it demonstrate that any such facility is "arguably indistinguishable" from SCHCC. *Id.* ("Because the plaintiffs and CWC are not 'arguably indistinguishable,' the district court was correct in concluding that the parties were not similarly situated for purposes of the Equal Protection Clause.") (citation omitted). SCHCC instead focuses on purportedly irrational discrimination "among SCHCC employees." *See* Mot. 12. Yet SCHCC necessarily seeks to enjoin supposed discrimination against *SCHCC*— disparities among SCHCC's *employees* stemming from the Ordinance may support an employee's equal protection claim, but they do not demonstrate that the City treated SCHCC "differently than other similarly situated" entities. *Gerhart*, 637 F.3d at 1022. Without evidence of a similarly situated entity, SCHCC's equal protection claim will fail. *Andy's BP, Inc. v. City of San Jose,* 605 F. App'x 617, 618–19 (9th Cir. 2015) ("Plaintiff cannot state an equal protection claim based on the different treatment that

Andy's BP and Moe's Stop received because the two… are not similarly situated.").

Even if SCHCC established the first two elements of its "class of one" claim, a preliminary injunction would be improper because the Ordinance survives rational basis review. In applying this deferential standard of review, the Court must determine whether there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "Where there are 'plausible reasons' for [legislative] action, 'our inquiry is at an end.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (quoting *Beach Commc'ns*, 508 U.S. at 313-14). "Plausible reasons" support the Ordinance, which intends "to compensate essential Hospital Workers for their daily sacrifices and the ongoing risks and burdens they and their families face while providing vital services to the community during the pandemic and in the coming weeks and months…" Ordinance at p. 10. Its stated purpose continues:

> [B]y requiring premium hazard pay for their work during the COVID-19 pandemic, the City aims (1) to protect the health and welfare of its essential Hospital Workers, their families, and their community; (2) to recognize and compensate Hospital Workers for the risks and burdens they face every day and will continue to face in the coming months; (3) support stable incomes among Hospital Workers; and (4) promote job retention by ensuring Hospital Workers are adequately compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner.

*Id.*

As the City noted in its briefing and at the hearing, SCHCC maintains the City's sole hospital that contains its only emergency room and intensive care unit. SCHCC is thus uniquely suited to treat patients with acute COVID-19 symptoms, and a temporary wage supplement at least arguably advances the legitimate purposes of promoting morale, keeping adequate staffing, and myriad other justifications offered by the City and discerned by the Court. *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990) ("Unless a classification trammels fundamental personal rights or implicates a suspect

11

classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest."). The City's decision not to apply the Ordinance to nursing facilities and other frontline workers subjected to heightened COVID-19 exposure does not warrant its invalidation on equal protection grounds. *See* Mot. 13-16. As the Ninth Circuit observed when upholding an ordinance that impacted businesses in only one part of the City of Berkeley:

> Such legislative decisions are "virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Beach Commc'ns*, 508 U.S. at 316. "'[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.'" *Id.*

*RUI One Corp.*, 371 F.3d at 1155 (citations omitted).

SCHCC's evidence suggesting that modified legislation might more aptly secure the Ordinance's goals does not defeat the existence of a rational basis. *Autotronic Sys., Inc. v. City of Coeur D'Alene*, 527 F.2d 106, 108 (9th Cir. 1975) ("We have before us, as did the District Court, two opposing theories. It is not our function to decide which view is wiser; our role is at an end once we can say that the view chosen by the City council is not irrational.") (citations omitted). Nor do predictions that the worst of the pandemic has passed or claims that covered workers no longer face a public health emergency defeat the existence of a rational basis. *Cal. Grocers Ass'n*, 2021 WL 736627, at *7 (noting that "a mildly elevated mortality risk is *still* an elevated mortality risk, and the City could have rationally decided to compensate grocery workers for taking on such risk by showing up for work."). Finally, that the Ordinance might not precisely enunciate reasons for its distinctions or provide unimpeachable evidence justifying those distinctions is irrelevant to the Court's equal protection analysis. *Beach Commc'ns*, 508 U.S. at 315 ("[T]he absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis.") (citation, internal quotation marks omitted) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992)

(equal protection "does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification")).

In keeping with recent persuasive holdings, this Court finds that SCHCC has not shown a likelihood that the Ordinance is irrational. *See, e.g., W. Growers Ass'n v. Coachella*, 2021 WL 2926015, at *8 (C.D. Cal. July 12, 2021) ("The Ordinance's legislative findings, here, support the rationality of the premium pay requirement. In enacting the Ordinance, the City Council considered a staff report explaining the impact of COVID-19 on agricultural workers, including impacts to the economic insecurity and health of those workers. Thus, the City decided that these risks merited premium pay to compensate those workers for the increased COVID-19-related risks that they face at work."); *Nw. Grocery Ass'n*, 2021 WL 1554646, at *5-7; *Cal. Grocers Ass'n*, 2021 WL 736627, at *6-8. For this additional reason, SCHCC fails to show a likelihood of success on its equal protection claim.

