JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
CHRISTOPHER MARK PISANO, Bar No. 192831
christopher.pisano@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
Suite 1000
Irvine, California  92612
Telephone:   (949) 263-2600
Facsimile:    (949) 260-0972

Attorneys for Defendants
City of Culver city, Mayor Alex Fisch, Vice Mayor
Daniel Lee, Council Member Yasmine-Imani
McMorrin, Council Member Goran Eriksson, and
Council Member Albert Vera

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SOUTHERN CALIFORNIA HEALTHCARE SYSTEM, INC., a California Corporation d/b/a SOUTHERN CALIFORNIA HOSPITAL AT CULVER CITY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CULVER CITY, a charter municipality; MAYOR ALEX FISCH, in his official capacity; VICE MAYOR DANIEL LEE, in his official capacity; COUNCIL MEMBER YASMINE-IMANI McMORRIN, in her official capacity; COUNCIL MEMBER GORAN ERIKSSON, in his official capacity; and COUNCIL MEMBER ALBERT VERA, in his official capacity,<br><br>Defendants. | Case No. 2:21-cv-05052-MCS-RAO<br>Hon. Mark C. Scarsi<br><br>**DEFENDANTS CITY OF CULVER CITY, MAYOR ALEX FISCH, VICE MAYOR DANIEL LEE, COUNCIL MEMBER YASMINE-IMANI MCMORRIN, COUNCIL MEMBER GORAN ERIKSSON, AND COUNCIL MEMBER ALBERT VERA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 25, 2021<br>Time:          9:00 a.m.<br>Dept:          7C<br>Action Filed:  June 22, 2012 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 25, 2021 at 9:00 a.m., or as soon thereafter as the Court may schedule hearing, Defendants City of Culver City, Mayor Alex Fisch, Vice Mayor Daniel Lee, Council Member Yasmine-Imani McMorrin, Council Member Goran Eriksson, and Council Member Albert Vera (the "City" or "Defendants") will and hereby do move the Court to dismiss the First Amended Complaint of Plaintiff Southern California Healthcare System, Inc., d/b/a/ Southern California Hospital at Culver City ("Plaintiff" or "SCHCC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

SCHCC's First Amended Complaint and each count therein fail to state a claim for relief. The First Count fails to state a claim because the City's Ordinance is not preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157–158 as it does not regulate the process of collective bargaining and because Section 8(d) is not expressly preemptive, like every other section of the NLRA.

The Second and Third Counts fail because Plaintiff fails to identify a similarly situated entity and the Ordinance is subject to and survives the rational basis test.

The Fourth and Fifth Counts fail because the Ordinance impairs no contract term and survives the deferential test applicable to governmental regulation of private contracts.

The Sixth and Seventh Counts fail because the Ordinance is not a bill of attainder and inflicts no legislative punishment.

The Eight Count fails because the Ordinance is not "special legislation."

The Ninth and Tenth Counts Fail because the Ordinance is subject to and survives the deferential rational basis test.

The Eleventh Count fails because Plaintiff's underlying constitutional claims fail.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    This motion is made following a conference of counsel pursuant to L.R. 7–3
2    which took place on September 15, 2021.

3    This motion is based on the accompanying Memorandum of Points and
4    Authorities, the concurrently filed Request for Judicial Notice and Declaration of
5    Daniel Richards, on the full records in this matter, and on such further briefing and
6    argument as the Court may allow.

7    Dated:  September 22, 2021                    BEST BEST & KRIEGER LLP

8

9                                                 By:*/s/ Christopher M. Pisano*
10                                                    JEFFREY V. DUNN
                                                     CHRISTOPHER M. PISANO
11                                                   DANIEL L. RICHARDS
                                                     Attorneys for Defendants
12                                                   City of Culver city, Mayor Alex
                                                     Fisch, Vice Mayor Daniel Lee,
13                                                   Council Member Yasmine-Imani
                                                     McMorrin, Council Member Goran
14                                                   Eriksson, and Council Member
                                                     Albert Vera

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 1

    A.    The Ordinance ................................................................................... 1

    B.    Enactment of the Premium Pay Ordinances in the City ................... 2

III.  LEGAL ARGUMENT ................................................................................ 3

    A.    Legal Standard ................................................................................... 3

    B.    The Police Power Includes the Power to Regulate Wages ................ 3

    C.    The First Count for NLRA Preemption Fails Because the NLRA
          Does not Preempt the Ordinance ....................................................... 4

        1.    There is a Strong Presumption Against Preemption ................. 5

        2.    The Ordinance is not Preempted Under Machinists ................. 5

        3.    Bragdon is Inapplicable ........................................................... 7

        4.    Section 8(d) of the NLRA is not Preemptive ........................... 9

    D.    The Second and Third Counts Fail Because the Ordinance does
          not Violate the Equal Protection Clause .......................................... 10

        1.    Plaintiff Fails to Allege the Existence of a Similarly
             Situated HealthCare Facility ................................................... 10

        2.    The Ordinance is Supported by a Rational Basis .................... 12

    E.    The Fourth and Fifth Counts Fail Because the Ordinance Does
          not Violate the Contracts Clause ...................................................... 15

        1.    The Ordinance does not Impair SCHCC's Contracts .............. 16

        2.    The Ordinance is an Appropriate and Reasonable Way to
             Advance a Significant and Legitimate Public Purpose ........... 16

    F.    Plaintiff's Sixth and Seventh Counts for Bill of Attainder Fail ........ 19

    G.    Plaintiff's Eighth Count for "Special Legislation" Fails .................. 21

    H.    Plaintiff's Ninth and Tenth Due Process Counts Fail ....................... 22

    I.    Plaintiff's Eleventh Count Under Section 1983 Fails ....................... 24

IV.   CONCLUSION .......................................................................................... 25

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Allied Structural Steel Co. v. Spannaus*
  438 U.S. 234 (1978) ................................................................... 15, 18

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*
  119 F.Supp.3d 1177 (C.D. Cal. 2015) ............................................. 6

*American Hotel and Lodging Association v. City of Los Angeles*
  834 F.3d 958 (9th Cir. 2016) ...................................................... 7, 9

*Andy's BP, Inc. v. City of San Jose*
  605 F. App'x 617 (9th Cir. 2015) ................................................. 11

*Animal Legal Def. Fund v. Wasden*
  878 F.3d 1184 (9th Cir. 2018) ..................................................... 15

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*
  --- F.4th ----, 2021 WL 3745777 (9th Cir. Aug. 25, 2021) ............... 17

*Associated Builders & Contractors of S. California, Inc. v. Nunn*
  356 F.3d 979 (9th Cir. 2004) .................................................. 5, 7, 8

*Autotronic Sys., Inc. v. City of Coeur D'Alene*
  527 F.2d 106 (9th Cir. 1975) ....................................................... 22

*Babler Brother v. Roberts*
  995 F.2d 911 (9th Cir. 1993) ......................................................... 5

*Baltimore Tchrs. Union, Am. Fed'n of Tchrs. Loc. 340, AFL-CIO v. Mayor & City Council of Baltimore*
  6 F.3d 1012 (4th Cir. 1993) ......................................................... 18

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*
  507 U.S. 218 (1993) ............................................................. 4, 9, 10

*California Grocers Ass'n v. City of Long Beach*
  2021 WL 3500960 (C.D. Cal. Aug. 9, 2021) ................................... 6

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**TABLE OF AUTHORITIES**
(continued)

**Page**

*California Grocers Ass'n v. City of Long Beach*
2021 WL 736627 (C.D. Cal. Feb. 25, 2021)................................6, 9, 14

*Calop Bus. Sys., Inc. v. City of Los Angeles*
984 F. Supp. 2d 981 (C.D. Cal. 2013)..................................................8

*Chamber of Commerce of U.S. v. Bragdon*
64 F.3d 497 (9th Cir. 1995)...........................................................7, 8

*Citizens United v. Fed. Election Comm'n*
558 U.S. 310 (2010) ........................................................................14

*Conservation Force v. Salazar*
646 F.3d 1240 (9th Cir. 2011)............................................................3

*Crossley v. California*
2020 WL 4747723 (S.D. Cal. Aug. 17, 2020)....................................14

*Dallas v. Stanglin*
490 U.S. 19 (1989) ..........................................................................12

*Day-Brite Lighting Inc. v. State of Mo.*
342 U.S. 421 (1952) ........................................................................24

*Eberhardt v. City of Los Angeles*
62 F.3d 1253 (9th Cir. 1995)...........................................................11

*Elizondo v. City of Junction City*
669 F. App'x 855 (9th Cir. 2016) .....................................................11

*Energy Reserves Group, Inc. v. Kan. Power and Light Co.*
459 U.S. 400 (1983) ..............................................................15, 16, 17

*F.C.C. v. Beach Communications, Inc.*
508 U.S. 307 (1993) ...............................................................2, 12, 13

*Ferguson v. Skrupa*
372 U.S. 726 (1963) ........................................................................23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Fort Halifax Packing Co., Inc. v. Coyne*
   482 U.S. 1 (1987) ................................................................ 5, 6, 7

*Fortuna Enters., L.P. v. City of Los Angeles*
   673 F.Supp.2d 1000 (C.D. Cal. 2008) ...................................... 6

*Fowler Packing Co., Inc. v. Lanier*
   844 F.3d 809 (9th Cir. 2016) ............................................ 19, 20

*Freeman v. City of Santa Ana*
   68 F.3d 1180 (9th Cir. 1995) .................................................. 10

*Gallinger v. Becerra*
   898 F.3d 1012 (9th Cir. 2018) .......................................... 14, 15

*Gen. Offshore Corp. v. Farrelly*
   743 F. Supp. 1177 (D.V.I. 1990) ............................................ 16

*Gerhart v. Lake Cty., Mont.*
   637 F.3d 1013 (9th Cir. 2011) ................................................ 10

*Golden Estate Transit Corp. v. City of Los Angeles*
   475 U.S. 608 (1986) .............................................................. 4

*Guar. Nat. Ins. Co. v. Gates*
   916 F.2d 508 (9th Cir. 1990) .................................................. 23

*Hawaiian Airlines, Inc. v. Norris*
   512 U.S. 246 (1994) ................................................................ 5

*Hill St. Health Servs. LLC v. Cty. of Los Angeles*
   2016 WL 9453998 (C.D. Cal. Nov. 16, 2016) ...................... 10

*Home Bldg. & Loan Ass'n v. Blaisdell*
   290 U.S. 398 (1934) .............................................................. 15

*Hunters Cap. LLC v. Seattle*
   499 F. Supp. 3d 888 (W.D. Wash. 2020) .............................. 14

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page**

4

*Interpipe Contracting, Inc. v. Becerra*

5
　　898 F.3d 879 (9th Cir. 2018) .................................................................. 5

6

*Kadrmas v. Dickinson Pub. Schs.*

7
　　487 U.S. 450 (1988) ............................................................................... 12

8

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*
　　909 F.3d 446 (D.C. Cir. 2018) ............................................................... 21

9

10

*Keystone Bituminous Coal Ass'n v. DeBenedictis*
　　480 U.S. 470 (1987) ............................................................................... 17

11

*Lazar v. Kroncke*

12
　　862 F.3d 1186 (9th Cir. 2017) ................................................................ 17

13

*Lusnak v. Bank of Am., N.A.*

14
　　883 F.3d 1185 (9th Cir. 2018) ................................................................. 5

15

*Metro. Life Ins. Co. v. Massachusetts*

16
　　471 U.S. 724 (1985) ............................................................................. 4, 7

17

*N.L.R.B. v. Calkins*

18
　　187 F.3d 1080 (9th Cir. 1999) ................................................................. 9

19

*National Broadcasting Co., Inc. v. Bradshaw*

20
　　70 F.3d 69 (9th Cir. 1995) ....................................................................... 5

21

*Nebbia v. New York* (1934)

22
　　291 U.S. 502 ........................................................................................... 22

23

*Nixon v. Adm'r of Gen. Servs.*
　　433 U.S. 425 (1977) .......................................................................... 19, 20

24

25

*Nw. Grocery Ass'n v. City of Seattle*
　　2021 WL 1055994 (W.D. Wash. Mar. 18, 2021) ........................... 4, 5, 14

26

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*

27
　　768 F.3d 938 (9th Cir. 2014) ............................................................... 4, 9

28

Best Best & Krieger LLP
Attorneys at Law
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612

# TABLE OF AUTHORITIES
(continued)

**Page**

*Reynoldsville Casket Co. v. Hyde*
514 U.S. 749 (1995) (Scalia, J., Concurring) ........................................ 24

*Ross v. Moffitt*
417 U.S. 600 (1974) .................................................................. 10

*RUI One Corp. v. City of Berkeley*
371 F.3d 1137 (9th Cir. 2004) .......................................... 4, 10, 13

*San Francisco Apartment Ass'n v. City & Cty. of San Francisco*
142 F. Supp. 3d 910 (N.D. Cal. 2015) ................................ 22

*San Francisco Taxi Coal. v. City & Cty. of San Francisco*
979 F.3d 1220 (9th Cir. 2020) .......................................... 22

*SBC Commc'ns, Inc. v. F.C.C.*
154 F.3d 226 (5th Cir. 1998) ......................................... 20, 21

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*
309 F.3d 662 (9th Cir. 2002) ......................................... 19, 20

*Seltzer v. Cochrane (In re Seltzer)*
104 F.3d 234 (9th Cir. 1996) .......................................... 17

*Sveen v. Melin*
—— U.S. ——, 138 S. Ct. 1815 (2018) ............................... 16

*Thornton v. City of St. Helens*
425 F.3d 1158 (9th Cir. 2005) .......................................... 11

*U.S. Dept. of Agr. v. Moreno*
413 U.S. 528 (1973) .................................................... 15

*United States v. Darby*
312 U.S. 100 (1941) .................................................... 23

*Vance v. Bradley*
440 U.S. 93 (1979) ..................................................... 12

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Viceroy Gold Corp. v. Aubry*
    75 F.3d 482 (9th Cir. 1996) ................................................................ 5, 6, 7

*Villegas v. Gilroy Garlic Festival Ass'n*
    541 F.3d 950 (9th Cir. 2008) ................................................................. 24

*West Coast Hotel Co. v. Parrish*
    300 U.S. 379 (1937) ........................................................................... 3, 23

*Williamson v. Lee Optical of Oklahoma, Inc.*
    348 U.S. 483 (1955) ............................................................................... 12

*Wisconsin v. Constantineau*
    400 U.S. 433 (1971) ............................................................................... 21

**State Cases**

*Birkenfeld v. City of Berkeley*
    17 Cal. 3d 129 (1976) ............................................................................. 23

*Calfarm Ins. Co. v. Deukmejian*
    48 Cal. 3d 805 (1989) ....................................................................... 22, 23

*City of Los Angeles v. City of Artesia*
    73 Cal.App.3d 450 (1977) ...................................................................... 22

*Love v. State Dep't of Educ.*
    29 Cal.App.5th 980 (2018) ..................................................................... 22

*People v. Grant*
    20 Cal.4th 150 (1999) ....................................................................... 19, 20

*People v. Snook*
    16 Cal.4th 1210 (1997) ........................................................................... 20

*Sonoma Cty. Org. of Pub. Emps. v. Cty. of Sonoma*
    23 Cal. 3d 296 (1979) ............................................................................. 18

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Federal Statutes**

42 U.S.C. § 1395dd(a) ..................................................................... 11, 12, 13

42 U.S.C. § 1983 ....................................................................................... 24

National Labor Relations Act ................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 12 ............................................................ 3

Federal Rule of Civil Procedure 12(b)(6) .................................................. 3

**Constitutional Provisions**

California Constitution Article I § 9 .......................................................... 15

United States Constitution Article I § 10 ................................................... 15

United States Constitution First Amendment ............................................ 14

United States Constitution Fourteenth Amendment .................................. 23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Southern California Healthcare Systems, Inc., d/b/a Southern California Hospital at Culver City's ("SCHCC" or "Plaintiff") First Amended Complaint does not cure the defects from the initial Complaint. Plaintiff's First Amended Complaint does not state facts supporting a plausible claim for relief, and its challenges to the Ordinance fail as a matter of law. Plaintiff's First Amended Complaint, and each count therein should be dismissed with prejudice and without leave to amend.

## II.   FACTUAL BACKGROUND

The City of Culver City ("City"), like the rest of the state, has been in the midst of a public health emergency of almost unprecedented magnitude. While significant progress has been made in combatting the pandemic with the rollout of vaccines to prevent infection and serious symptoms, the pandemic is not over, and dangerous virus variants continue to spread in this county and elsewhere. Community transmission of COVID-19 continues, and acute infections require treatment in hospitals with emergency departments, like SCHCC.

### A.   The Ordinance

Plaintiff challenges "An Ordinance of the City of Culver City, State of California, Establishing Hazard Pay for On-Site Hospital Workers at Covered Hospitals" (the "Ordinance"). First Amended Complaint ("Amd. Compl.") ECF No. 76 at Ex A pp. 75–85.[1] The Ordinance provides for an increase of $5 per hour to existing wages. It does not prevent SCHCC from taking any action (e.g., reduction in hours), it includes the ability to "opt-out" in a collective bargaining agreement, and it does not preclude bargaining (or unilateral action, as to non-unionized employees) on any term of employment. *Id.* at pp. 7:20–8:8; 9:1–7.

---

[1] References to the Ordinance will be to marked pages and lines of the Ordinance. E.g., "Section 1: Definitions," which appears at ECF 76 Ex A, Page 80, would be referred to as beginning on Page 6, line 18 of the Ordinance.

The Ordinance is a modest, temporary measure, and expires 120 days after its effective date. *Id.* at p. 10:7–13.[2] In enacting the Ordinance, the City Council legislatively determined that (1) hospital workers have faced and will face serious risks from COVID-19; (2) the COVID-19 threat remains, especially in light of the spread of variants and the slowing pace of vaccinations; (3) hospital workers face this health and safety threat in order to provide critical, lifesaving care to the community; and (4) hospital employees have and will continue to suffer a heavy emotional and psychological toll. *Id.* at pp. 1:5–5:27. In light of these findings:

> [T]he City seeks to compensate essential Hospital Workers for their daily sacrifices and the ongoing risks and burdens they and their families face while providing vital services to the community during the pandemic and in the coming weeks and months; and

> [T]he City aims (1) to protect the health and welfare of its essential Hospital Workers, their families, and the community; (2) to recognize and compensate Hospital Workers for the risks and burdens they face every day and will continue to face in the coming months; (3) support stable incomes among Hospital Workers; and (4) promote job retention by ensuring Hospital Workers are adequately compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services . . . .

*Id.* at p. 6:1–14.

### B.   Enactment of the Premium Pay Ordinances in the City

Before passage of the Ordinance, the City Council enacted an ordinance requiring premium pay for grocery and drugstore workers, addressing compensation for frontline workers incrementally. Request for Judicial Notice ("RJN") Ex. G; *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 316 (1993).

---

[2] The Ordinance became effective July 14, 2021, and will expire on November 11.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

In advance of enacting the Ordinance at issue, hospital workers and other members of the public appeared at City Council meetings to discuss conditions at the Hospital. RJN Ex. A at 4:4–7:15, Ex. B at 4:18–9:12, Ex. C at 4:17–6:9. These individuals provided testimony urging enactment of the Ordinance, and explained why passage of the Ordinance was important. RJN Ex. C at 6:24–8:16; Ex. D at 20:4–28:1; Ex. E at 6:9–11:16, 25:20–42:22, 45:18–46:23; Ex. F at pp. 10:15–12:25, 15:10–25, 25:1–30:8, 33:9–34:19. After considering extensive public comment and following a lengthy debate (RJN Ex. E at 51:21–70:4; Ex. F at 37:19–50:4), the City Council voted to enact the Ordinance. RJN Ex. F at 49:11–25.

## III.   **LEGAL ARGUMENT**

### A.   **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) requires a claim to be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12. "A motion to dismiss under [Rule 12(b)(6)] tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). Dismissal "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id*., at 1242.

Plaintiff's claims are not based on a cognizable theory, and Plaintiff fails to allege facts to demonstrate entitlement to any relief.

### B.   **The Police Power Includes the Power to Regulate Wages**

Regulation of wages and conditions of employment is squarely within the police power of local government. As the Supreme Court held more than 80 years ago, local regulation of wages is not constitutionally infirm, and employers do not have a right based in an employment contract to avoid such regulation. In *West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937), the Court rejected a constitutional challenge to Washington State's minimum wage laws, noting the broad power of government to exercise the police power to protect workers. *Id.* at 392–93, 400.

"The power to regulate wages and employment conditions lies clearly within

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

a state's or a municipality's police power." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ("*RUI One*"). The Ordinance regulates wages and employment conditions, i.e. it is within the City's police powers. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985).

### C.   The First Count for NLRA Preemption Fails Because the NLRA Does not Preempt the Ordinance

The NLRA does not preempt local wage or other labor regulations; it preempts laws that interfere with "economic weapons of self-help, such as strikes and lockouts." *Golden Estate Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 614–15 (1986). The Ordinance does not interfere with any such weapons.

The NLRA contains no express preemptive provisions. *See, e.g., Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) ("The NLRA contains no express pre-emption provision."); *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014) ("We can dispense with any claim of express preemption: The Supreme Court itself has observed that '[t]he NLRA contains no express pre-emption provision.'").

The NLRA is "concerned primarily with establishing an equitable process for determining terms and conditions of employment." *Metro. Life Ins. Co.*, 471 U.S. at 753. Pursuant to this principle, the Supreme Court has established two narrow implied doctrines of preemption: *Garmon* and *Machinists*. As Plaintiff acknowledges, *Machinists* preemption is the only potential preemption doctrine. Amd. Compl. at ¶ 165. *Machinists* preemption does not apply.

As with the Seattle hazard pay law at issue in *Nw. Grocery Ass'n v. City of Seattle*, 2021 WL 1055994 (W.D. Wash. Mar. 18, 2021), the Ordinance provides a wage premium to all covered workers "engaged in specifically delimited types of hazardous work who have been disproportionately impacted by COVID-19;" that premium is applied regardless of the covered workers' current pay rate; and the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

Ordinance does not seek to regulate benefits, workplace conditions, or hours. The Ordinance is thus a classic minimum labor standard of general applicability that "does not interfere with the mechanics of the collective bargaining process" and therefore is not preempted by the NLRA. *Id.* at \*4; *see also Associated Builders & Contractors of S. California, Inc. v. Nunn*, 356 F.3d 979, 990 (9th Cir. 2004). While Plaintiff alleges that the Ordinance is preempted by the NLRA, the first count fails to state a claim because the Ordinance is a minimum labor standard and is not preempted.

### 1.    There is a Strong Presumption Against Preemption

Federal preemption cases are guided by two key principles: (1) "the purpose of Congress is the ultimate touchstone in every pre-emption case" and (2) "the assumption that the State's historic police powers are not preempted" absent Congress' "clear and manifest purpose" to preempt the exercise of those powers. *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191 (9th Cir. 2018). "Pre-emption of employment standards within the traditional police power of the State should not be lightly inferred." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987) is clear that "pre-emption should not be lightly inferred [because] the establishment of labor standards falls within the traditional police power of the State." *Id.* at 21; *see also Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 888, 891 (9th Cir. 2018).

### 2.    The Ordinance is not Preempted Under *Machinists*

The Supreme Court and the Ninth Circuit have repeatedly held that substantive state labor standards are not preempted by the NLRA. *See*, *e.g.*, *Fort Halifax*, 482 U.S. at 20–22; *National Broadcasting Co., Inc. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995); *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996); *Babler Brother v. Roberts*, 995 F.2d 911 (9th Cir. 1993). The Ordinance is a substantive labor standard benefitting union and non-union hospital workers, and does not conflict with the NLRA, which regulates the collective bargaining *process*.

Applying this logic, courts have rejected similar challenges to City of Los Angeles' living wage ordinances, *see Am. Hotel & Lodging Ass'n v. City of Los Angeles* 119 F.Supp.3d 1177, 1179 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016); *Fortuna Enters., L.P. v. City of Los Angeles*, 673 F.Supp.2d 1000 (C.D. Cal. 2008), and similar challenges to "Hero Pay" ordinances. *California Grocers Ass'n v. City of Long Beach*, 2021 WL 736627, at *5 (C.D. Cal. Feb. 25, 2021); *see also* Order Denying Mot. for Preliminary Injunction ("PI Order"), ECF No. 59, at p. 8:1–14. On August 9, 2021, the entirety of California Grocers Associations' similar lawsuit was dismissed, with prejudice. *California Grocers Ass'n v. City of Long Beach*, 2021 WL 3500960 (C.D. Cal. Aug. 9, 2021). ("As such, the Ordinance is a clear example of a minimum labor standard not subject to Machinists preemption, because it does not impinge collective bargaining mechanisms. . . . As the NLRA does not preempt the Ordinance, CGA's first cause of action is DISMISSED.").

In *Fort Halifax*, 482 U.S. 1, the Supreme Court held that a Maine statute requiring employers, in the event of a plant closing, to provide a one-time severance payment in the absence of a collective bargaining agreement on the subject, was not preempted. The company in *Fort Halifax* argued that the statute was preempted under *Machinists* because the statute undercut the employer's ability to withstand a union's demand for severance pay. *Id*. at 20. The Supreme Court rejected this argument, finding that Maine's law was a valid and unexceptional exercise of its police power. *Id*. at 22. The Court reasoned that such a substantive labor standard provides protections to union and nonunion workers alike, and thus neither encourages nor discourages bargaining processes. *Id*. at 21–22. The *Fort Halifax* Court held that the mere fact that a state statute regulates matters over which the parties may bargain cannot support a claim of preemption. *Id*. at 21–22.

In *Viceroy Gold Corp*, 75 F.3d 482, the Ninth Circuit held that a California labor standard prohibiting more than eight hour work days in the absence of a CBA was not subject to *Machinists* preemption. *Id*. at 489–90. The court reasoned that

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

the standard "undoubtedly" qualified as a minimum labor standard. *Id*.

More recently, in *American Hotel and Lodging Association v. City of Los Angeles*, 834 F.3d 958, 963 (9th Cir. 2016), the Ninth Circuit held a City of Los Angeles living wage ordinance was not preempted by the NLRA, explaining:

> [M]inimum labor standards affect union and nonunion employees equally, neither encouraging nor discouraging [] collective bargaining processes. . . . **[T]hese standards are not preempted, because they do not "regulate the mechanics of labor dispute resolution."** . . Such standards are a valid exercise of states' police power to protect workers. . . . "[S]tate minimum benefit protections have repeatedly survived *Machinists* preemption challenges," . . . .

*Id*. at 963–65 (emphasis added). Both the Supreme Court and Ninth Circuit have held that standards other than minimum wage laws, or laws that set "floors," are not preempted. *See, e.g., Fort Halifax*, 482 U.S. at 21 (lump sum severance payments); *Metro Life Ins. Co.*, 471 U.S. at 758 (mental health benefits). In *Nunn*, 356 F.3d 979, the Ninth Circuit rejected the argument that preemption is more likely when a labor standard applies only to a small group of employers or employees: "[S]tate substantive labor standards . . . are not invalid simply because they apply to particular trades, professions, or job classifications." *Id*. at 990.

Here, the Ordinance is likewise an unexceptional exercise of police power. It does not interference with any bargaining processes, nor does it interference with any economic weapons of self-help.  The Ordinance is not preempted.

### 3.    *Bragdon* is Inapplicable

In its prior briefing on the motion for preliminary injunction, Plaintiff relied on *Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) for the proposition that the Ordinance is so "invasive and detailed" that it is preempted. Plaintiff's reliance is misplaced, which this Court found in its ruling denying the preliminary injunction motion. In *Bragdon*, the Ninth Circuit held that an ordinance

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  requiring employers to pay "prevailing wages" determined solely by reference to

2  established CBAs was preempted. *Id.* at 502. "This manner of setting wages, . . .

3  gave employers what amounted to a Hobson's choice—they had either to accept the

4  results of third parties' collective bargaining processes or enter into a [CBA]

5  themselves." *Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981,

6  1011 (C.D. Cal. 2013).

7        The Ninth Circuit subsequently cabined *Bragdon*'s holding to its particular

8  facts—an ordinance mandating wages based exclusively on third-party collectively

9  bargained rates. *Nunn*, 356 F.3d at 990. The pay required here is not tied to any

10  CBA, and is not preempted.

11        The Ordinance has none of the characteristics of the law the *Bragdon* court

12  held was preempted. The ordinance in *Bragdon* wholesale imported terms from

13  negotiated collective bargaining agreements: "[T]he prevailing wage . . . is not a

14  fixed statutory or regulatory minimum wage, but one derived from the combined

15  collective bargaining of third parties in a particular locality. . . . The manner in

16  which the Ordinance operates affects not only the total of the wages and benefits to

17  be paid, but also the division of the total package that is paid in hourly wages

18  directly to the worker and the amount paid by the employer in health, pension, and

19  welfare benefits for the worker." *Bragdon*, 64 F.3d at 502.

20        The Ordinance provides for a fixed  premium, and in no way derives its

21  requirements from "the collective bargaining of third parties." The Ordinance does

22  not regulate the "total of the wages and benefits paid," it simply requires that

23  *whatever* wages and benefits are paid are supplemented by a $5 premium. The

24  Ordinance is unconcerned with "the division of the total package that is paid in

25  hourly wages directly to the worker and the amount paid by the employer in health,

26  pension, and welfare benefits for the worker." *Id.* at 502; *see also* PI Order at p. 7:9.

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

### 4.      Section 8(d) of the NLRA is not Preemptive

SCHCC also advances the meritless argument that the Ordinance is expressly preempted by Section 8(d) of the NLRA. Amd. Compl. at ¶ 164. As SCHCC notes, the "mutual obligation of good faith bargaining 'does not compel either party to agree to a proposal or require the making of a concession." Amd. Compl. at ¶ 164. This is true enough. However, the mutual obligation of good faith bargaining imposed by the NLRA does not compel SCHCC to pay a premium pay of $5 to all employees, unionized or not – the Ordinance does, and not as a term incorporated into any CBA applicable only to unionized employees and not to remedy any alleged bad-faith bargaining.

Section 8(d) is simply not preemptive, and any such argument is foreclosed by the innumerable decisions from every level of the federal judiciary stating that the NLRA contains no express preemption provision. *See, e.g., Bldg. & Const. Trades Council of Metro. Dist.*, 507 U.S. at 224 ("The NLRA contains no express pre-emption provision."); *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014) ("We can dispense with any claim of express preemption: The Supreme Court itself has observed that '[t]he NLRA contains no express pre-emption provision.'") (citing *Bldg. & Const. Trades Council of Metro. Dist.*, 507 U.S. at 224); *Am. Hotel & Lodging Ass'n,* 834 F.3d at 963 ("The NLRA—the federal architecture that governs relations between labor and management, for example, union organizing, collective bargaining, and conduct of labor disputes—has no express preemption provision."); *N.L.R.B. v. Calkins*, 187 F.3d 1080, 1095 (9th Cir. 1999) ("The NLRA contains no express preemption provision"); *California Grocers Ass'n v. City of Long Beach*, 2021 WL 736627, at *3 (C.D. Cal. Feb. 25, 2021) ("The NLRA . . . has no express preemption provision.").

Under well settled law, Section 8(d), like every other section of the NLRA, is not "expressly preemptive." It is not even clear *why* Plaintiff believes Section 8(d)

is expressly preemptive. Plaintiff has not explained, and the language of the section certainly evidences no intend to preempt local wage regulations.

In short, SCHCC's allegation that Section 8(d) expressly preempts the Ordinance is wrong. This Court should decline SCHCC's apparent request to either (1) reject *Bldg. & Const. Trades Council of Metro. Dist.*, 507 U.S. at 224 and scores of other Supreme Court and Ninth Circuit decisions that hold that the NLRA has no express preemption provision, or (2) craft a novel doctrine of preemption that has never been recognized by the Supreme Court, Ninth Circuit, or any other court.

### D.    The Second and Third Counts Fail Because the Ordinance does not Violate the Equal Protection Clause

Plaintiff's second and third counts are for alleged violations of the Equal Protection Clause of the United States and California Constitutions, where Plaintiff alleges that it is a "class of one." Amd. Compl. at ¶ 179. In order to prevail on a "class of one" challenge under either the United States or California Constitutions, Plaintiff must show the City "(1) intentionally (2) treated [Plaintiff] differently than other similarly situated [persons], (3) without a rational basis." *Gerhart v. Lake Cty., Mont*., 637 F.3d 1013, 1022 (9th Cir. 2011); *see also RUI One*, 371 F.3d at 1154 (stating California follows federal analysis for the Equal Protection Clause).

### 1.    Plaintiff Fails to Allege the Existence of a Similarly Situated HealthCare Facility

Once a plaintiff establishes a governmental classification, it is necessary to identify a "similarly situated" class against which the plaintiff can be compared. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). "Equal protection is intended to prevent disparate treatment of those 'whose situations are *arguably indistinguishable*.' " *Hill St. Health Servs. LLC v. Cty. of Los Angeles*, 2016 WL 9453998, at *8 (C.D. Cal. Nov. 16, 2016) (quoting *Ross v. Moffitt*, 417 U.S. 600, 609 (1974) (emphasis added).

A failure to identify a sufficiently similar group is fatal to an equal protection

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

claim. *See, e.g., Andy's BP, Inc. v. City of San Jose*, 605 F. App'x 617, 618–19 (9th Cir. 2015) ("Plaintiff cannot state an equal protection claim . . . because the two gas stations are not similarly situated."); *Elizondo v. City of Junction City*, 669 F. App'x 855 (9th Cir. 2016) ("[T]he situations of other property owners cited by the Elizondos were not sufficiently similar because they did not present all of the unique issues posed by the maple tree . . . ."); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("There are no other auto wreckers in St. Helens and, therefore, the City is not imposing a burden on the Thorntons that it does not also impose on other wreckers within its jurisdiction."); *see also* PI Order at p. 10:3–4 ("SCHCC identifies no 'similarly situated' entity. . . .").

Plaintiff fails to identify any similarly situated entity. Plaintiff adds to its First Amended Complaint by alleging that the City is home to various "other licensed healthcare facilities," and Plaintiff describes the services these other facilities generally offer. However, Plaintiff alleges no facts demonstrating why these other facilities are in fact similarly situated. Amd. Compl. ¶ 125–146. As Plaintiff alleges, SCHCC is the *only* hospital in the City. *Id.* at ¶ 26. While the other types of facilities may provide healthcare services, they are not hospitals, and thus cannot be similarly situated.

Hospitals (especially hospitals with emergency departments, like SCHCC) are meaningfully distinct from skilled nursing facilities and other licensed or exempt health care facilities. As a judicially noticeable fact, only hospitals have emergency departments and ICUs to accept and treat the most serious acute injuries and diseases. Only hospitals have the licensure, staff, training, and equipment to treat the full panoply of serious illness and injury, *including* acute COVID-19 cases. Only hospitals bare the full brunt of treating the most acute patients infected with COVID-19. Only hospitals *are required by law* to accept and treat all patients presenting with a medical emergency. *See* Emergency Medical Treatment and Active Labor Act ("EMTALA"),  42 U.S.C. § 1395dd(a) *et seq.*; *see also Eberhardt*

Best Best & Krieger LLP
Attorneys at Law
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612

*v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995) ("Congress enacted the EMTALA . . . to ensure that hospitals do not refuse essential emergency care because of a patient's inability to pay."). As to all of these facts, SCHCC does not allege otherwise. Amd. Compl. at ¶¶125–146. In short, hospitals stand alone, and are *not* similarly situated to skilled nursing facilities or any other healthcare facility.

Plaintiff's argument that the City treated SCHCC's similarly situated *employees* different is nonsensical and does not salvage the second or third counts. Amd. Compl. at ¶ 186; *see also* PI Order at p. 10:20–27.

### 2.    The Ordinance is Supported by a Rational Basis

Choices about the scope of economic regulations are fundamentally political choices, and courts therefore review laws challenged as violating equal protection under the deferential "rational basis" test. This test is the "most relaxed and tolerant form of judicial scrutiny," *Dallas v. Stanglin*, 490 U.S. 19, 26 (1989), reflecting a strong preference for resolution of policy differences at "the polls not [in] the courts." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955). A law will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns, Inc.*, 508 U.S. at 313. Any plausible basis suffices, even if it did not underlie the legislative action, *id.*, and even if no party raised it. *Kadrmas v. Dickinson Pub. Schs.,* 487 U.S. 450, 463 (1988). Because it is "entirely irrelevant for constitutional purpose" whether the rational basis was the actual motivation for a law, "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *Beach Commc'ns, Inc.*, 508 U.S. at 315. Legislative decisions may be based on rational speculation, and may go unsupported by data. *See Vance v. Bradley*, 440 U.S. 93, 111 (1979). Plaintiffs "attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Beach Commc'ns, Inc.*, 508 U.S. at 315.

Controlling Ninth Circuit authority renders Plaintiff's equal protection counts

meritless. In *RUI One,* 371 F.3d 1137, the Ninth Circuit rejected an equal protection challenge to a living wage ordinance that targeted only employers of a certain size within a certain zone of the City of Berkeley. *Id.* at 1156. The Berkeley ordinance required large employers located in the Berkeley Marina to pay employees a "living wage." *Id.* at 1145. The Ninth Circuit considered plaintiff's argument that the purported reasons for the law were not the real reasons motivating the enactment of the Berkeley ordinance, but rather it was a ploy to help unionize hotels in the Marina. *Id.* at 1155. The Ninth Circuit refused to conduct a more searching review of the legislative motivations, however, finding that it was "entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.* The plaintiff also argued that the Berkeley ordinance was unconstitutional because it imposed the living wage only on Marina businesses, and not on other businesses in the city. *Id.* The Ninth Circuit rejected this argument noting that "[s]uch legislative decisions are 'virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.' " *Id.* (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 316.)

Here, it was rational for the City to draw the lines that it did, and require premium pay for hospital workers and not, at this time, other classifications of workers working for other facilities. Unlike other healthcare facilities, a hospital *must* accept acute COVID-19 cases, while skilled nursing facilities and other health care facilities can refuse patients. *See* EMTALA, 42 U.S.C. § 1395dd(a) *et seq.*

It was also rational for the City to conclude that the need for "hero pay" was most acute for hospital workers based on public input. Hospital workers wrote in or appeared at City Council meetings expressing the need for hero pay. The City received no such input from workers at other healthcare facilities.

Moreover, even absent COVID-19, requiring heightened pay for hospital workers would be rationally related to the legitimate interest of ensuring adequate staffing at the City's *only* hospital. It was rational for the City to draw a distinction

B̲ᴇꜱᴛ B̲ᴇꜱᴛ & K̲ʀɪᴇɢᴇʀ LLP
Aᴛᴛᴏʀɴᴇʏꜱ ᴀᴛ Lᴀᴡ
18101 Vᴏɴ Kᴀʀᴍᴀɴ Aᴠᴇɴᴜᴇ, Sᴜɪᴛᴇ 1000
Iʀᴠɪɴᴇ, Cᴀʟɪꜰᴏʀɴɪᴀ 92612

between the acute lifesaving care provided by a hospital and the care provided by other facilities. PI Order at p. 11:2–4 ("Even if SCHCC established the first two element of its 'class of one' claim, a preliminary injunction would be improper because the Ordinance survives rational basis review."); *id.* at p. 13:4–5 ("In keeping with recent persuasive holdings, this Court finds that SCHCC has not shown a likelihood that the Ordinance is irrational.") (citing, e.g., *Nw. Grocery Ass'n*, 2021 WL 1554646, at *5–7, which granted motion to dismiss without leave to amend); *see also California Grocers Association*, 2021 WL 736627 at *6.

Finally, Plaintiff's allegation that the Ordinance was passed as a result of lobbying (Amd. Compl. at ¶¶ 194–198) does not show that the Ordinance is irrational. The Ninth Circuit has held that a plaintiff cannot prove invidious discrimination by showing that legislators responded to lobbying efforts. *Gallinger v. Becerra*, 898 F.3d 1012, 1020–21 (9th Cir. 2018) (finding no impermissible animus in statute's exemption for retired police officers after "political pressure" resulting from "potent lobbying efforts by the law enforcement community."). The right to lobby and petition the government is "constitutionally protected," and indeed a core part of the First Amendment. *Id.* at 1021; *see generally Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). There is no reasonable inference that can be drawn that the City acted out of a desire to do anything but *help* hospital workers (and the broader community they serve and protect), not a desire to *harm* SCHCC. *Crossley v. California*, 2020 WL 4747723 (S.D. Cal. Aug. 17, 2020) ("Accommodating one interest group is not equivalent to intentionally harming another."); *Hunters Cap. LLC v. Seattle*, 499 F. Supp. 3d 888, 905 (W.D. Wash. 2020) ("[A]n allegation that the government favors a certain class or viewpoint, standing alone, is insufficient to show that the government necessarily disfavors the plaintiff's alleged class . . . .")

A legislative act motivated in part by the lobbying efforts of a group is not unconstitutional; rather, if the *only* possible motivation of legislation is to *harm* an

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

unpopular group, that bare desire to harm is not a legitimate government interest.
*U.S. Dept. of Agr. v. Moreno*, 413 U.S. 528, 534 (1973) ("[B]are [legislative] desire
to harm a politically unpopular group cannot constitute a legitimate governmental
interest.") "[A] court may strike down [a] statute under the Equal Protection Clause
if the statute serves no legitimate governmental purpose *and* if impermissible
animus toward an unpopular group prompted the statute's enactment." *Gallinger*,
898 F.3d at 1021 (quoting *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200
(9th Cir. 2018)) (emphasis in original). Neither prong of this test is met here.

### E.    The Fourth and Fifth Counts Fail Because the Ordinance Does not Violate the Contracts Clause

Plaintiff's fourth and fifth counts are for alleged violations of the Contracts
Clause of the United States and California Constitutions, alleging that the
Ordinance interferes with their negotiated agreements. Amd. Compl. at ¶¶ 208-213.
SCHCC argues that its collective bargaining agreements should supersede public
laws enacted to protect the safety, health and welfare of the people in the  City. This
argument has no merit. Both the state and federal constitutions prohibit impairment
of contracts. U.S. Const., art. I, § 10; Cal. Const., art. I, § 9. However, it has long
been recognized that "the prohibition against any impairment of contracts is 'not an
absolute one and is not to be read with literal exactness.'" *Home Bldg. & Loan
Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934).

The contracts clause "prohibition must be accommodated to the inherent
police power of the State," *Energy Reserves Group, Inc. v. Kan. Power and Light
Co.*, 459 U.S. 400, 410 (1983), safeguarding the interests of the people, because
such police powers are "paramount to any rights under contracts between
individuals." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978); *see
also Energy Reserves,* 459 U.S. at 411 ("One whose rights, such as they are, are
subject to state restriction, cannot remove them from the power of the State by
making a contract about them.'"). Under these principles, the first question is

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   whether the challenged law constitutes a "substantial impairment" of contracts.

2   *Energy Reserves*, 459 U.S. at 411.

3            **1.      The Ordinance does not Impair SCHCC's Contracts**

4        Given the broad authority of the City to regulate working conditions and the

5   highly regulated nature of healthcare, SCHCC is "operating in a heavily regulated

6   industry" and so additional workplace laws cannot be said to substantially impair

7   their contracts. *Energy Reserves*, 459 U.S. at 413 (natural gas producers did not

8   have contracts impaired where state regulated the intra-state prices they could

9   charge because "State authority to regulate natural gas prices is well established"

10  even though Kansas had never before regulated prices); *Gen. Offshore Corp. v.*

11  *Farrelly*, 743 F. Supp. 1177, 1198 (D.V.I. 1990) (working conditions are heavily

12  regulated under *Energy Reserves*, because "[o]ccupational safety, collective

13  bargaining, minimum wages, worker's compensation, and other areas of legislation

14  have left few aspects of the workplace unregulated").

15       Further, as a factual matter, the Ordinance does not substantially impair

16  SCHCC's contracts. The CBAs remain in full force and effect, and are fully

17  enforceable, and SCHCC does not allege otherwise. The Ordinance imposes a

18  separate legal requirement, independent of the terms of a contracts. If SCHCC fails

19  to pay any particular worker the premium pay required by the Ordinance, the

20  employee would have the right to bring a civil action against SCHCC to enforce

21  his/her rights under the Ordinance, Ordinance at 8:19–27, which is independent of

22  the existence and terms of the employment contract. *Id.*

23            **2.      The Ordinance is an Appropriate and Reasonable Way to**

24                 **Advance a Significant and Legitimate Public Purpose**

25       If there were a "substantial impairment," SCHCC would still need to

26  overcome the second prong of the modern test, and show that the law is not drawn

27  in an "appropriate" and "reasonable" way to advance a "significant and legitimate"

28  public purpose. *Sveen v. Melin*, —— U.S. ——, 138 S. Ct. 1815, 1822 (2018)

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  (quoting *Energy Reserves*, 459 U.S. at 411-412). "Unless the State itself is a

2  contracting party . . . courts properly defer to legislative judgment as to the

3  necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at

4  412–13; *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470,

5  505 (1987); *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017). SCHCC bears

6  the burden of showing that the Ordinance is unreasonable. *Seltzer v. Cochrane (In*

7  *re Seltzer)*, 104 F.3d 234, 236 (9th Cir. 1996).

8      The Ninth Circuit recently reaffirmed the "forgiving standard of modern

9  Contracts Clause analysis" in upholding a Los Angeles COVID-19 related eviction

10  moratorium. *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles,* ---

11  F.4th ----, 2021 WL 3745777 (9th Cir. Aug. 25, 2021). "Given the deferential

12  standard that precedent constrains us to apply, we are compelled to conclude that

13  the City's enactments pass constitutional muster under the Contracts Clause. Under

14  current doctrine, we must 'refuse to second-guess' the City's determination . . . That

15  is particularly so, based on modern Contracts Clause cases, in the face of a public

16  health situation like COVID-19." *Id.* at * 7.

17      The Ordinance survives this test. The express "aim" of the Ordinance to

18  "promote job retention" alone provides a basis to uphold it. Ordinance at 6:5–14.

19  Ensuring adequate staffing at the City's *only* hospital is a significant and legitimate

20  (even compelling) interest, especially in light of the continued transmission of

21  COVID-19 and its variants. Indeed, as SCHCC admits, wage related issues are a

22  major part of SCHCC's issues with employee retention. Amd. Compl. at ¶ 54.

23      Even if there are "better" or more narrowly tailored means to ensure medical

24  staff retention at the City's only hospital, this is not the test. It was reasonable for

25  the City to conclude that hospital workers face extreme difficulties, "burn-out," and

26  danger in light of the pandemic, and providing recognition and compensation was

27  an appropriate means to advance the legitimate purpose of ameliorating this

28  condition, compensating for these difficulties and dangers, and promoting the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

retention of healthcare professionals. *See, e.g.*, RJN Ex. C at 6:24–8:16; Ex. D at 20:4–28:1; Ex. E at 6:9–11:16, 25:20–42:22, 45:18–46:23; Ex. F at pp. 10:15–12:25, 15:10–25, 25:1–30:8, 33:9–34:19.

In prior briefings SCHCC relied on inapposite cases, *Baltimore Tchrs. Union, Am. Fed'n of Tchrs. Loc. 340, AFL-CIO v. Mayor & City Council of Baltimore*, 6 F.3d 1012, 1014 (4th Cir. 1993) and *Sonoma Cty. Org. of Pub. Emps. v. Cty. of Sonoma*, 23 Cal. 3d 296, 297 (1979). SCHCC's reliance remains misplaced. In both cases, the challenged governmental action was legislation modifying the government's *own* contractual obligations. And in both a contract was in fact impaired – essentially, a governmental body contracted to pay a certain amount for labor, and by legislative fiat decided to pay less. Not so here.

Further, SCHCC's implication that *Spannaus*, 438 U.S. 234 is analogous is meritless. In *Spannaus*, Minnesota enacted a statute requiring a decade of *retroactive* pension contributions. *Id.* at 246. The Court noted:

> This Minnesota law simply does not possess the attributes of those state laws that in the past have survived challenge . . . The law was not even purportedly enacted to deal with a broad, generalized economic or social problem. (citation) It did not operate in an area already subject to state regulation at the time the company's contractual obligations were originally undertaken, but invaded an area never before subject to regulation by the State. (citation) It did not effect simply a temporary alteration of the contractual relationships of those within its coverage, but worked a severe, permanent, and immediate change in those relationships—irrevocably and retroactively.

*Id.* at 250. The opposite is true here. The Ordinance was enacted as a response to the ongoing pandemic, and in recognition of the dangers faced by, and extraordinary contribution of, hospital workers, *and* in recognition of the probability of worker "burnout" and further employee attrition. The Ordinance operates in an area already subject to extensive state regulation at the time

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 IRON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   employment contracts were entered into. Finally, the Ordinance requires only a

2   discrete amount of premium pay for a limited period of 120 days. Further, the

3   Ordinance is not retroactive.[3]

4   **F.    Plaintiff's Sixth and Seventh Counts for Bill of Attainder Fail**

5       Plaintiff's sixth and seventh counts are for alleged violations of the ban on

6   bills of attainder under the United States and California Constitutions.  A bill of

7   attainder is "'a law that legislatively determines guilt and inflicts punishment upon

8   an identifiable individual without provision of the protections of a judicial trial.'"

9   *Fowler Packing Co., Inc. v. Lanier,* 844 F.3d 809, 816 (9th Cir. 2016) (quoting

10  *Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 468 (1977)). The "key features" of a

11  bill of attainder are "that the statute (1) specifies the affected persons and (2)

12  inflicts punishment (3) without a judicial trial." *SeaRiver Mar. Fin. Holdings, Inc*.

13  *v. Mineta*, 309 F.3d 662, 668–69 (9th Cir. 2002). The "clearest proof" is required

14  before a court will conclude a law is an improper bill of attainder. *Id.* The

15  Ordinance, as a matter of law, is not a bill of attainder because (among other

16  reasons) it does not "punish" Plaintiff.

17      The "Supreme Court has identified three 'necessary inquiries' that can

18  indicate whether a law inflicts punishment: '(1) whether the challenged statute falls

19  within the historical meaning of legislative punishment; (2) whether the statute,

20  'viewed in terms of the type and severity of burdens imposed, reasonably can be

21  said to further nonpunitive legislative purposes'; and (3) whether the legislative

22  record 'evinces a congressional intent to punish.'" *Fowler,* 844 F.3d at 817 (quoting

23  *Nixon*, 433 U.S. at 473, 475-76, 478); *see also People v. Grant*, 20 Cal.4th 150, 158

24

25  ───────────────
    [3] All of the above analysis and authorities apply with equal force to SCHCC's
26  threadbare allegations concerning its third party vendors.  Amd. Compl. ¶¶ 212–
    213. The City notes, however, that SCHCC attached as Exhibit X a contract
27  between "Alta Hospitals System, LLC" and an apparent third party vendor. Alta
    Hospitals System, LLC is not identified anywhere in the Complaint as a d/b/a,
28  parent, or subsidiary of SCHCC/ The City also notes that it is impossible to
    determine whether the contract between a third party and "Alta" is in fact impaired,
    in that it is nearly entirely redacted, including Section 4, "Financial Terms."

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:21-CV-05052-MCS-RAO
DEFENDANTS' MOTION TO DISMISS

1   (1999) (noting that California Courts interpret the California Constitution's bill of

2   attainder clause  " 'no differently than its federal counterpart.' ") (quoting *People v.*

3   *Snook,* 16 Cal.4th 1210, 1220 (1997)).

4          The Ordinance does not fall within the historic meaning of legislative

5   punishment, which includes sentencing the named individual to death,

6   imprisonment, or banishment, punitive confiscation of property by the sovereign, or

7   erecting a bar to designated individuals or groups participating in specified

8   employments or vocations. *See id.*; *see also SeaRiver*, 309 F.3d at 673. In fact, the

9   law is not *punitive* at all, and does not result in the confiscation of any property or

10  loss of any right, it merely requires an employer to pay its employees a particular

11  wage (like any minimum wage law, or other labor standard).

12         The second inquiry uses a "functional test" by asking "whether the law under

13  challenge, viewed in terms of the type and severity of burdens imposed, reasonably

14  can be said to further nonpunitive legislative purposes." *Fowler*, 844 F.3d at 818

15  (quotation omitted). For the reasons described above, the ordinances further a

16  myriad of non-punitive legislative purposes. *See also SBC Commc'ns, Inc. v.*

17  *F.C.C.*, 154 F.3d 226, 241 (5th Cir. 1998) ("In the light of the 400 years of case law

18  and history that we have considered, we believe that *Nixon* stands, ultimately and

19  concisely, for the following proposition: if legislation has a legitimately

20  nonpunitive function, purpose, and structure, it does not constitute punishment for

21  purposes of the Bill of Attainder Clause.")

22         There is no plausible allegation in the Complaint that the legislative record

23  evidences a bare legislative intent to "punish." Plaintiff alleges that the Ordinance

24  was enacted "as tribute to the politically influential union," but an allegation of a

25  desire to help the Union is not equivalent to a bare desire to punish the Hospital for

26  some transgression. *See* Amd. Compl. at ¶ 234; *see also SeaRiver,* 309 F.3d at 676

27  ("The third hallmark of a punitive statute is a legislative record that evinces a

28  congressional intent to punish. . . . The legislative history of the Oil Pollution Act

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

does not unmistakably manifest such a motive.") (internal citations and alterations omitted); *SBC Commc'ns, Inc.,* 154 F.3d at 243 ("Third, we reason that the Special Provisions are not punitive because neither their terms nor their legislative history demonstrates the 'smoking gun' evidence of punitive intent necessary to establish a bill of attainder. As the Supreme Court clarified in Selective Service, 'unmistakable evidence of punitive intent ... is required before a Congressional enactment of this kind may be struck down' on attainder grounds").

Further, it is not plausible that the Ordinance, which expressly evinces an intent to *help* hospital workers and promote retention, was in fact secretly enacted to punish the Hospital for some undefined slight or misdeed. The Ordinance does not have *any* of the indicia of a bill of attainder, and Plaintiff's claim fails.

Plaintiffs' reference to a "badge of infamy" is puzzling and irrelevant, as this phrase is drawn from a 1971 decision concerning due process protections. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

No court, to the City's knowledge, has ever held that an economic regulation like the one at issue here is a bill of attainder, or anything like one, and Plaintiff's claim fails as a matter of law. *See, e.g., Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 463 (D.C. Cir. 2018) ("At bottom, then, a wide valley separates section 1634 from the small handful of statutes that courts have found to be unconstitutional bills of attainder. All four of the relevant Supreme Court cases involved flesh-and-blood humans whom the legislature deemed untrustworthy or subversive based on those individuals' political beliefs. And this court's case, *Foretich*, concerned a legislative determination that a father had sexually abused his own daughter.").

### G.    Plaintiff's Eighth Count for "Special Legislation" Fails

As Plaintiff alleges, " 'the test of validity under either the special legislation or the equal protection challenge is the same, namely, whether there is a rational relationship between the purpose of the enactment . . . . and the singling out' of the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

person 'affected by the statute.' " Amd. Compl. at ¶ 241, *quoting City of Los Angeles v. City of Artesia*, 73 Cal.App.3d 450, 455 (1977).

Because Plaintiffs' equal protection challenge fails for the reasons described above, so too fails Plaintiff's "special legislation" challenge.

## H.   Plaintiff's Ninth and Tenth Due Process Counts Fail

Plaintiff's ninth and tenth counts are for alleged violations of the Due Process Clause of the United States and California Constitutions. "The standard for evaluating ordinances claimed to be violative of due process or equal protection is whether a rational basis exists for the police power exercised or classification established by the ordinance." *Autotronic Sys., Inc. v. City of Coeur D'Alene*, 527 F.2d 106, 108 (9th Cir. 1975); *see also San Francisco Taxi Coal. v. City & Cty. of San Francisco*, 979 F.3d 1220, 1224 (9th Cir. 2020) ("The Drivers brought claims under both federal and state [due process and equal protection] constitutional provisions. We analyze their claims in unison because California law is functionally identical to federal law in this area"); *Love v. State Dep't of Educ.*, 29 Cal.App.5th 980, 989 (2018) (applying federal law to a state substantive due process claim); *San Francisco Apartment Ass'n v. City & Cty. of San Francisco*, 142 F. Supp. 3d 910, 929 (N.D. Cal. 2015), *aff'd*, 881 F.3d 1169 (9th Cir. 2018) ("Equal protection and due process rights are analyzed the same way under federal and state constitutions.") The same legitimate and substantial public interests that foreclose Plaintiff's contract clause challenge also foreclose Plaintiff's due process challenge.

Perhaps in recognition of Plaintiff's inability to overcome the deferential rational basis test, Plaintiff attempts to import (and distort) case law from the field of state price controls. Each of the inapposite decisions cited by Plaintiff in its Complaint discusses and applies the constitutional test for state price control regulations (which the Ordinance is not). *Compare* Amd. Compl. at ¶ 247 *with Calfarm Ins. Co. v. Deukmejian,* 48 Cal. 3d 805, 816 (1989) ("The constitutional test for the validity of state price controls was established in *Nebbia v. New York*

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 I VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  (1934) 291 U.S. 502 . . . . "); *Birkenfeld v. City of Berkeley*, 17 Cal. 3d 129, 165,

2  550 P.2d 1001, 1027 (1976) ("If it is apparent from the face of the provisions that

3  their effect will necessarily be to lower rents more than could reasonably be

4  considered to be required for the measure's stated purpose, they are

5  unconstitutionally confiscatory"); *Guar. Nat. Ins. Co. v. Gates*, 916 F.2d 508, 513

6  (9th Cir. 1990) (Discussing and applying the "standard for determining if a state

7  price-control regulation is unconstitutional under the due process clause").

8      Even if this line of cases did apply, which it does not, Plaintiff does not

9  allege that the Ordinance in fact prevents them from turning a profit. *See* Amd.

10  Compl. at ¶¶ 245–253. Further, it is not plausible that a 120-day $5 premium is so

11  "restrictive as to facially preclude any possibility of a just and reasonable return."

12  *Deukmejian*, 48 Cal.3d at 816 (1989).

13      Instead, Plaintiff seems to argue for a novel due process standard under

14  which any governmental regulation that cannot be fully mitigated is

15  unconstitutional, regardless of the rationality of the governmental regulation;

16  regardless of the regulated entities ability to otherwise turn a profit; and regardless

17  of whether the entity had an opportunity to be heard by the legislative body in

18  advance of enactment of the law at issue. *See* Amd. Compl. at ¶¶ 252.

19      The Court should decline Plaintiff's request to rewrite the Due Process

20  Clause. For nearly a century, the Supreme Court has recognized the regulation of

21  wages is permitted by the due process clause, and that such law may not be

22  overturned unless they are palpably unreasonable. *See Parrish*, 300 U.S. at 397–

23  400 (1937) (emphasis added;) *see also United States v. Darby*, 312 U.S. 100, 125

24  (1941) ("Since our decision in [*Parrish*], it is no longer open to question that the

25  fixing of a minimum wage is within the legislative power and that the bare fact of

26  its exercise is not a denial of due process under the Fifth more than under the

27  Fourteenth Amendment."); *Ferguson v. Skrupa*, 372 U.S. 726, 728–30 (1963)

28  ("Both the District Court in the present case and the Pennsylvania court in *Stone*

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

adopted the philosophy . . . that it is the province of courts to draw on their own views as to the morality, legitimacy, and usefulness of a particular business in order to decide **whether a statute bears too heavily upon that business and by so doing violates due process**. . . The doctrine that prevailed in *Lochner*, *Coppage*, *Adkins*, *Burns*, and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded.") (emphasis added); *Day-Brite Lighting Inc. v. State of Mo.*, 342 U.S. 421, 424–25 (1952) ("The only semblance of substance in the constitutional objection to Missouri's law is that the employer must pay wages for a period in which the employee performs no services . . . . But if our recent cases mean anything, they leave debatable issues as respects business, economic, and social affairs to legislative decision. We could strike down this law only if we returned to the philosophy of the *Lochner*, *Coppage*, and *Adkins* cases."). The Ordinance is subject to and survives the rational basis test, and this disposes of Plaintiff's due process claim as a matter of law.

## I.   Plaintiff's Eleventh Count Under Section 1983 Fails

Plaintiff's 42 U.S.C. section 1983 claim is based on the allegations in Plaintiff's other counts that the Ordinance is unconstitutional for various reasons. *See* Amd. Compl. at ¶¶ 258-261. Because those other counts fail and because the Ordinance is not unconstitutional, Plaintiffs section 1983 claim fails. *See, e.g.*, *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability.")

Further, this count seeks damages, and enactment of a law produces no legally cognizable damages – *enforcement* of an allegedly unconstitutional law does, and the City has not and does not enforce the Ordinance. Amd. Compl. at ¶ 121. SCHCC can cite no decision in which damages were or could have been awarded for the mere enactment of a law. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759–60 (1995) (Scalia, J., Concurring) ("A court does not—in the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.' . . . [I]f a plaintiff seeks to enjoin acts, harmful to him, about to be taken by a government officer . . . the court enjoins, in effect, not the execution of the statute, but the acts of the official, *the statute notwithstanding*.) (emphasis in original) *with* Ordinance at 7:20–8:25 (command to pay premium pay, but no mechanism for City to enforce).

## IV.   **CONCLUSION**

For all of the aforementioned reasons, the motion should be granted in full and Plaintiff's claims should be dismissed with prejudice.

Dated: September 22, 2021        BEST BEST & KRIEGER LLP


By: */s/ Christopher M. Pisano*
    JEFFREY V. DUNN
    CHRISTOPHER MARK PISANO
    DANIEL L. RICHARDS
    Attorneys for Defendants
    City of Culver city, Mayor Alex Fisch, Vice
    Mayor Daniel Lee, Council Member
    Yasmine-Imani McMorrin, Council
    Member Goran Eriksson, and Council
    Member Albert Vera

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55477.00005\34350614.4

- 25 -

2:21-CV-05052-MCS-RAO
DEFENDANTS' MOTION TO DISMISS