Catha Worthman, SBN 230399
catha@feinbergjackson.com
Genevieve Casey, SBN 264928
genevieve@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN
& WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998; Fax: (510) 269-7994

BRUCE A. HARLAND, SBN 230477
bharland@unioncounsel.net
WILLIAM T. HANLEY, SBN 327126
whanley@unioncounsel.net
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, California 94608
Telephone (510) 337-1001; Fax (510) 337-1023
*Counsel for Proposed Intervenor*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Southern California Healthcare System, Inc., a California Corporation, d/b/a Southern California Hospital at Culver City,<br><br>   Plaintiff,<br><br>v.<br><br>City of Culver City, et al.<br><br>   Defendants.<br>—————————————————<br>Service Employees International Union – United Healthcare Workers West,<br><br>   Intervenor. | Case No.: 2:21-cv-05052<br>Hon. Mark Scarsi<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY INTERVENOR SERVICE EMPLOYEES INTERNATIONAL UNION– UNITED HEALTHCARE WORKERS WEST; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: October 25, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 7C |

**MOTION TO DISMISS**

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 25, 2021, at 9:00 a.m., or as soon thereafter as the Court may schedule this matter, Intervenor Service Employees International Union – United Healthcare Workers West ("SEIU-UHW") will and hereby does move the Court to dismiss the First Amended Complaint in this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Southern California Healthcare System, Inc., a California Corporation, d/b/a Southern California Hospital at Culver City (the "Hospital" or "SCHCC") fails to state a claim for relief because (1) the Ordinance Establishing Premium Hazard Pay for On-Site Hospital Workers at Covered Hospitals ("the Ordinance") is not preempted by the National Labor Relations Act; (2) the Ordinance does not create an impermissible "class of one" without a rational basis in violation of the Equal Protection clauses of the United States or California constitutions, nor does it violate the ban on "special legislation"; (3) the Ordinance does not violate the Contracts Clauses of the United States or California constitutions because it does not substantially impair the Hospital's contracts; (4) the Ordinance is not an unlawful bill of attainder because it does not punish the Hospital; (5) the Ordinance is not a substantive due process violation because it is a minimum substantive labor standard and is not confiscatory; and (6) the Hospital's claims under 42 U.S.C. § 1983 are  invalid for the same reasons its constitutional claims fail.

This Motion to Dismiss is made following conference by counsel for all Parties pursuant to Local Rule 7-3, which took place on September 15, 2021, and is based on the accompanying Memorandum of Points and Authorities, the full records in this matter, and any further briefing or argument the Court permits.

Dated: September 22, 2021

       /s/ Catha Worthman
Catha Worthman

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND...................................................................2

III.  LEGAL STANDARD ............................................................................5

IV.   ARGUMENT..........................................................................................6

    A.  The First Cause of Action Should Be Dismissed Because the Ordinance Is Not Preempted by the National Labor Relations Act. .........................6

        1.  There Is No Express Preemption Under the NLRA ......................6

        2.  Under Well Established Law, Substantive Labor Standards Are Within Local Governments' Police Power and Are Not Preempted by the NLRA. ...............................................................................7

        3.  The Hospital Alleges No Facts Supporting a Claim That the Ordinance Is Preempted Under the *Machinists* Doctrine.................9

    B.  The Hospital's Equal Protection and "Special Legislation" Claims Should Be Dismissed Because the Ordinance Has a Rational Basis......11

        1.  The Hospital Is Not a Class of One.................................................12

        2.  Assuming *Arguendo* That the Hospital Is in a Class of One, the Ordinance Still Easily Survives the Equal Protection Challenge. ..13

        3.  The Cause of Action for "Special Legislation" Should Be Dismissed. ...................................................................................17

    C.  The Contracts Clause Claims Should Be Dismissed. ...........................18

    D.  The Bill of Attainder Causes of Action Should Be Dismissed..............21

    E.  The Substantive Due Process Claims Should Be Dismissed.................23

    F.  The Section 1983 Claims Must Be Dismissed......................................25

V.    CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*ACORN v. United States*,
    618 F.3d 125 (2d Cir. 2010) ...............................................................22

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978)............................................................................21

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
    834 F.3d 958 (9th Cir. 2016) ..................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................5

*Associated Builders & Contractors of S. California, Inc. v. Nunn*,
    356 F.3d 979 (9th Cir. 2004) .................................................................7

*Autotronic Sys., Inc. v. City of Coeur D'Alene*,
    527 F.2d 106 (9th Cir. 1975) ...............................................................23

*Bank Markazi v. Peterson*,
    136 S. Ct. 1310 (2016)........................................................................12

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007).............................................................................5

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*,
    507 U.S. 218 (1993)..............................................................................7

*Calfarm Ins. Co. v. Deukmejian*,
    48 Cal.3d 805 (1989) ..........................................................................24

*California Grocers Ass'n v. City of Long Beach*,
    No. 221CV00524ODWASX, 2021 WL 736627 (C.D. Cal. Feb. 25, 2021 .....1, 9

*California Grocers Ass'n v. City of Long Beach*,
    No. 221CV00524ODWASX, 2021 WL 3500960 (C.D. Cal. Aug. 9, 2021) .......6

*Campanelli v. Allstate Life Ins. Co.*,
    322 F.3d 1086 (9th Cir. 2003) ............................................................23

*Chamber of Com.v. Brown*,
 554 U.S. 60 (2008)............................................................................7

*Chamber of Com. v. Bragdon*,
 64 F.3d 497 (9th Cir. 1995) ............................................................8

*City of Los Angeles v. City of Artesia*,
 73 Cal. App. 3d 450 (1977) ...........................................................18

*Columbia Sussex Mgmt., LLC v. City of Santa Monica*,
 482 F. Supp. 3d 1002 (C.D. Cal. 2020) .........................................25

*Concerned Home Care Providers, Inc. v. Cuomo*,
 783 F.3d 77 (2d Cir. 2015) .............................................................8

*Connecticut Power Co.*,
 271 NLRB 766 (1984) ...................................................................11

*Conservation Force v. Salazar*,
 646 F.3d 1240 (9th Cir. 2011) .........................................................5

*F.C.C. v. Beach Commc'ns, Inc.*,
 508 U.S. 307 (1993)................................................................ 12, 17

*Fort Halifax Packing Co. v. Coyne*,
 482 U.S. 1 (1987)............................................................................8

*Fortuna Enterprises, L.P. v. City of Los Angeles*,
 673 F. Supp. 2d 1000 (C.D. Cal. 2008) ..........................................8

*Fowler Packing Co., Inc. v. Lanier*,
 844 F.3d 809 (9th Cir. 2016) .........................................................21

*Franceschi v. Yee*,
 887 F.3d 927 (9th Cir. 2018) .........................................................21

*Gerhart v. Lake Cty., Mont.*,
 637 F.3d 1013 (9th Cir. 2011) .......................................................11

*Golden State Transit Corp. v. City of Los Angeles*,
 686 F.2d 758 (9th Cir. 1982) .........................................................17

*Hal Roach Studios, Inc. v. Richard Feinberg & Co., Inc.*,
  896 F.2d 1542 (9th Cir. 1989); ................................................................5

*Hall v. Butte Home Health, Inc.*,
  60 Cal. App. 4th 308 (1997) ...............................................................18

*L. Sch. Admission Council, Inc. v. State of California*,
  222 Cal. App. 4th 1265 (2014) ..........................................................21

*Livadas v. Bradshaw*,
  512 U.S. 107 (1994)............................................................................11

*Lodge 76, International Association of Machinists & Aerospace Workers, AFL-
  CIO v. Wisconsin Employment Relations Commission*,
  427 U.S. 132 (1976)............................................................. 6, 9, 10

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ...............................................................5

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985)..........................................................................7, 8

*National Broadcasting Co., Inc. v. Bradshaw*,
  70 F.3d 69 (9th Cir. 1995) ...................................................................8

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977)............................................................................21

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992)................................................................................16

*Nw. Grocery Ass'n v. City of Seattle*,
  No. 21-cv-00142-JCC, 2021 WL 1055994 (W.D. Wash. Mar. 18, 2021) .......8, 9

*Pentecostal Church of God v. Douglas Cty.*,
  798 F. App'x 995 (9th Cir. 2020). ............................................... 12, 14

*Plaut v. Spendthrift Farm*,
  514 U.S. 211 (1995).............................................................................12

*Plyler v. Doe*,
  457 U.S. 202 (1982).............................................................................13

*Prime Healthcare Services, Inc. v. Harris*,
  216 F. Supp. 3d 1096 (S.D. Cal. 2016)........................................................... 14, 16

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
  768 F.3d 938 (9th Cir. 2014) ..................................................................7

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) ............................................................ passim

*Scott v. Henrich*,
  39 F.3d 912 (9th Cir. 1994) ...................................................................25

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
  309 F.3d 662 (9th Cir. 2020) ............................................................. 21, 22

*Steckman v. Hart Brewing*,
  143 F.3d 1293 (9th Cir. 1998) ..............................................................6, 25

*United States Trust Co. v. New Jersey*,
  431 U.S. 1 (1977)...........................................................................19

*Villegas v. Gilroy Garlic Festival Ass'n*,
  541 F.3d 950 (9th Cir. 2008) ...............................................................25

*W. Growers Ass'n v. City of Coachella*,
  No. 521CV00602JWHKKX,
  2021 WL 2926015 (C.D. Cal. July 12, 2021)................................... 6, 12, 17 25

*Wagner v. Cty. of Spokane*,
  No. 2:19-CV-40-RMP, 2020 WL 7241056 (E.D. Wash. Dec. 9, 2020) ...........25

*West Coast Hotel v. Parrish*,
  300 U.S. 379 (1937)....................................................................... 23, 24

*Wisconsin v. Constantineau*,
  400 U.S. 433 (1971).......................................................................23

*Woodfin Suite Hotels, LLC v. City of Emeryville*,
  No. C 06-1254 SBA, 2006 WL 2739309 (N.D. Cal. Aug. 23, 2006) .................8

**Statutes**

29 U.S.C. § 158(d) ..........................................................................7, 11

42 U.S.C. § 1983 ................................................................................25

42 U.S.C. 1988(b) ..............................................................................25

California Health and Safety Code §1250(a) .......................................15

**Rules**

Federal Rule of Civil Procedure 10 ....................................................5

Federal Rule of Civil Procedure 12(b)(6) ...........................................5

# I.  INTRODUCTION

The Hospital's First Amended Complaint ("FAC") does not cure any of the deficiencies of Plaintiff's original Complaint. For essentially the same reasons that the Court ruled that the Hospital had failed to establish a likelihood of success on the merits in denying the Hospital's motion for a preliminary injunction,[1] the Court should now dismiss the FAC: Culver City's hazard pay ordinance is a minimum substantive labor standard, supported by many rational bases, including first and foremost providing additional compensation for hospital workers who are laboring under extraordinarily difficult circumstances confronting COVID-19.

"The COVID-19 pandemic has been awful."[2] Hospital workers have not only borne an extreme risk of exposure to the disease, but also have been on the front lines of caring for the patients suffering with it. They have worked long hours and faced the stress of record hospitalizations, declining caregiver-to-patient ratios, longer work shifts and deferred time off. While all essential workers have faced intense demands and burdens during the pandemic, hospital workers have done so in unique circumstances, staffing large institutions where COVID patients continue to arrive in emergency rooms and fill beds in intensive care units. And the pandemic is not over: as the Los Angeles Times recently reported, "the latest wave of COVID-19 has brought hospitals back to the brink and destroyed hopes of a return to normalcy anytime soon."[3]

In recognition of hospital workers' services and to provide additional compensation to incentivize worker retention, the City of Culver City passed an

---

[1] ECF No. 59 ("Injunction Order" or "Inj. Order").
[2] *California Grocers Ass'n v. City of Long Beach*, No. 221CV00524ODWASX, 2021 WL 736627, at *1 (C.D. Cal. Feb. 25, 2021.
[3] E. Baumgaertner, "Here's how the most- and least-vaccinated states fared against the Delta variant," *Long Angeles Times* (Sept. 20, 2021), available at https://www.latimes.com/world-nation/story/2021-09-20/heres-how-the-most-and-least-vaccinated-states-fared-against-the-delta-variant; *see also* Rong-Gong Lin II and Luke Money, "COVID-19 vaccination rates lag in younger Black and Latino residents in L.A. County," *Los Angeles Times* (Sept. 18, 2021), *available at* https://www.latimes.com/california/story/2021-09-18/vaccine-rates-lag-younger-black-latino-los-angeles-county.

ordinance establishing premium hazard pay for on-site hospital workers at covered hospitals (the "Ordinance"). *See* ECF No. 76, FAC Ex. A at 75-85. The Ordinance requires an additional wage of $5.00 an hour to be paid to frontline hospital workers providing direct patient care and services supporting patient care for 120 days. As stated in a letter signed by over 40 hospital workers and others in support of the Ordinance, this compensation would support "the families [the workers] had to sacrifice time with so [they] could care for the community" and provide a sense of "value and respect." ECF No. 33-1 (Ex. J to the Declaration of Daniel L. Richards).

As the Court previously recognized in denying the Hospital's motion for a preliminary injunction, well-established law makes clear that Culver City has the authority to adopt the Ordinance.

To try to distinguish this case from the many others that have upheld similar laws, the Hospital makes vague accusations that SEIU-UHW's support for the Ordinance was improper. As the Court also previously recognized, none of these allegations are relevant to the constitutional analysis, and none pass the plausibility threshold applicable on a motion to dismiss. This is a routine minimum labor standards ordinance, enacted in extraordinary circumstances that more than justify its adoption. SEIU-UHW therefore requests that the Court dismiss the FAC with prejudice.

## II. FACTUAL BACKGROUND

In recognition of the hard work and dangerous conditions hospital workers have endured during the COVID-19 pandemic, and as an incentive to encourage them to remain in their jobs, Culver City passed the Ordinance at issue here. The Ordinance requires that "Hospital Workers," defined to mean any individual providing direct patient care and services supporting patient care at a Covered Hospital, be paid $5.00 an hour in premium hazard pay for each hour worked for 120 days. ECF No. 76, FAC Ex. A at 81-82. A Covered Hospital includes "any and

all hospitals as defined in California Health and Safety Code section 1250(a) that operate within the geographical borders of the City." *Id.* at 80. Hospital Workers entitled to premium pay include, *inter alia*, clinicians, nurses, aides, technicians, janitorial and housekeeping staff, security guards, food services workers, laundry workers, pharmacists, and nonmanagerial administrative staff. *Id.* at 81. Hospital Workers are entitled to premium pay under the Ordinance whether they are employed directly by a Covered Hospital or by a contracting employer that provides services at a Covered Hospital. *Id.* at 82. The Ordinance took effect July 14, 2021. *Id.* at 84; *see also* FAC ¶ 1.

The Ordinance includes the ability to opt-out of its hazard pay mandate in a collective bargaining agreement and it does not prevent an employer from taking any other action (e.g., reduction in hours or benefits). ECF No. 76, FAC Ex. A at 83. It also provides that "[i]f an Employer already provides hourly Premium Hazard Pay as of the effective date of this Ordinance, such compensation may be credited as part of the additional five dollars per hour required by this section." *Id.* at 81.

Among its findings in passing the Ordinance, the City recognized the unique risks and burdens faced by Hospital Workers, including that as of May 6, 2021, over 10,000 Hospital Workers in Los Angeles County had been infected with COVID-19, with "hospitals continu[ing] to report the highest proportion of overall employee infection among all healthcare worker and first responder settings." ECF No. 76, FAC Ex. A at 76. The City also acknowledged that "while existing community transmission of COVID-19 is at a lower level, it continues to present a substantial and significant risk of harm to the health of County residents and workforce," compounded by the risks of vaccine refusal, new COVID variants, and age and health conditions that make some people vaccine resistant. *Id.* at 76-77. Workload for Hospital Workers has been and will remain intense, the City's findings reflect, due to the continued COVID-related risks and pent-up demand for

healthcare. *Id.* at 78. The purpose of requiring hazard premium pay for Hospital Workers, the City stated, was to "(1) protect the health and welfare of its essential Hospital Workers, their families, and the community; (2) to recognize and compensate Hospital Workers for the risks and burdens they face every day and will continue to face in the coming months; (3) support stable incomes among Hospital Workers; and (4) promote job retention by ensuring Hospital Workers are adequately compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner." *Id.* at 80.

The potential hazard pay ordinance for hospital workers was first agendized in advance of the March 22, 2021, City Council meeting, and the Ordinance was adopted by a 3-2 vote on June 14, 2021. FAC ¶¶ 1, 86. Shortly before its adoption, the City enacted a parallel ordinance that requires premium hazard pay for grocery and drug store workers. *See id.* ¶¶ 6, 191; ECF No.10, FAC Ex. J at 289. Before adopting the Ordinance, the City received public comments and testimony including from hundreds of Hospital Workers urging support for the Ordinance, as well as community members. ECF No. 76, FAC Ex. C at 152. UHW supported the Ordinance and communicated with the City Council in favor of that support. *See, e.g.,* FAC ¶¶ 86-98, 110-11. The Hospital, meanwhile, opposed the Ordinance before the City Council and behind the scenes. *Id.* ¶¶ 100, 112.

While the Ordinance was pending before the City Council, collective bargaining was ongoing between UHW and the Hospital. Bargaining began in November 2020, and concluded on April 29, 2021. FAC ¶ 69. The hazard premium pay Ordinance was not a subject of bargaining. *Id.* ¶¶ 3, 74, 167. The union did not raise it, nor did the Hospital, despite knowing the Ordinance was under consideration at the City Council and lobbying against it. *Id.*

After the Ordinance was passed, the Hospital made numerous allegations against the City, to which the City responded by letter dated June 15, 2021. ECF No. 76, FAC Ex. R at 355. That letter stated that "the City has not accepted

assistance with legal costs or legal support from the union," and further that "there is [not] anything extraordinary" about the union offering to defend the Ordinance if it were challenged legally, because "it is common for unions and other organizations to become involved in litigation challenging an ordinance they support." *Id.*[4] On June 22, 2021, the Hospital initiated this litigation. The Hospital sought, but was denied, a preliminary injunction. ECF No. 59.[5] The City and SEIU-UHW then both moved to dismiss Plaintiff's claims. ECF Nos. 70, 71. After the motions to dismiss were fully briefed, Plaintiff filed its FAC. ECF No. 76.

### III.   LEGAL STANDARD

A motion under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (citation omitted). Dismissal is proper when there is no "cognizable legal theory" or in the "absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (citation omitted). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."[6] *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the

---

[4] The Staff Report to the City Council on May 24, 2021, recognized that "[t]here would be costs associated with defending any litigation that may be filed against the City if the ordinance is adopted." ECF No. 76, FAC Ex. N at 320.

[5] The Hospital has appealed the order denying preliminary injunction. ECF No. 60. SEIU-UHW understands the Hospital is seeking a stay of litigation pending the outcome of the appeal, which SEIU-UHW will oppose.

[6] Generally, courts do not consider evidence outside of the complaint when ruling on a 12(b)(6) motion, but may consider materials attached to and referenced in the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); *cf.* Fed. R. Civ. Proc. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). A court ruling on a 12(b)(6) motion may also consider a document if the complaint "necessarily relies" on it and "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Hospital's FAC is not based on any cognizable legal theory and it fails to allege facts that plausibly support its claims for relief, the Court should grant Intervenor's motion to dismiss without leave to amend.[7]

## IV.   ARGUMENT

### A.   The First Cause of Action Should Be Dismissed Because the Ordinance Is Not Preempted by the National Labor Relations Act.

The First Cause of Action, that the Ordinance is "preempted by the NLRA because it regulates zones of activity that Congress intentionally left to be controlled by the free play of economic forces," or that the Ordinance "expressly violates NLRA section 8(d)," must be dismissed. The Hospital has not alleged facts from which the Court could reasonably infer that the Ordinance is preempted by the NLRA either under an "express preemption" provision or under *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132 (1976). *See* FAC ¶¶ 162-174.

### 1.   There Is No Express Preemption Under the NLRA

To the extent the Hospital claims that the Ordinance "conflicts with" Section 8 (d) of the NLRA or is "expressly" preempted by this provision (*see* FAC ¶ 164), neither of which is clearly articulated as a claim distinct from the Hospital's *Machinists* preemption theory, discussed below, these arguments are completely without legal support. The plain text of the statute as well as abundant precedent establishes that the NLRA contains no express preemption provisions in Section

---

[7] Dismissal with prejudice is appropriate because further amendments would be futile. *See Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998). District courts have granted dismissal with prejudice in two recent cases involving similar hazard pay ordinances. *California Grocers Ass'n v. City of Long Beach*, No. 221CV00524ODWASX, 2021 WL 3500960, at *6 (C.D. Cal. Aug. 9, 2021); ; *W. Growers Ass'n v. City of Coachella*, No. 521CV00602JWHKKX, 2021 WL 2926015, at *12 (C.D. Cal. July 12, 2021).

8(d) or anywhere else.[8] The Hospital cites no authority to the contrary. Nor does the language the Hospital cites from Section 8(d)—bargaining "does not compel either party to agree to a proposal or require the making of a concession"[9]— "conflict" with the Ordinance. The Ordinance does not concern bargaining, does not compel agreement between the Hospital and any party with which it bargains, and is not "compulsion over the actual terms of the contract." The Ordinance is entirely unconcerned with the Hospital's labor agreements except in that it contains a waiver provision for collective bargaining agreements.[10]

### 2. Under Well Established Law, Substantive Labor Standards Are Within Local Governments' Police Power and Are Not Preempted by the NLRA.

Other than the baseless assertion that the Ordinance is in "conflict" with NLRA Section 8(d), the Hospital's preemption arguments are based upon the "*Machinists* preemption" doctrine, under which the NLRA preempts state or local laws that regulate "conduct that Congress intended to be unregulated." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749 (1985). *Machinists* preemption exists where state or municipal laws restrict economic "'weapon[s] of self-help,' such as a strike or lockout," that "Congress left . . . 'to be controlled by the free play of economic forces.'" *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 963 (9th Cir. 2016) (citing *Machinists*, 427 U.S. at 140, 146). By contrast, under longstanding precedent the *Machinists* doctrine does not preempt state or local laws setting substantive minimum labor standards, including wage increases

---

[8] *See, e.g., Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (the Act "contains no express pre-emption provision"); *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) (same); *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014) (same); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 963 (9th Cir. 2016) (same); *Associated Builders & Contractors of S. California, Inc. v. Nunn*, 356 F.3d 979, 987 (9th Cir. 2004) (same); *Long Beach,* 2021 WL 3500960, at *3 (same).
[9] 29 U.S.C. § 158(d).
[10] *Compare* ECF No. 76, FAC Ex. A at 83 (CBA exemption in Ordinance) *with* FAC ¶ 15 (quoting *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108 (1970), holding that the National Labor Relations Board may not compel the terms of a CBA).

1  such as the temporary hazard pay requirement at issue here, because such standards

2  do not interfere with or undercut collective bargaining.[11] Rather, they are merely

3  the "backdrop" for labor negotiations. *Metro. Life Ins.*, 471 U.S. at 757.

4       In its Motion for Preliminary Injunction, the Hospital rested its preemption

5  argument upon *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995),

6  but that case is of no avail, as the Court held in denying the preliminary injunction

7  motion. Inj. Order at 6-7. Fundamentally, the prevailing wage ordinance held to be

8  preempted in *Bragdon* is entirely dissimilar from the Ordinance, which is a

9  minimum labor standard of general applicability to union and non-union workers.

10 By contrast, the law in *Bragdon* imported collectively bargained wage and benefit

11 standards and applied them to workers on private construction projects, leaving

12 "*nothing* to bargain over" and thus interfering with the collective bargaining

13 process. *Nunn*, 356 F.3d at 991; *Nw. Grocery Ass'n*, 2021 WL 1055994, at *4. The

14 Ordinance does no such thing.

15      Rather, as with the hazard pay laws at issue in *Nw. Grocery Ass'n* and *Long*

16 *Beach*, the Ordinance provides a temporary wage premium to workers performing

17 specific jobs that subject them to risk and hardship during the ongoing COVID

18 pandemic; the same premium is applied regardless of the workers' current wage;

19

20  _____

[11] *See, e.g., Metro. Life Ins.*, 471 U.S. at 753 (law requiring health insurance plans to include mental health benefits set "minimum standards" and was therefore not

21  preempted); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 19–20 (1987) (law requiring severance payments when plants closed not preempted); *Am. Hotel &*

22  *Lodg. Ass'n*, 834 F.3d at 963-65 (hotel workers' minimum wage ordinance not preempted); *Nunn*, 356 F.3d at 990 (apprenticeship regulations not preempted);

23  *National Broadcasting Co., Inc. v. Bradshaw*, 70 F.3d 69, 72 (9th Cir. 1995) (overtime law in broadcast industry not preempted); *Concerned Home Care*

24  *Providers, Inc. v. Cuomo*, 783 F.3d 77, 83 (2d Cir. 2015) (home care workers' prevailing wage law not preempted); *Long Beach*, 2021 WL 3500960 (granting

25  motions to dismiss claims challenging grocery workers' hazard pay ordinance, including NLRA preemption claim); *Nw. Grocery Ass'n v. City of Seattle*, No. 21-

26  cv-00142-JCC, 2021 WL 1055994, at *2-5 (W.D. Wash. Mar. 18, 2021) (grocery workers' hazard pay ordinance not preempted); *Fortuna Enterprises, L.P. v. City of*

27  *Los Angeles*, 673 F. Supp. 2d 1000, 1006-12 (C.D. Cal. 2008) (hotel workers' living wage ordinance not preempted); *Woodfin Suite Hotels, LLC v. City of*

28  *Emeryville*, No. C 06-1254 SBA, 2006 WL 2739309, *12-*14 (N.D. Cal. Aug. 23, 2006) (same).

and the Ordinance does not regulate benefits, workplace conditions, or hours. *Nw. Grocery Ass'n*, 2021 WL 1055994, at *1; *Long Beach*, 2021 WL 3500960, *1-2; ECF No. 76, Ex. A at 81-84. The Ordinance sets a minimum labor standard that applies to union and non-union members alike and above all, that "does not interfere with the mechanics of the collective bargaining process" and therefore is not preempted by the NLRA. *Nw. Grocery Ass'n*, 2021 WL 1055994 at *4-5; *see also Long Beach*, 2021 WL 3500960, *3-4.[12] As it is a "valid and unexceptional exercise of [the City's] police power" (*Metro. Life Ins.*, 471 U.S. at 758) that "alters the backdrop of negotiations, not the mechanics of collective bargaining," it is not preempted. *Am. Hotel & Lodging Ass'n*, 834 F.3d at 965.

### 3. The Hospital Alleges No Facts Supporting a Claim That the Ordinance Is Preempted Under the *Machinists* Doctrine.

The facts alleged in support of the Hospital's NLRA preemption claim lend it no support. The Hospital points to nothing in the contours of the Ordinance or the circumstances surrounding its enactment that make the Ordinance different in any relevant way from the myriad state and local laws that have been upheld against *Machinists* preemption challenges. As the Court held in denying the preliminary injunction, the reasoning in the *Long Beach* preliminary injunction order "applies to this case," and the Court should again "decline[ ] [the Hospital's] invitation to make new law by enjoining a legislature's temporary wage supplement on NLRA preemption grounds." Inj. Order at 8:14, 9:10-11.

The Hospital's primary factual assertion in support of its preemption claim is that the Ordinance "empowers [SEIU-UHW] to secure a wage rate it could not otherwise obtain" in bargaining, though, puzzlingly, the Hospital also states repeatedly that hazard pay was not discussed by either side during bargaining. FAC

---

[12] As the Court held in the Injunction Order, like the Long Beach ordinance, Culver City's Ordinance does not "prohibit[] offsetting increased compliance costs in *every* way" and does not prohibit negotiations between SCHCC and the unions representing covered workers. Inj. Order at 8:14-27 (discussing *Long Beach*, 2021 WL 736627).

¶¶ 3, 74, 167. Given the Hospital's acknowledgement that hazard premium pay was not a topic of bargaining with UHW, it is unclear what the Hospital means by suggesting that UHW "could not…obtain" hazard pay for its members during bargaining or that the Ordinance represents "circumvention of the bargaining process." *Id.* ¶¶ 167, 195. What is clear is that the City published a meeting agenda stating that it would consider a healthcare worker hazard pay ordinance on March 22, 2021, and held public discussion of the ordinance at the meeting on April 12, 2021. FAC ¶ 84. Bargaining began in November 2020 and concluded on April 29, 2021 (FAC ¶ 67), yet the Hospital chose not to raise the subject of hazard pay in bargaining during the five weeks of negotiations in which the City's consideration of a hospital workers' hazard pay ordinance was a matter of public record. In these circumstances, it is nonsensical to say that the Ordinance allowed UHW to obtain a benefit it "could not" secure in bargaining.[13]

Nor would a failed attempt to negotiate over hazard pay in bargaining change the *Machinists* preemption analysis, even if it had occurred. The Ordinance would still be a substantive minimum labor standard affecting both union and non-union workers, "neither encouraging nor discouraging … collective bargaining." *Am. Hotel & Lodging Ass'n*, 834 F.3d at 963.

The Hospital also seems to suggest the Ordinance's "Exemption for Collective Bargaining Agreement" provision either strengthens the Hospital's preemption argument, or is an "illusion" because SEIU-UHW and the Hospital have a contract in place, and the union therefore has no "obligation" to bargain

---

[13] The other facts alleged in support of the Hospital's NLRA preemption claim is that the Ordinance "interferes with the most substantive economic terms" of its CBAs—namely, wages—and that the Hospital cannot "offset" the costs of hazard pay by reducing its workers' hours, wages, or benefits. FAC ¶¶ 169-170. But the fact that the CBAs have wage provisions and other protections for union members lends no support to the Hospital's preemption argument. There is no authority that a local wage law is preempted by the NLRA unless the employer can avoid all costs of compliance, and the fact that wages are a subject of bargaining does not mean the Ordinance is preempted; rather, the Ordinance's temporary wage increase requirement merely changes the "backdrop" for the Hospital's bargaining with the unions. *Am. Hotel & Lodging Ass'n*, 834 F.3d at 965; Inj. Order at 8-9.

over waiver of the hazard pay requirement. FAC ¶¶ 102-104, 173. Both arguments are meritless. First, "opt-out" provisions of this kind do not present NLRA preemption concerns. *See Am. Hotel & Lodging Ass'n*, 834 F.3d at 965 ("The Supreme Court has made clear … that the NLRA 'cast[s] no shadow on the validity of these familiar and narrowly drawn opt-out provisions'") (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 & n.26 (1994)). Furthermore, the opt-out provision is in no way illusory, as the Hospital is free to negotiate midterm modifications to its collective bargaining agreement with either SEIU-UHW or CNA if it can secure consent. Contrary to the Hospital's assertion that midterm negotiations "are not permitted" (FAC ¶ 168), Section 8(d) of the NLRA states only that parties to a collective bargaining agreement are not *required* to negotiate over modifications before an existing contract is reopened. 29 U.S.C. § 158(d). As noted in a case cited by the Hospital, nothing prohibits the Hospital from negotiating over hazard pay with either union if it chooses to open such negotiations. *See Connecticut Power Co.*, 271 NLRB 766, 766 (1984); Inj. Order at 8. The opt-out provision only underscores that the Ordinance does not "dictate" the terms of the Hospital's CBAs, much less interfere with the bargaining process, and is not preempted.

## B.   The Hospital's Equal Protection and "Special Legislation" Claims Should Be Dismissed Because the Ordinance Has a Rational Basis.

The Hospital's Equal Protection and Special Legislation Claims, the Second, Third, and Eighth Causes of Action, must also be dismissed.[14]

To succeed on a "class of one" Equal Protection claim, a plaintiff must establish that the Defendant "(1) intentionally (2) treated [it] differently than other[s] similarly situated . . .  (3) without a rational basis." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011); *Pentecostal Church of God v. Douglas*

---

[14] Analysis of an Equal Protection challenge under the federal and state constitutions is "substantially similar." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004).

*Cty.*, 798 F. App'x 995, 997-98 (9th Cir. 2020); Inj. Ord. at 9:23-10:2. As the Supreme Court has explained, there is nothing wrong with "particularized legislative action" including "laws that impose a duty or liability upon a single individual or firm." *Plaut v. Spendthrift Farm*, 514 U.S. 211, 239 n.9 (1995). Rather, such laws violate equal protection only if they are "arbitrary or inadequately justified." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1327-28 (2016) (collecting cases upholding "diverse laws that governed one or a very small number of specific subjects").

If there is "any reasonably conceivable state of facts that could provide a rational basis for the classification"—in other words, if there are "plausible reasons" for the challenged legislative action—an Equal Protection challenge will fail. *RUI One Corp.*, 371 F.3d at 1154.[15] Under the rational basis standard, legislative line-drawing is "virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id.* at 1155 (quoting *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 308 (1993)); *see also Coachella*, 2021 WL 2926015, at *9  (dismissing Equal Protection challenge to grocery and farm workers' hazard pay ordinance and citing *RUI One Corp.* for principle that legislative judgments are virtually unreviewable). The classification in the challenged law will be given "a strong presumption of validity" and the challenger has the burden to "negative every conceivable basis which might support it." *Beach Commc'ns*, 508 U.S. at 314-15 (citation omitted).

### 1.  The Hospital Is Not a Class of One.

The initial flaw in the Hospital's "class of one" argument (*see* FAC ¶ 179) is that the City, in passing the Ordinance, has not in fact created a class of one. In keeping with its right to "approach a perceived problem incrementally," *RUI One Corp*, 371 F.3d at 1155, the City has adopted hazard pay laws in two phases, first

---

[15] The Hospital concedes that for purposes of its Equal Protection claims, the Ordinance is subject to "rational basis" review. *See* FAC ¶¶ 179, 182, 194, 196-98.

an ordinance applicable to essential grocery and drugstore workers adopted May 10, 2021, then the Ordinance at issue here, adopted June 14. FAC ¶ 1; ECF No. 76, FAC Ex. 7 at 289. Thus, the Hospital is not the only business in Culver City that must provide COVID hazard pay. In fact, the Hospital acknowledges that the Ordinance is "patterned" on municipal grocery worker hazard pay laws like Culver City's, yet illogically claims the Ordinance "singles out" the Hospital. FAC ¶¶ 191, 242. Not only does the prior passage of the Culver City grocery worker hazard pay ordinance puncture the Hospital's allegation that it is in a "class of one," but it also further undermines the Hospital's argument that the true reason for the Ordinance's adoption was to "placate" UHW or "target" the Hospital out of "animus or antipathy" to the Hospital. FAC ¶¶ 194, 196. These accusations would not "negative every conceivable basis" for the Ordinance even if the Hospital *were* the only Culver City business that must provide hazard pay, but the existence of the grocery worker ordinance emphasizes the absurdity of these claims. If the City's reason for passing the Ordinance were animus toward the Hospital or a desire to gain SEIU-UHW's favor, its decision to start by providing hazard pay for grocery workers would be strange indeed.

### 2. Assuming *Arguendo* That the Hospital Is in a Class of One, the Ordinance Still Easily Survives the Equal Protection Challenge.

Even were the Hospital in a "class of one" under the Ordinance, there would be no Equal Protection violation, because, as the Court recognized in denying the preliminary injunction, the Hospital fails to identify any "similarly situated" comparators and, moreover, does not refute the City's rational bases for crafting the Ordinance as it did. *See* Inj. Order at 10-11.

Equal Protection does not require "things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted). Legislatures have "substantial latitude to establish classifications that roughly approximate the nature of the problem

1   perceived," and thus courts faced with an Equal Protection challenge "seek only

2   the assurance that the classification at issue bears some fair relationship to a

3   legitimate public purpose." *Id.* at 216. When a party raises a class of one challenge

4   but fails to allege facts showing that it is similarly situated to other persons or

5   entities who were treated differently, the claim will fail. *See, e.g., Pentecostal*

6   *Church of God*, 798 F. App'x at 998 (church's failure to show that other local

7   churches were similarly situated to it was fatal to its class of one claim); *Prime*

8   *Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1117-18 (S.D. Cal. 2016)

9   (in an action alleging that conditions the Attorney General imposed on hospital

10  sale violated Prime's Equal Protection rights, Prime did not "allege anything about

11  the *buyers* [in other hospital transactions] that could give rise to an inference that

12  [they] were similarly situated as Prime").

13          Here, as in *Prime*, the Hospital's FAC "indicates that no other similarly

14  situated comparator exists." 216 F. Supp. 3d at 1117. The FAC offers no facts

15  beyond a conclusory statement that the Ordinance "is underinclusive by not

16  including similarly situated healthcare facilities in the City and excluding workers

17  in the same buildings as covered hospital workers." FAC ¶ 187.

18          For purposes of Equal Protection analysis, there is no relevance to the

19  Hospital's erroneous insistence that certain workers at the Hospital are not covered

20  by the Ordinance, but it is important to note that this assertion is an unfounded and

21  incorrect interpretation of the Ordinance and that by failing to pay these workers

22  hazard pay, the Hospital is currently in violation of the Ordinance. Declaration of

23  G. Casey ("Casey Dec."), filed herewith, at ¶ 2. The Ordinance requires hazard pay

24  for all "Hospital Workers," defined to mean those who provide "direct patient care

25  and services supporting patient care at a Covered Hospital." ECF No. 76, FAC Ex.

26  A at 81-82. "Covered Hospital" means "any and all hospitals as defined in

27  California Health and Safety Code section 1250(a) that operate within the

28  geographic borders of the City." *Id.* at 80. The Hospital, in its entirety, is a

"hospital[] as defined in California Health and Safety Code section 1250(a)"—that is, a "general acute care hospital." The hospital's license makes this clear: the California Department of Public Health has issued a license, under a single license number, "to operate and maintain the following **General Acute Care Hospital**." Casey Dec., Exhibit A at 5-10. The Hospital's various "bed classifications" or services are listed below its name, but there are no separate facilities, licenses, or "sublicense[s]," contrary to the Hospital's implications. *See* FAC ¶ 33. In short, there is no legitimacy to the Hospital's assertion that workers in certain areas of the hospital do not work "at a Covered Hospital" and thus are excluded from the Ordinance.

Moreover, though insisting that the Ordinance "singles out one healthcare facility … while not requiring the same treatment of similarly situated healthcare facilities" (FAC ¶ 187), the Hospital fails entirely to identify any specific similarly situated comparator. Inj. Order at 10 ("SCHCC's equal protection ordinance is unlikely to succeed because SCHCC identifies no 'similarly situated' entity treated differently by the Ordinance."). Introductory portions of the FAC imply, but do not say explicitly, that the Hospital views skilled nursing, assisted living and long-term care facilities, and the City's police, fire and paramedic services, as "similarly situated" to it. FAC ¶¶ 2, 4. These references to an array of healthcare facilities as well as public safety and law enforcement providers are too imprecise to even make clear whether the Hospital is alleging they are all apt comparators. *See* Inj. Order at 10. This alone is enough to defeat the Hospital's class of one claim.

Furthermore, if this laundry list of facilities and providers is to be understood as an enumeration of entities the Hospital contends are "similarly situated" to it for class of one purposes, there are glaring differences between the Hospital and these comparators, including the Hospital's sheer size; the number of frontline healthcare workers it employs and the number of patients it treats (including COVID patients); the fact that, as a general acute care hospital, the

1  Hospital is required by law to provide a complex of medical services including an

2  emergency room and intensive care unit; the fact that the Hospital is a private, for-

3  profit entity; and more. Thus, the Hospital falls far short of showing it is "arguably

4  indistinguishable" from these comparators or like them "in all relevant respects."

5  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Prime*, 216 F. Supp. 3d at 1117.

6        Even if the Hospital identified similarly situated comparators, its Equal

7  Protection claims would fail because the City had rational bases for drafting the

8  Ordinance to apply only to workers at general acute care hospitals. The Ordinance

9  sets forth many reasons the City focused this hazard pay law on hospital workers,

10  including include the significant numbers of hospital workers who have contracted

11  COVID; the heightened risk of infection among hospital workers compared to

12  other healthcare workers and first responders; the toll taken by COVID on hospital

13  workers and their family and communities; the likelihood that the ongoing

14  pandemic, including new variants, unvaccinated patients, and "long-haul" COVID

15  sufferers, will continue to endanger and impose special burdens on hospital

16  workers; the pent-up demand for hospital-based healthcare and its impact on

17  workload; the fact that hospital workers often interact directly and for prolonged

18  durations with symptomatic and un-symptomatic COVID carriers; and the City's

19  goals of compensating hospital workers for their sacrifices and the services they

20  continue to provide to the community, supporting stable incomes for hospital

21  workers and promoting their job retention. *See* ECF No. 76, FAC Ex. A at 75-80.

22        The Hospital's contentions that the City was not actually motivated by these

23  concerns, or that the City's stated goals might have been better served by drafting

24  the Ordinance with either a narrower or a broader scope, are unavailing, because in

25  analyzing an Equal Protection claim, it is "irrelevant … whether the conceived

26  reason for the challenged distinction actually motivated the legislature," and

27  legislative choices are "not subject to courtroom fact-finding and may be based on

28  rational speculation unsupported by evidence or empirical data." *RUI One Corp.*,

371 F.3d at 1155; *see also Coachella*, 2021 WL 2926015, at *9 (any argument by the plaintiffs that the ordinance was irrational in its scope was "foreclosed" by *RUI One Corp.*). There is, therefore, no significance to the Hospital's allegations that the Ordinance will not serve its stated purposes or goals.[16]

Similarly, the Hospital's allegations that the Ordinance was "motivated by a desire to target SCHCC at the behest (or demand)" of UHW (FAC ¶ 195) is untrue but, moreover, is not germane to Equal Protection analysis. *RUI One Corp.*, 371 F.3d at 1146 n.7 (declining to consider allegations about a "supposed nefarious motive on behalf of the City Council" because "our analysis of the constitutionality of an ordinance must proceed from the text of the ordinance, not the alleged motives behind it"); *Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758, 761 (9th Cir. 1982) (a reviewing court "will not strike down an otherwise constitutional statute on the basis of an allegedly illicit legislative motive").[17]

### 3. The Cause of Action for "Special Legislation" Should Be Dismissed.

The fact that there is a rational basis for the Ordinance also requires dismissal of the Eighth Cause of Action for the ban on "special legislation" in the California Constitution. As the FAC states, "The test of validity under either the special legislation or the equal protection challenge is the same, namely, whether

---

[16] As the Court previously concluded (Inj. Order at 16), the Hospital's assertions that the Ordinance will provide hazard pay to workers who have not cared directly for COVID patients, ignores the economics of hospitals (as opposed to grocery stores), will not support job retention, and was adopted after "the COVID-19 emergency was well past its peak," are unpersuasive because Equal Protection analysis does not involve judicial fact-finding to second-guess the legislature. *RUI One Corp.*, 371 F.3d at 1155. With respect to the Ordinance's date of adoption in particular, rational basis inquiry "'attach[es no] legal significance to the timing' of a … municipal action." *Id.* at 1156.

[17] The Hospital's insistence that the City Council had an illegitimate purpose is also both circular and meritless. The Hospital contends that the City Council accepted legal support for the Ordinance in exchange for passing the Ordinance. FAC ¶ 31. By this logic, the proffered benefit to the City Council is the very thing that the City Council is providing in exchange for that benefit — support for the Ordinance. This argument hardly illustrates an illegitimate purpose. Furthermore, even if true, the accusation would not negate "every conceivable basis" for the classification. *Beach Commc'ns*, 508 U.S. at 314-15.

there is a rational relationship between the purpose of the enactment . . . and the singling out" of the person "affected by the statute." *City of Los Angeles v. City of Artesia*, 73 Cal. App. 3d 450, 455 (1977); FAC ¶ 241. The Hospital has not been "singled out," but the Court need not reach this issue to dismiss the "special legislation" cause of action because the Ordinance has a rational basis.

## C.   The Contracts Clause Claims Should Be Dismissed.

For the same reason that the Equal Protection claims fail, so, too, do the Hospital's Contracts Clause claims in the Fourth and Fifth causes of action.[18]  As the Court indicated in denying the preliminary injunction, 1) there is no substantial impairment of the Hospital's contracts here and 2) even if there were such a substantial impairment, the Ordinance is supported with a "significant and legitimate" public purpose under a rational basis standard. *See* Inj. Order at 15:12-14 (noting "The Ordinance . . . (1) is temporary; (2) concerns a heavily regulated industry; (3) is not retroactive; and (4) responds to pressing societal problems stemming from a global pandemic.").[19]

The bulk of the Hospital's Contracts Clause arguments concern the interaction of the Ordinance with the SEIU-UHW and CNA collective bargaining agreements, as well as its third-party service contracts. FAC ¶¶ 206-213. But the Hospital does not identify any specific contractual provision that has allegedly been substantially impaired. *See* Inj. Order at 14:26-28 (quoting *RUI One Corp.*,

---

[18] The standard for evaluating whether there is a violation of the state and federal Contract Clauses is "substantially the same." *Hall v. Butte Home Health, Inc.*, 60 Cal. App. 4th 308, 319 (1997); FAC ¶ 224.

[19] Sounding its persistent theme, the Hospital also claims that there is a Contracts Clause violation in part because there is "a troubling indication of a quid pro quo" suggesting "certain members of the City Council were acting as much in their own self-interest as in the interest of [SEIU-UHW]." FAC ¶ 219. But the evidence the Hospital has placed in the record refutes these claims, including the City Attorney's statement that the union's offer of support in defending the Ordinance was not "anything extraordinary," and not a quid pro quo because, among other things, there was no personal benefit conferred on any elected official. ECF No. 76, FAC Ex. R at 355.

"RUI has failed to identify any specific implied contractual right . . . that is impaired, substantially or not . . .").

Rather than pointing to any specific impaired contractual provision, the Hospital argues that the Ordinance results in increased financial obligations above its financial forecasts at the time of contract negotiations with SEIU-UHW.[20] But a local wage premium law does not substantially impair an employer's services contract or collective bargaining agreement. *See RUI One Corp.*., 371 F.3d at 1151 ("Compliance with nearly all environmental, workplace-safety, and public-health regulations requires private entities (and often government lessees) to divert resources that could otherwise be realized as profits by their owners…. Adoption of [Plaintiff's] rationale would subject all such measures to constitutional scrutiny, an approach the Supreme Court rejected more than half a century ago."). Moreover, an employment contract cannot contain a legally enforceable term that immunizes the employer from laws that may give enhanced rights, benefits, or protections to a contracting employee. "The legislature cannot bargain away the police power of a State." *RUI One Corp.*, 371 F.3d at 1149 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 23 (1977)). "Otherwise, one would be able to obtain immunity from the state regulation by making private contractual arrangements . . . [As] summarized in Mr. Justice Holmes' well-known dictum: 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.'" *Id.* at 1149. That is, the Hospital must comply both with its collective bargaining agreement obligations and with substantive labor standards implemented at the local, state, and federal levels.

In addition, as was true of the purportedly impaired lease agreement in *RUI*, the Hospital's collective bargaining agreements with UHW and CNA each contain

---

[20] FAC ¶¶ 208-213 (the Ordinance requires the Hospital to pay more than the stepped wage increases negotiated with the unions and will increase its costs under its vendor contracts).

a provision mandating compliance with state, federal, and local laws. *See* ECF No. 76, FAC Ex. U at 387 (SEIU-UHW CBA, art. 11) ("The Facility will comply with all applicable local, State, and Federal wage and hour requirements"); *id.* at 463 (CNA CBA, art. 11) ("The Employer will comply with all applicable local, State, and Federal wage and hour requirements"). Thus, as in *RUI One Corp.*, the collective bargaining agreements "provide[] that [the Hospital] will be subject to regulation that may change with time, not that it is immune from such regulation." 371 F.3d at 1150.

The FAC also states that the Ordinance is a "retroactive interference with bargained-for compromises" (FAC ¶ 219), but of course, the Ordinance is prospective and not retroactive in operation. Inj. Order at 15:13. To the extent that the Hospital is arguing that the Ordinance is retroactive because it impairs compromises previously made in the bargaining, that argument is defeated as shown above, because the terms of a collective bargaining agreement are subject to laws that may be implemented within the police power of a state or municipality.

Likewise, the Hospital participated in the political process before the City Council by advocating against the Ordinance while the collective bargaining agreement was being negotiated, so it cannot complain that it was a surprise that the City passed the ordinance. The Hospital could always have brought up the pending Ordinance in negotiations with UHW, yet chose not to do so. Nothing bars the Hospital from bringing up the Ordinance now with the union, or with any of its other contractual parties; while the employer cannot unilaterally implement changes that are contrary to the collective bargaining agreement, the contract can be reopened with mutual consent. *See supra* § IV.A.3.

Finally, the Hospital states that there is "no emergency" or "public need" for the Ordinance. FAC ¶ 219. While no such urgent need is required for the Ordinance to be valid, even if it were, the COVID pandemic is of course precisely

such an emergency.[21] *See*, *e.g*., ECF No. 76, FAC Ex. A at 75 (referencing declaration of state of emergency due to COVID).

**D.     The Bill of Attainder Causes of Action Should Be Dismissed.**

The Hospital's claim that the Ordinance is an unlawful "bill of attainder," its Sixth and Seventh Causes of Action, must also be dismissed.[22] A bill of attainder is "a 'law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Fowler Packing Co., Inc. v. Lanier,* 844 F.3d 809, 816-17 (9th Cir. 2016) (quoting *Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 468 (1977)). The key features of a bill of attainder are "that the statute (1) specifies the affected persons and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002). The "clearest proof" is required before courts can conclude that a legislative enactment is as a bill of attainder. *Id.* at 669.

The Ordinance is not a bill of attainder because, among other reasons, it does not "punish" the Hospital. "Not every law which burdens some persons or groups is a bill of attainder; after all, practically every law burdens someone." *Franceschi v. Yee*, 887 F.3d 927, 941 (9th Cir. 2018). As summarized in *Fowler Packing*, the "Supreme Court has identified three 'necessary inquiries' that can indicate whether a law inflicts punishment for purposes of the Bill of Attainder Clauses: '(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative

---

[21] It is not the case that "only an emergency of great magnitude can constitutionally justify a state law impairing the obligations of contracts." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 n.24 (1978).

[22] The standard for whether a law is a bill of attainder under California law and federal law is the same. *See L. Sch. Admission Council, Inc. v. State of California*, 222 Cal. App. 4th 1265, 1299 (2014) (applying federal law to hold that the statute requiring the administrator of the LSAT to provide accommodations was not a bill of attainder).

purposes"; and (3) whether the legislative record "evinces a congressional intent to punish.""" 844 F.3d at 817 (quoting *Nixon*, 433 U.S. at 473, 475-76, 478).

Here, the Ordinance does not fall within the historical meaning of legislative punishment, which includes sentencing the named individual to death, imprisonment, or banishment, punitive confiscation of property by the sovereign, or erecting a bar to designated individuals or groups participating in specified employments or vocations. *See id.*; *see also SeaRiver*, 309 F.3d at 673. A hazard pay law bears no relationship to these types of punishments.[23]

The second inquiry uses a "functional test" by asking "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Fowler*, 844 F.3d at 818. Here, as shown above, the law furthers nonpunitive legislative purposes, including compensating workers for their extraordinary service during the pandemic, and incentivizing their retention.

Finally, the record before the City Council does not reflect any "intent to punish." *See id.* at 818-19. Even assuming that the City Council or some members of it were motivated in part by a desire to support UHW, that does not reflect "unmistakable evidence of punitive intent." *See ACORN v. United States*, 618 F.3d 125, 138 (2d Cir. 2010). It is not punishment to require hospitals to pay workers a supplemental premium pay in a pandemic. The clear intent of the Ordinance is to provide wages to workers, not to impose a penalty. Providing such wages to workers is a "legitimate nonpunitive purpose[]." *See SeaRiver*, 309 F.3d at 675.

The Hospital alleges that "the Ordinance constitutes punishment because it marks SCHCC with the badge of infamy." FAC ¶ 232. It does no such thing. The Ordinance does not criticize or shame the Hospital for its past behavior; it merely provides that the Hospital shall pay a $5.00 an hour in premium pay to its workers

---

[23] The Ninth Circuit has not held squarely that a corporation can be subject to a bill of attainder, but has so assumed without deciding. *See, e.g.*, *Fowler Packing Co.*, 844 F.3d at 817.

for a short period of time. In any event, there is no case law linking the "badge of infamy" to a bill of attainder. That inapposite phrase comes from *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), a case that the Hospital cited to the City Council in arguing against the Ordinance.[24] In *Constantineau*, the Supreme Court struck down a Wisconsin statute that allowed individuals' names to be posted in liquor stores to prevent them from obtaining alcohol, which the Court held was facially unconstitutional as a matter of procedural due process because the law did not provide people whose names were posted with notice and an opportunity to be heard. 400 U.S. at 434-39. There is simply no comparison between being required to pay a modest premium wage to workers and the humiliation imposed on people labeled as excessive drinkers due to a public posting. If the Hospital were right, every substantive labor standard in a city where there is only one entity subject to that standard would be a bill of attainder. This would create an absurd result.

**E.      The Substantive Due Process Claims Should Be Dismissed.**

Laws establishing minimum substantive labor standards do not violate substantive due process. *See West Coast Hotel v. Parrish*, 300 U.S. 379, 398-99 (1937). Dismissal of the Hospital's Ninth and Tenth causes of action is thus appropriate.[25] It is well established that "[t]he power to regulate wages and employment conditions lies clearly within a state's or a municipality's police power." *RUI One Corp.*, 371 F.3d at 1150. As such, "[t]he standard for evaluating ordinances claimed to be violative of due process or equal protection is whether a rational basis exists for the police power exercised or classification established by the ordinance." *Autotronic Sys., Inc. v. City of Coeur D'Alene*, 527 F.2d 106, 108 (9th Cir. 1975). As shown above, it was rational for the City Council to require the

---

[24] *See* FAC ¶ 100 (referencing Hospital's May 10, 2021 letter to City Council opposing Ordinance); Casey Dec., Ex. B (May 10 letter).
[25] The analysis is the same under the state and federal due process clauses. *See Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1100 (9th Cir. 2003); FAC ¶ 256.

Hospital to pay $5.00 an hour to workers at the Hospital during a pandemic.

The Hospital's FAC alleges in conclusory fashion that $5.00 an hour paid to the Hospital Workers, which it estimates will cost it approximately $2 million, is "confiscatory" and prevents the Hospital from earning "a just and reasonable return." *See* FAC ¶¶ 216, 247. The "confiscatory" test the Hospital is using arises in the context of rate regulation, and there is no authority for applying it in the context of minimum labor standards—at least not since *West Coast Hotel* overturned *Lochner*-era precedent. *See* FAC ¶ 247 (citing rate regulation cases).

Even if this test did apply in the minimum labor standards context, the Hospital's allegations would fail to meet the plausibility threshold. This for-profit, private equity-backed Hospital can, on the face of the FAC, afford to pay $5.00 an hour for 120 days to its Hospital Workers, and the Ordinance is not "so restrictive as to facially preclude any possibility of a just and reasonable return." *See Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 816 (1989).[26] The Hospital's allegations boil down to arguments that it is limited in its ability to pass through the $2 million in costs it claims it will incur to pay the hazard pay required by the Ordinance, but a) it does not assert that it is impossible to do so, or to manage the Ordinance's costs in other respects, and b) it does not assert with any level of factual detail that it will not be able to make a "just and reasonable return."

---

[26] Even without getting into the facts of the hospital's finances, the face of the FAC belies this claim: the Hospital states that its 12-month total operating revenue declined 6%, or $13.1 million for the 12 months ending March 2021; i.e., its 12-month total operating revenue was about $205 million from March 2020-2021, while it received $8.6 million in taxpayer-funded federal COVID-19 relief. FAC ¶¶ 52, 57. A wage increase of $2 million in this context is hardly "confiscatory," in the sense of destroying all opportunity for "a just and reasonable return." Further, there are possible "safety valves," in that the Hospital can pass on charges to the individuals and entities not in fixed contracts, manage its costs, seek relief in bargaining through the collective bargaining opt-out clause (*see* § IV.A.3, *supra*), or appeal to the City which retains the right to "rescind the Ordinance before the full 120 days elapses if evolving conditions render it advisable to do so." Again, however, all that is required to survive due process here is for there to be a rational basis, as there is.

**F.      The Section 1983 Claims Must Be Dismissed.**

For all the reasons above, the Ordinance is constitutional. The Hospital's section 1983 claims must be dismissed based upon that conclusion alone.[27] "Because there is no constitutional violation, there can be no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008); *see also Columbia Sussex Mgmt., LLC v. City of Santa Monica*, 482 F. Supp. 3d 1002, 1016 (C.D. Cal. 2020) ("[B]ecause the Court has concluded that [plaintiff] fails to adequately allege an underlying constitutional violation, the Court GRANTS the Motion and dismisses Plaintiffs' *Monell* claim against the City."). "*Monell* violations are 'contingent on a violation of constitutional rights.'" *Wagner v. Cty. of Spokane*, No. 2:19-CV-40-RMP, 2020 WL 7241056 (E.D. Wash. Dec. 9, 2020) (quoting *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)).

## V. CONCLUSION

For all the reasons stated above, the Hospital has failed to state any claim that is plausible on its face and the Court should dismiss the entire FAC. Further, the Court should dismiss the Complaint with prejudice as any further amendments would be futile. *See Hart Brewing*, 143 F.3d at 1298 ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, . . . or where the amended complaint would also be subject to dismissal.").

In two recent cases concerning similar hazard pay ordinances, district courts granted motions to dismiss with prejudice, and the Court should do likewise here. *See Long Beach*, 2021 WL 3500960, at *6; *Coachella*, 2021 WL 2926015, at *12.

---

[27] The §§1983 and 1988(b) claims asserted throughout the FAC are contingent on other claims and therefore fail for the same reasons. *See* ¶¶ 199, 221, 235, 253.

Dated: September 22, 2021

Respectfully submitted,

FEINBERG, JACKSON,
WORTHMAN & WASOW, L.L.P.

WEINBERG, ROGER & ROSENFELD

By: /s/  Catha Worthman
Catha Worthman
*Attorneys for Intervenor*