Catha Worthman, SBN 230399
catha@feinbergjackson.com
Genevieve Casey, SBN 264928
genevieve@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN
& WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998; Fax: (510) 269-7994

BRUCE A. HARLAND, SBN 230477
bharland@unioncounsel.net
WILLIAM T. HANLEY, SBN 327126
whanley@unioncounsel.net
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, California 94608
Telephone (510) 337-1001; Fax (510) 337-1023
*Counsel for Proposed Intervenor*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Southern California Healthcare System, Inc., a California Corporation, d/b/a Southern California Hospital at Culver City.<br><br>        Plaintiff,<br><br>v.<br><br>City of Culver City, et al.<br><br>        Defendants.<br><br>_____<br><br>Service Employees International Union – United Healthcare Workers West,<br><br>        Intervenor. | Case No.: 2:21-cv-05052<br>Hon. Mark Scarsi<br><br>**DECLARATION OF GENEVIEVE CASEY IN SUPPORT OF MOTION TO DISMISS BY INTERVENOR SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST**<br><br>Hearing Date: October 25, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 7C |

## DECLARATION OF GENEVIEVE CASEY

I, Genevieve Casey, declare as follows:

1.      I am Senior Counsel at Feinberg, Jackson, Worthman & Wasow. With Catha Worthman, also of Feinberg, Jackson, Worthman & Wasow, and with Bruce Harland and William Hanley of Weinberg, Roger & Rosenfeld, I am counsel for Service Employees International Union – United Healthcare Workers West (SEIU-UHW). I have personal knowledge of the facts stated herein and, if called as a witness, could competently testify to these facts.

2.      On information and belief, Plaintiff Southern California Hospital at Culver City (the "Hospital") is in violation of Culver City's Ordinance Establishing Premium Hazard Pay for On-Site Hospital Workers at Covered Hospitals because it is not providing hazard pay to certain Hospital Workers who are entitled to such pay; the Hospital is withholding these workers' hazard pay on the grounds that they are exempt from the Ordinance because they work in the subacute or behavioral health areas of the Hospital, an incorrect interpretation of the Ordinance, which does not exclude workers based on where in the Hospital they work.

3.      Attached hereto as Exhibit A is a true and correct copy of license number 930000066, effective February 25, 2021, issued by the California Department of Public Health to Southern California Healthcare System, Inc. to operate Southern California Hospital at Culver City as a General Acute Care Hospital.

4.      Attached hereto as Exhibit B is a true and correct copy of a May 10, 2021, public comment letter from David A. Schwarz submitted to the Culver City Council on behalf of Southern California Hospital at Culver City (the "Hospital") opposing the Ordinance that is the subject of this litigation.

1    I declare under penalty of perjury under the laws of the United States that

2   the foregoing is true and correct. Executed this 22nd day of September, 2021, at

3   Berkeley, California.

4

5                                                    /s/Genevieve Casey

6                                                 Genevieve Casey

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

| | |
|---|---|
| **License:** | 930000066 |
| **Effective:** | 02/25/2021 |
| **Expires:** | 02/24/2022 |
| **Licensed Capacity:** | 612 |

# *State of California*
# *Department of Public Health*

In accordance with applicable provisions of the Health and Safety Code of California and its rules and regulations, the Department of Public Health hereby issues

## *this* **License** *to*

**Southern California Healthcare System, Inc.**

to operate and maintain the following **General Acute Care Hospital**

## Southern California Hospital at Hollywood

## Southern California Hospital at Culver City

**Southern California Hospital at Hollywood**
**6245 De Longpre Ave**
**Los Angeles, CA  90028-8253**

**Bed Classifications/Services**
100  General Acute Care
5 Intensive Care
3 Coronary Care
92 Unspecified General Acute Care

**Other Approved Services**
Mobile Unit - Computed Tomography (CT) Scan - Outpatient Services
Outpatient Services - Laboratory/Surgical
Outpatient Services - Urgent Care
Physical Therapy
Respiratory Care Services
Social Services

**(Additional Information Listed on License Addendum)**

**Refer Complaints regarding these facilities to:  The California Department of Public Health, Licensing and Certification, L.A. Acute/Ancillary Unit, 3400 Aerojet Ave., Suite 323, El Monte, CA  91731, (626) 312-1104**

**POST IN A PROMINENT PLACE**

### *State of California*
### *Department of Public Health*
### *License Addendum*

| | |
|---|---|
| License: | 930000066 |
| Effective: | 02/25/2021 |
| Expires: | 02/24/2022 |
| Licensed Capacity: | 612 |

**Southern California Hospital at Culver City**
**3828 Delmas Ter**
**Culver City, CA 90232-2713**

**Bed Classifications/Services**

- 311 General Acute Care
- 32 Rehabilitation
- 14 Perinatal
- 10 Coronary Care
- 10 Intensive Care
- 245 Unspecified General Acute Care
- 103 Acute Psychiatric (D/P)
- 18 Chemical Dependency Recovery (D/P)
- 21 Skilled Nursing (D/P)

**Other Approved Services**

- Audiology
- Basic Emergency Medical
- Cardiovascular Surgery
- Nuclear Medicine
- Occupational Therapy
- Outpatient Services - Behavioral Health - IOP Clinic
- Outpatient Services - Multispecialty at 3831 Hughes Avenue, Suite 105, Culver City
- Physical Therapy
- Respiratory Care Services
- Social Services
- Speech Pathology

**Southern California Hospital at Van Nuys D/P APH**
**14433 Emelita St**
**Van Nuys, CA 91401-4213**

**Bed Classifications/Services**

- 59 Acute Psychiatric
- 59 Acute Psychiatric Care

**Other Approved Services**

- Outpatient Services

This **LICENSE** is not transferable and is granted solely upon the following conditions, limitations and comments:
Consolidated license

*TOMÁS J. ARAGÓN, M.D., Dr.P.H.*

_____
Director and State Public Health Officer

*Joshua Williams*

_____
Joshua Williams, Staff Services Manager I

Refer Complaints regarding these facilities to:  The California Department of Public Health, Licensing and Certification, L.A. Acute/Ancillary Unit, 3400 Aerojet Ave., Suite 323, El Monte, CA 91731, (626) 312-1104

**POST IN A PROMINENT PLACE**

| | |
|---|---|
| License: | 930000066 |
| Effective: | 02/25/2019 |
| Expires: | 02/24/2020 |
| Licensed Capacity: | 612 |

# *State of California*
# *Department of Public Health*

In accordance with applicable provisions of the Health and Safety Code of California and its rules and regulations, the Department of Public Health hereby issues

## *this* **License** *to*

### Southern California Healthcare System, Inc.

to operate and maintain the following **General Acute Care Hospital**

### Southern California Hospital at Hollywood

### Southern California Hospital at Culver City

Southern California Hospital at Hollywood
6245 De Longpre Ave
Los Angeles, CA  90028-8253

**Bed Classifications/Services**
100  General Acute Care
5 Intensive Care
3 Coronary Care
92 Unspecified General Acute Care

**Other Approved Services**
Mobile Unit - Computed Tomography (CT) Scan - Outpatient Services
Outpatient Services - Laboratory/Surgical
Outpatient Services - Urgent Care
Physical Therapy
Respiratory Care Services
Social Services

**(Additional Information Listed on License Addendum)**

Refer Complaints regarding these facilities to:  The California Department of Public Health, Licensing and Certification, L.A. County Acute & Ancillary Unit, 3400 Aerojet Avenue, Suite 323, El Monte, CA  91731, (626)312-1104

**POST IN A PROMINENT PLACE**

### State of California
### Department of Public Health
### License Addendum

| | |
|---|---|
| License: | 930000066 |
| Effective: | 02/25/2019 |
| Expires: | 02/24/2020 |
| Licensed Capacity: | 612 |

Southern California Hospital at Culver City
3828 Delmas Ter.
Culver City, CA 90232-2713

**Bed Classifications/Services**

| | |
|---|---|
| 311 | General Acute Care |
| 32 | Rehabilitation |
| 14 | Perinatal |
| 10 | Coronary Care |
| 10 | Intensive Care |
| 245 | Unspecified General Acute Care |
| 103 | Acute Psychiatric (D/P) |
| 18 | Chemical Dependency Recovery (D/P) |
| 21 | Skilled Nursing (D/P) |

**Other Approved Services**

Audiology
Basic Emergency Medical
Cardiovascular Surgery
Nuclear Medicine
Occupational Therapy
Outpatient Services - Behavioral Health - IOP
  Clinic
Outpatient Services - Multispecialty at 3831
  Hughes Avenue, Suite 105, Culver City
Physical Therapy
Respiratory Care Services
Social Services
Speech Pathology

Southern California Hospital at Van Nuys D/P APH
14433 Emelita St.
Van Nuys, CA 91401-4213

**Bed Classifications/Services**

| | |
|---|---|
| 59 | Acute Psychiatric |
| 59 | Acute Psychiatric Care |

**Other Approved Services**

Outpatient Services

This **LICENSE** is not transferable and is granted solely upon the following conditions, limitations and comments:
  14 Perinatal  beds suspended from 02/20/2019 to 02/19/2020 at 3828 Delmas Ter.
  CONSOLIDATED

_Karen L. Smith, MD, MPH_
State Public Health Officer & Director

Stephanie  Devlin, Staff Service Manager I

Refer Complaints regarding these facilities to:  The California Department of Public Health, Licensing and Certification, L.A.
County Acute & Ancillary Unit, 3400 Aerojet Avenue, Suite 323, El Monte, CA  91731, (626)312-1104

**POST IN A PROMINENT PLACE**

License:           930000066
Effective:    02/25/2018
Expires:      02/24/2019
Licensed Capacity:      612

# *State of California*
# *Department of Public Health*

In accordance with applicable provisions of the Health and Safety Code of California and its rules and regulations, the Department of Public Health hereby issues

## *this* **License** *to*

### Southern California Healthcare System, Inc.

to operate and maintain the following **General Acute Care Hospital**

### Southern California Hospital at Hollywood

### Southern California Hospital at Culver City

Southern California Hospital at Hollywood
6245 De Longpre Ave
Los Angeles, CA 90028-8253

**Bed Classifications/Services**
100 General Acute Care
5 Intensive Care
3 Coronary Care
92 Unspecified General Acute Care

**Other Approved Services**
Mobile Unit - CAT Scan - Outpatient Services
Outpatient Services - Laboratory/Surgical
Outpatient Services - Urgent Care
Physical Therapy
Respiratory Care Services
Social Services

**(Additional Information Listed on License Addendum)**

Refer Complaints regarding these facilities to: The California Department of Public Health, Licensing and Certification, L.A. County Acute & Ancillary Unit, 3400 Aerojet Avenue, Suite 323, El Monte, CA 91731, (626)312-1104

**POST IN A PROMINENT PLACE**

### State of California
### Department of Public Health
### License Addendum

| | |
|---|---|
| License: | 930000066 |
| Effective: | 02/25/2018 |
| Expires: | 02/24/2019 |
| Licensed Capacity: | 612 |

**Southern California Hospital at Culver City**
3828 Delmas Ter
Culver City, CA  90232-2713

**Bed Classifications/Services**
311  General Acute Care
  32 Rehabilitation
  14 Perinatal
  10 Coronary Care
  10 Intensive Care
245 Unspecified General Acute Care
103  Acute Psychiatric (D/P)
  18  Chemical Dependency Recovery (D/P)
  21  Skilled Nursing (D/P)

**Other Approved Services**
Audiology
Basic Emergency Medical
Cardiovascular Surgery
Nuclear Medicine
Occupational Therapy
Outpatient Services - IOP Clinic at 9808
   VENICE BLVD., SUITE 403, CULVER CITY
Outpatient Services - Multispecialty Clinic at
   3831 Hughes Avenue, Suite 105, Culver City
Physical Therapy
Respiratory Care Services
Social Services
Speech Pathology

**Southern California Hospital at Van Nuys D/P APH**
14433 Emelita St
Van Nuys, CA  91401-4213

**Bed Classifications/Services**
59  Acute Psychiatric
  59 Acute Psychiatric Care

**Other Approved Services**
Outpatient Services

This **LICENSE** is not transferable and is granted solely upon the following conditions, limitations and comments:
   Consolidated license

_Karen L. Smith, MD, MPH_
_____
Director and State Public Health Officer

_____
Katrice Miller, Staff Services Manager I

**Refer Complaints** regarding these facilities to:  The California Department of Public Health, Licensing and Certification  L A

# EXHIBIT B

# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
310.228.3700 main
310.228.3701 fax
www.sheppardmullin.com

David A. Schwarz
310.228.3705 direct
dschwarz@sheppardmullin.com

File Number:  0100-923897

May 10, 2021

**Via Email and Messenger**
The Honorable Alex Fisch, Mayor
The Honorable Daniel Lee, Vice Mayor
The Honorable Göran Eriksson, Council Member
The Honorable Yasmine-Imani McMorrin, Council Member
The Honorable Albert Vera, Council Member
City of Culver City – City Hall
9770 Culver Blvd.
Culver City, CA 90232
Attn:    public.comment@culvercity.org
         city.clerk@culvercity.org

Re:    *City Council Meeting May 10, 2021: Agenda Item A-1. 21-952 CC –"Introduction of an Ordinance Establishing Premium Hazard Pay for On-site Hospital Workers at Covered Hospitals.*"

To the Members of the Culver City Council:

On behalf of Southern California Hospital at Culver City ("Southern California Hospital" or "SCHCC"), we respectfully submit comments on Agenda Item A-1, which we shall refer to as the "Proposed Ordinance." We request that this letter be included as part of the record for this Agenda Item, and that this letter be shared with the Members in advance of the Meeting.  For the reasons explained below, SCHCC opposes the Proposed Ordinance, at least in its present form.[1]

**SCHCC and its Response to the COVID-19 Pandemic**

SCHCC is Culver City's only full-service acute care hospital.  It has been in continuous operation since 1925, when Culver City's health officer built what is now SCHCC as the City's first hospital. It is widely recognized as a state-of-the-art facility providing 420 beds in its three buildings:  The Tower, which houses the Emergency Room, Detox Unit, Snf/DP, and Subacute; the Pavilion, where ICU, Stepdown, Telemetry, Medical Surgical Units, Acute Rehabilitation Unit, and two Mental Health Units are located; and the Hughes Building "one story," the site of IOP, Imaging, and Cardiology services.  Because SCHCC is affiliated with the Southern California Hospitals at Hollywood and Van Nuys (with a combined bed capacity of over 570

---

[1] The first "notice" SCHCC had that the City had agendized the issue of Hazard Premium Pay was on April 9, 2021, three days before the April 12, 2021 City Council meeting.  That "notice" was not provided by the City, but by the California Hospitals Association, which brought this proposal to SCHCC's attention.

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 2

beds), the three hospital system represents the fourth-largest combined facility in the greater Los Angeles region.

SCHCC has consistently ranked in the top five percent in the nation among acute care hospitals for patient safety, having received the Healthgrades Patient Safety Excellence Award in 2015, 2016, 2018, and 2019.  In addition to being consistently recognized by Healthgrades in the top ten percent of pulmonary care practices in the nation by Healthgrades (2005-2018), Southern California Hospital was a 2020-2021 Healthgrades Five-Star Recipient for pulmonary care, treatment of pneumonia, and treatment of chronic obstructive pulmonary disease – among the most critical specialty practices for the treatment of COVID-19 related illnesses.

SCHCC provides services to 28,000 patients on an annual basis. SCHCC has approximately 1,200 employees, including 347 nonmanagerial registered nurses, along with clinicians, nurse practitioners, respiratory therapists, technicians, pharmacists, food services workers, security guards, janitorial workers, housekeeping staff, laundry workers, and nonmanagerial administrative staff.

For nine months during the height of the pandemic—from May 2020 to January 2021—SCHCC took measures to mitigate the stress on and risk to it staff and their families by providing, at no cost, hotel accommodations, meals, and child care, as well as retention bonuses.  SCHCC's Staff Support Program contracted with skilled nursing agencies to hire additional staff to relieve some of the burdens on its already overtaxed nursing staff.  Financial support also included a 401(k) loan program and a Paid Time Off Donation Program.  All direct patient care and ancillary support staff received everything mentioned above.  The hospital's Emotional Support Program included counseling, extended meals and rest breaks based on patient volumes, greater scheduling flexibility, and routinized calls and "check-ins" to employees out with COVID-19.  Although the financial outlays to support these efforts cannot be measured solely in monetary terms, the expenditure – over $1.85 million – was, by any comparative measure, very substantial.  This expense benefited not only SCHCC and its staff, but ensured continuity of services to the community.  Based on a high-level breakdown of this amount, this resulted in awarding each SCHCC non-managerial employee on average $1,282 in incentive and bonus pay, with the remainder of the $1.85 million used to fund free meals, hotel accommodations, and childcare.

For the past three weeks, SCHCC's COVID-19 patients have been in the single digits. Currently, there are **no** COVID-19 patients in the ICU or on ventilators.  During the height of the crisis, SCHCC was positioned to serve the community, with the ability to serve up to 65-70 ICU level patients. SCHCC also obtained the ventilators needed for existing patients, as well as extra ventilators for possible future need. Should the pandemic have continued unabated, with the number of community members needing ICU level care with ventilators increasing, Southern California Hospital was prepared.  As we are all aware, the number of COVID-19 cases needing hospitalization has continued to decrease.  Today's numbers are due to a combined response by the community and SCHCC: the community continued to mask up and social distance, while Southern California Hospital dedicated substantial resources to vaccinating thousands of community members along with its staff.  SCHCC is now in a position to redirect resources from

**SheppardMullin**

Culver City Council
May 10, 2021
Page 3

COVID-19 care to other patient care needs, without impairing the hospital's ability to address any unanticipated spikes in COVID-19 cases.  Although the future can be unpredictable, there no longer appears to be an emergency warranting immediate action.

SCHCC recently concluded negotiations with SEIU with respect to a new collective bargaining agreement for all nonmanagerial workers with the exception of registered nurses. Significantly, during those negotiations, SEIU never proposed what Culver City would now impose on SCHCC.  Instead, on March 25, 2021, SEIU made an initial "Hero Pay" proposal limited to: (1) severance benefits (two weeks per year of service) for employees terminated as result of the reduction in force announced to SEIU on March 19, 2021; and (2) continued payment of the affected employee's health insurance benefits through the end of calendar year 2021.[2]  SCHCC rejected these proposed terms on March 31, 2021. SEIU withdrew them on April 29, 2021.  That same day, the parties reached agreement subject to ratification by the employees.  In a flyer distributed to its members entitled "WE WON A GREAT CONTRACT," SEIU recommended ratification.  The new agreement has now been ratified. Under the new agreement, employees will receive an aggregate $11.5 million wage increase over three years.

**The Proposed Ordinance**

The Proposed Ordinance applies to "any and all hospitals," as defined in Cal. Health and Safety Code section 1250(a), "that operate within the geographical borders of the City." (Section 1.B.) Since SCHCC is the only such hospital in Culver City, but certainly not the only health care facility or service provider whose employees have had front-line exposure to COVID-19 (e.g., urgent care facilities, skilled nursing facilities, and even City EMS personnel), the Proposed Ordinance singles out SCHCC, without explanation,[3] notwithstanding its extraordinary record in treating patients and in providing COVID-19 related support to its non-managerial and non-physician/surgeon staff that would be covered by the Proposed Ordinance (Section 1.D).

To our knowledge, no city in the State of California – except Culver City – has sought to impose a hazard bonus on any acute care hospital, let alone targeted only one front-line health care provider for such disparate treatment.  Should this ordinance be adopted, SCHCC would be the ***only*** acute care hospital in the State of California singled out by a city or county ordinance.  The lack of any rational or legitimate purpose behind this targeting is underscored by the fact that similarly-situated front-line workers – including Culver City's first responders, i.e., paramedics, firefighters and police – are excluded from this mandated "Premium Hazard Pay" bonus.

---

[2] C.N.A., which represents 347 nonmanagerial registered nurses at SCHCC, did not ask for any "Hero Pay."

[3] When it was first agendized for discussion by the City Council on March 22, 2021, the title of Proposed Ordinance expressly referenced "Hero Pay" for "Front-Line Workers at Southern California Hospital."

**SheppardMullin**

Culver City Council
May 10, 2021
Page 4

This offends basic notions of fairness and the constitutional safeguards of equal protection under the law.  It deprives SCHCC of due process of law because it brands one employer via special legislation with the inference that, absent intervention by the City Council, SCHCC would have refused to acknowledge or redress their employees' sacrifices during the COVID-19 pandemic.  The Proposed Ordinance violates (and therefore is preempted by) the National Labor Relations Act ("NLRA"), which forbids states from interfering in the bargaining process by imposing substantive economic terms between one employer and its employees' labor representative.  Because it would compel SCHCC to compensate its employees for risks already incurred as well as financial losses and the stress and emotional toll already sustained during the pandemic, the Proposed Ordinance can only be viewed as a form of workers' compensation over which the Legislature exercises plenary authority under article XIV, section 4 of the California Constitution.  There is also the serious question as to whether the City has authority to dictate such terms where, as here, at least one-third of the employees subject to the Proposed Ordinance do not work within the geographical borders of Culver City; their place of employment is the Tower, which is located in the City of Los Angeles.

SCHCC recognizes that emergency situations may require emergency measures.  However, once the emergency has subsided, such measures can no longer be justified.  As currently drafted, the proposed Premium Hazard Pay continues for 120 days, regardless of the number of COVID-19 patients admitted to SCHCC, or whether Governor Newsom withdraws his March 4, 2020 State of Emergency Declaration. Viewed in this light, the Proposed Ordinance has little to do with any on-going emergency that might justify targeting the only "Covered Hospital" serving Culver City.

For the reasons discussed below, the Proposed Ordinance is vulnerable to these legal challenges.[4]  It is possible that certain of these could be addressed – for example, by replacing the arbitrary 120-day duration of the Premium Hazard Pay period with a sunset provision tied to the withdrawal of the Governor's State of Emergency Declaration – to come up with a less arbitrary (and punitive) structure that would not only reflect other COVID-19 related hazard pay or incentive bonuses provided by other health care providers, but would allow SCHCC to offset any amounts based on COVID-19 related cash bonuses or in-kind benefits already paid to its employees.  These adjustments, while a step in the right direction, cannot cure the facial statutory or constitutional defects in the Proposed Ordinance.

**The Proposed Ordinance Is Vulnerable to Myriad Legal Challenges**

1.      Unconstitutional "Class of One" Discriminatory Treatment.

The targeted nature of the Proposed Ordinance presents one of those rare instances where an Equal Protection Clause challenge may be  sustained, even under the forgiving "rational basis" standard of review, because there is no plausible or equitable justification to

---

[4] There are other grounds upon which to base legal challenges, which we do not discuss here. *See, e.g., California Grocers Association v. City of Long Beach*, Case No. 21-51744 (9th Cir.) (Contracts Clause).  Instead, we focus on claims unique to the Proposed Ordinance.

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 5

treat SCHCC differently from every other employer providing front-line health care services in Culver City.[5] It is, on the other hand, easy to understand the dangers presented where one employer, alone, must defend itself against legislation which more resembles a bill of attainder than a law of general application. As Justice Jackson said in his (deservedly famous) concurring opinion in *Railway Express Agency, Inc. v. New York*: "[N]othing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation." 336 U.S. 106, 112-113 (1948). This aptly describes the Proposed Ordinance.

The Proposed Ordinance offers no explanation, legitimate or otherwise, justifying the duration or amount of Premium Hazard Pay, or why compensating workers for "daily sacrifices" and "ongoing risks" faced during the pandemic is necessary now in light of the precipitous decline in COVID-19 hospitalizations. It is not sufficient for the proponents to argue that, because Southern California Hospital is the only "Covered Hospital" with operations in Culver City, it is neither possible nor relevant to identify any similarly-situated comparators. The fact that there is no other acute care facility in Culver City has no bearing on whether Southern California Hospital is being singled out for discriminatory treatment, nor does this explain away the apparent lack of any rational and legitimate basis for the class-of-one created by the Proposed Ordinance.

2.      The Legislative Targeting of One Employer Without Any Legitimate Basis Violates Due Process.

The manner by which SCHCC is targeted implies that it required a City Council ordinance to compel one employer to acknowledge and to compensate its front-line medical workers for their "increased risk," emotional toll," and "daily sacrifices" during the pandemic. This is the essence of trial by legislature, whereby "a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, [without] notice and an opportunity to be heard." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Here, what the City proposes to do would not only denigrate SCHCC's extraordinary financial commitments to its workers and to the community from the onset of the pandemic. It would impose a multi-million dollar penalty, without due process of law, based on the inferred finding that SCHCC failed to adequately compensate employees while they risked their lives to save COVID-19 patients. *Constantineau*, 400 U.S. at 437 ("Yet certainly where the State attaches a 'badge of infamy' to the citizen, due process comes into play.") By imposing hazard pay now, it would appear that the City is trying to take credit for rewarding the hospital workers, and would do so

---

[5] *See Fowler Packing Co. v. Lanier*, 844 F.3d 809, 816 (9th Cir. 2016) ("Accepting Plaintiffs' allegations as true, the only conceivable explanation for AB 1513's carve-outs is that they were necessary to procure the [union's] support in passing that legislation. . . . [T]hat justification would not survive even reasonable basis scrutiny.").

**SheppardMullin**

Culver City Council
May 10, 2021
Page 6

without any acknowledgement of the extraordinary measures already taken by SCHCC to acknowledge and to reward its employees for their sacrifices.

3.      The Proposed Ordinance Is Preempted by the NRLA.

The ordinance would impose what the SEIU never proposed during lengthy, voluntary collective bargaining (17 sessions during the period from November 2020 through April 2021).[6] As already noted, its two "Hero Pay" proposals were considerably narrower than the significant wealth transfer mandated by the Proposed Ordinance.  It is hard to imagine a more conspicuous, undisguised and unlawful intrusion into the bargaining process, or a more blatant interference with the bedrock purposes of the NLRA – to protect the integrity of the bargaining process without dictating the substantive terms of the bargain.

Under longstanding precedent, the U.S. Supreme Court has made clear that government "attempts to influence the substantive terms of collective bargaining agreements are preempted by the NLRA," which intended "to leave the parties free" from any state or local interference, including dictating the terms and conditions of a labor agreement between one employer and its employees' labor representatives.  *Machinists v. Wisconsin Emp. Rel. Comm'n*, 427 U.S. 132, 153 (1976).  Under the "*Machinists* preemption" doctrine, a state may not "put its thumb on the scale" by interfering with free market forces or the use of permitted economic weapons, such as strikes or lockouts, that are essential to enabling the private ordering of labor-management relationships. In particular, *Machinists* preemption is intended to insure that a state may not force parties to "make any concessions as a result of Government compulsion and that they are free from having contract provisions imposed upon them against their will."  *NLRB v. Burns Int'l Security Svcs., Inc.*, 406 U.S. 272, 287 (1972).

Not all state regulation that affects the substantive terms of labor negotiations are preempted by the NLRA, including certain state laws that set minimum labor standards of **general applicability**.  Because the purpose of the NLRA is to create a more equitable bargaining **process,** "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985). The same cannot be said about the Proposed Ordinance.  Unlike the statute upheld in *Metropolitan Life*, which required all general health insurance policies or employee health-care plans that covered hospital and surgical expenses to also include minimum mental health care benefits, *id*. at 756-757, the Proposed Ordinance dictates a specific amount to be paid over a specific period of time by one, specified employer to one, specified set of its employees.

Although its preambular clauses claim that the Proposed Ordinance will "promote public safety," it takes more "to dress up what looks to be an interest group deal in public interest clothing," *Natl. Solid Wastes Management Ass'n v. Killian*, 918 F.2d 671, 684 n.18 (7th Cir. 1990), just as it takes more to recast the legislative targeting of one employer as nothing more

---

[6] Twelve of these sessions (during the period from November 9, 2020 through March 18, 2021) took place before SEIU proposed Hero Pay on March 25, 2021.

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 7

than a routine exercise of police power.  *Cf. Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d 497, 503 (9th Cir. 1995) ("This Ordinance differs from the usual exercise of police power, which normally seeks to assure that a minimum wage is paid to all employees within the county to avoid unduly imposing on public services such as welfare or health services.").

As in *Bragdon*, a court need not decide whether the Proposed Ordinance "is a legitimate exercise of police power. The question is whether it can stand or whether it is pre-empted by the NLRA."  64 F.3d at 503-4. The Proposed Ordinance would fail for the same reasons why the bespoke wage settings in *Bragdon* were preempted by the NLRA:

> A precedent allowing this interference with the free-play of economic forces could be easily applied to . . . redirect efforts of employees not to bargain with employers, but instead, to seek to set minimum wage and benefit packages with political bodies. This could invoke defensive action by employers seeking to obtain caps on wages in various businesses or industries. . . . This substitutes the free-play of political forces for the free-play of economic forces that was intended by the NLRA.

*Id.* at 504.

The Proposed Ordinance pertains to a specific subject that was addressed during collective bargaining, and withdrawn. Presumably, SEIU withdrew its Hero Pay proposal in exchange for securing additional benefits and concessions at the bargaining table. The Proposed Ordinance would give SEIU what the union failed to obtain during collective bargaining – and a great deal more.  The effect of the Proposed Ordinance is a retroactive and (we believe) impermissible intrusion into the collective bargaining process which is preempted by the NLRA.

4.      Because Only the Legislature May Regulate Workers' Compensation, a City Ordinance Proposing to Compensate Employees For Risks, Losses, or Stress Already Sustained Would Be Preempted by the California Constitution – a Point Underscored by Pending Legislation (AB 650) Intended to Compensate for On-the-Job, COVID-19 Related Sacrifices.

Even if the City has the authority to prospectively increase wages as to only one employer, it is not possible to view the Premium Hazard Pay—to be paid for each hour worked on or after the effective date of the Proposed Ordinance, which is June 23 at the earliest—as anything other than a form of workers' compensation *for risks already incurred as well as financial losses and emotional toll sustained due the pandemic*.  Although the Proposed Ordinance purports to provide prospective "Premium Hazard Pay" (Section 2), the WHEREAS clauses justify it as a means to redress "increased risk" of infection, "emotional toll," and "stress." These are conditions typically addressed through the workers' compensation system. The City Council has no authority to interfere with the Legislature's constitutional and "plenary power .. . . to create, and enforce a complete system of workers' compensation."  Cal. Const., art. XIV, sec. 4.  Our state constitution preempts a political subdivision from regulating an area

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 8

of law fully occupied by the state.[7]   Moreover, given the current extremely low (virtually zero) COVID-19 caseload at SCHCC, these are conditions, if they have affected SCHCC workers at all, that arose from risks incurred for past work.

5.      The Proposed Ordinance Cannot Be Justified in Light of the Dramatic Decline of COVID-19 Cases.

        The absence of any nexus between the Proposed Ordinance and prospective public health and safety risks is underscored by the fact that the Premium Hazard Pay is not tied to a continuing COVID-19 related emergency, the duration of the pandemic, the number of COVID-19 cases, hospitalizations, or deaths, or any state, local, or national declaration of emergency. Even if the Proposed Ordinance could offer a plausible link between the existence of an emergency and the need for Premium Hazard Pay as to only one health care provider, "[t]o justify a measure which deprives persons of a fair return, however, an emergency would have to be a temporary situation of such enormity that all individuals might reasonably be required to make sacrifices for the common weal."  *Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 820-21 (1989) (quotation omitted).

        Once the emergency has subsided, such a measure is not justified.  In this case, the only health care entity required to make "sacrifices for the common weal" would be SCHCC. The Premium Hazard Pay continues for 120 days,[8] regardless of whether Governor Newsom withdraws his March 4, 2020 State of Emergency Declaration – something he has indicated could occur as early as next month. SCHCC remains compelled to pay the Premium Hazard Pay, whether it has 2 or 200 COVID-19 cases.

        We recognize, as did the California Supreme Court in *Calfarm*, "that emergency situations may require emergency measures." 48 Cal.3d at 820 (collecting cases).  But it is no longer plausible to argue that the circumstances which inspired the dramatic state and local interventions at the outset of the COVID-19 crisis could now justify the Proposed Ordinance, even if COVID-19 were to remain a chronic public health issue.  *Id.* at 821 (explaining that a "long term, chronic situation" does not warrant "an emergency measure fashioned to meet a

---

[7] *See Candid Enterprise v. Grossmont Union High School District*, 39 Cal. 3d 878, 886 (1985).

[8] This duration is entirely arbitrary and appears to have been simply copied from other similar ordinances adopted as much as four or more months ago with respect to grocery workers. In contrast, AB-650, the Health Care Workers Recognition and Retention Act, which is currently under consideration by the Legislature and would provide "COVID-19 hazard pay retention bonuses" to "health care workers," is tethered to the existence of an emergency. If enacted, it would "become inoperative when the state of emergency relating to the COVID-19 pandemic terminates pursuant to Section 8629 of the Government Code." (AB-650, section 1497.)  In other words, when Governor Newsom rescinds his State of Emergency Declaration.  At the very least, the Proposed Ordinance should terminate once this eventuates.

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 9

temporary exigency"). The same conclusion applies equally to the Proposed Ordinance – assuming it was intended to address a continuing emergency, which it does not.

6.      Because SCHCC Does Not "Operate Within the Geographical Borders of Culver City," the City Council Lacks Jurisdiction to Compel it to Pay Hazard Bonuses.

        The Proposed Ordinance purports to regulate only those acute care hospitals "as defined in California Health and Safety Code section 1250(a) that operate within the geographical borders of the City." This reflects a basic, constitutional limitation on the authority of any municipality in California, including charter cities: A charter city may only regulate within its boundaries.[9] Culver City, as with any other municipal corporation, generally has no extraterritorial powers of regulation. It may not exercise its government functions beyond its corporate boundaries.[10]

        Had the drafters of the Proposed Ordinance consulted a plat map, they would have seen that of SCHCC's two, principal primary care facilities, one – the Tower – is located **outside** the geographical borders of the City. It is located in the City of Los Angeles. Thirty-five percent of SCHCC's operations (Emergency Room, Detox Unit, Snf/DP, and Subacute) are in the Tower and are, therefore, outside the geographical borders of the City. Culver City has no authority to regulate outside its geographical borders.[11]

7.      As Drafted, the Proposed Ordinance Constitutes an Unlawful "Double Recovery" for the Same Conduct.

        The Proposed Ordinance requires Southern California Hospital to pay 100 percent of the required Premium Hazard Pay regardless of whether the City of Los Angeles or AB 650 were to impose similar economic burdens on SCHCC. (*See* Section 6: "Coexistence with other Available Relief for Deprivations of Protected Rights") Either scenario, however, would result in a "double recovery" exceeding the compensatory purpose of the Proposed Ordinance.[12]  In fact,

---

[9] The Culver City Charter limits the City's powers to those "which may be granted to a charter city under the Constitution and laws of the State," including "the power to make and enforce all laws and regulations with respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter and in the Constitution." (Section 500.)

[10] *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1175 (2008), quoting *City of Oakland v. Brock*, 8 Cal.2d 639, 641 (1937).

[11] Even assuming Culver City could attempt to regulate businesses which straddle its borders through a joint powers authority agreement, we are unaware that Culver City has entered into such an arrangement, and the Proposed Ordinance makes no reference to one.

[12] *Cf. Los Angeles County Metropolitan Transit Authority v. Superior Court*, 123 Cal.App.4th 261, 267-28 (2004) ("where the social objectives pursued by two categories of damages sought in one cause of action are the same, an award for both would create a double recovery," which is "impermissible").

**Sheppard**Mullin

Culver City Council
May 10, 2021
Page 10

if both AB 650 and the Proposed Ordinance are enacted, the same workers would receive hazard pay twice for the same work performed in 2021.  The result would, in effect, be punitive to SCHCC and provide a windfall to workers.

We stand ready to discuss SCHCC's concerns with Members of the Council and with the City Attorney.

Respectfully submitted,

David A. Schwarz
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:4830-5833-9049.4

cc:     Michael Klepin
        City Attorney, city.attorney@culvercity.org
        City Manager, john.nachbar@culvercity.org