**C. Contract Clauses**

In considering whether SCHCC has established a likelihood of success on its Contract Clauses theory, the Court focuses on the federal standard. *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1097 (9th Cir. 2003) (noting that the "California Supreme Court uses the federal Contract Clause analysis for determining whether a statute violates the parallel provision of the California Constitution.") (citation omitted). The Supreme Court has established a three-step test for determining whether an otherwise valid exercise of police power violates the Contract Clause. "The threshold inquiry is 'whether the [city] law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). "The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected." *Id.* (citation omitted). Courts must also "consider whether the industry the complaining party has entered has been regulated in

the past." *Id.* (citation omitted).

"If the [city] regulation constitutes a substantial impairment, the [city], in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *Id.* (internal citations omitted). The "public purpose need not be addressed to an emergency or temporary situation." *Id.* "Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id.* (cleaned up). "Unless the [city] itself is a contracting party, as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* (cleaned up).

SCHCC fails to establish a likelihood of success on its Contract Clauses theory. First, SCHCC cites no CBA term that the Ordinance substantially impairs. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (specific contractual terms must be substantially impaired to give rise to a violation under the Contracts Clause). SCHCC instead argues that the Ordinance's temporary wage increase so starkly impacts the employer-employee relationship that it axiomatically amounts to a "severe, permanent, and immediate change" in SCHCC's contractual rights. Mot. 19-20 (quoting *Spannaus*, 438 U.S. at 250). But again, the Ordinance allows a CBA to waive "[a]ll of the provisions of this Ordinance" and does not supplant any specific CBA provision. Ordinance at p. 13. SCHCC can renegotiate the CBAs without running afoul of the Ordinance, and violation of obligations imposed by the Ordinance confers a private right of action *under the Ordinance*—obligations and consequential remedies under the CBAs remain effective. *Id.* at p. 12; *see also RUI One Corp,* 371 F.3d at 1149 ("RUI has failed to identify any specific implied contractual right it enjoys as a result of its lease agreement with the City that is impaired, substantially or not, by the Marina Amendment."). Alleged impairment of the CBAs is even less problematic in this

14

instance, as the "parties are operating in a heavily regulated industry." *Energy Rsrvs. Grp.,* 459 U.S. at 413 (employer's prior regulation considered in assessing existence of substantial impairment).

Contrary to SCHCC's argument, the Ordinance is unlike the intrusive law in *Spannaus,* which "did not operate in an area already subject to state regulation at the time the company's contractual obligations were undertaken, but invaded an area never before subject to regulation by the State." 438 U.S. at 250. That "law was not even purportedly enacted to deal with a broad, generalized economic or social problem" and retroactively imposed novel contractual obligations. *Id.* It "did not effect simply a temporary alteration of the contractual relationships of those within its coverage, but worked a severe, permanent, and immediate change in those relationships—irrevocably and retroactively." *Id.* at 249-50. The Ordinance, on the other hand, (1) is temporary; (2) concerns a heavily regulated industry; (3) is not retroactive; and (4) responds to pressing societal problems stemming from a global pandemic.

Because SCHCC has not shown that the Ordinance substantially impaired a contractual relationship, its Contract Clauses theory is unlikely to succeed. But even if the Ordinance substantially impaired a contract, SCHCC is unlikely to prove a Contract Clause violation. SCHCC cannot dispute that the City has a legitimate interest in paying essential healthcare workers "for their daily sacrifices and the ongoing risks and burdens they and their families face while providing vital services to the community during the pandemic and in the coming weeks and months…" Ordinance at p. 10. As discussed, the City proffers evidence and argument that the temporary pay increase will encourage retention of essential workers and consequently promote continuity of critical emergency services that are otherwise unavailable in the City. These are precisely the kind of "significant and legitimate" public purposes sufficient to withstand a Contract Clause challenge, and the Court cannot rewrite legislation in accordance with SCHCC's purported "more moderate course." *Energy Rsrvs. Grp.,* 459 U.S. at 412-413 ("Unless the State itself is a contracting party… courts properly defer to legislative judgment as

to the necessity and reasonableness of a particular measure.") (citation omitted). SCHCC relying on inapposite cases involving legislative modification of the government's *own* contracts in asking this Court to second-guess the Ordinance's readily distinguishable pursuit of legitimate goals highlights the tenuousness of SCHCC's proposed standard of review. Mot. 19. The Court cannot, as SCHCC suggests, find a Contract Clause violation based on evidence that the Ordinance does not encompass other deserving workers, that it could be tailored to more effectively achieve its stated aims, or that the wage supplements last for an "arbitrary" 120-day period. *Energy Rsrvs. Grp.,* 459 U.S. at 412-413. The Court must defer to the legislature, and in so doing, finds that SCHCC fails to establish a likelihood that the Ordinance would not survive the second and third step of the Contract Clause analysis.

## V. CONCLUSION

SCHCC fails to show a likelihood of success on the merits on any of its theories and the Court need not consider the remaining *Winter* factors. SCHCC's Motion for a Preliminary Injunction is denied.

**IT IS SO ORDERED.**

Dated: July 23, 2021

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE