SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DAVID A. SCHWARZ, Cal. Bar No. 159376
dschwarz@sheppardmullin.com
BARBARA E. TAYLOR, Cal. Bar No. 166374
btaylor@sheppardmullin.com
ZACHARY J. GOLDA, Cal. Bar No. 327532
zgolda@sheppardmullin.com
JAMES V. FAZIO, Cal. Bar. No. 183353
jfazio@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701

Attorneys for Plaintiff Southern California Healthcare System, Inc.,
d/b/a Southern California Hospital at Culver City

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOUTHERN CALIFORNIA HEALTHCARE SYSTEM, INC., d/b/a SOUTHERN CALIFORNIA HOSPITAL AT CULVER CITY,<br><br>           Plaintiff,<br><br>      v.<br><br>CITY OF CULVER CITY; MAYOR ALEX FISCH, in his official capacity; VICE MAYOR DANIEL LEE, in his official capacity; COUNCIL MEMBER YASMINE-IMANI MCMORRIN, in her official capacity; COUNCIL MEMBER ALBERT VERA, in his official capacity; COUNCIL MEMBER GORAN ERIKSSON, in his official capacity,<br><br>           Defendants.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST,<br><br>           Intervenor. | Case No. 2:21-cv-05052-MCS-RAO<br>Hon. Mark C. Scarsi<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' AND INTERVENOR'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br><u>Hearing</u><br>Date:   October 25, 2021<br>Time:   9:00 a.m.<br>Courtroom: 7C<br><br>Complaint filed:    June 22, 2021<br>Trial Date:        Not Set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 8

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................ 8

III. LEGAL STANDARD ........................................................................... 9

IV. SCHCC HAS MET ITS PLEADING BURDEN ...................................... 10

    A. The FAC Sufficiently Pleads NLRA Preemption .......................... 10

        1. The Ordinance Directly "Alters The Balance Of Power Between The Parties To The Labor Contract" ................................... 11

        2. The Ordinance Explicitly And Impliedly Prohibits Culver City's Interference With SCHCC's Freedom of Contract ................ 13

        3. The Ordinance Directly Alters The Economic Balance In SCHCC's Collective Bargaining Relationships .............................. 15

    B. SCHCC Has Sufficiently Pled Equal Protection And Special Legislation Violations ..................................................................... 18

        1. The FAC Alleges An Irrational Classification Based On Exclusion Of All Frontline Healthcare Providers And First Responders Except SCHCC ............................................................ 20

        2. The FAC Alleges The Ordinance's Improper Motivation ................ 23

        3. The FAC Adequately Alleges A "Class of One" Equal Protection Violation .................................................................. 24

    C. The FAC Sufficiently Alleges Contracts Clause Violations ......................... 26

    D. The FAC Sufficiently Alleges Bill Of Attainder Claims .............................. 29

    E. The FAC Sufficiently Alleges Procedural Due Process Claims ................... 31

    F. The FAC Sufficiently Alleges A §1983 Claim ............................................. 32

V. CONCLUSION ................................................................................. 32

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3
Cases

4
*Allied Structural Steel Co. v. Spannaus*
5
    438 U.S. 234 (1978) ...................................................................................28, 29

6
*Am. Hotel & Lodging Ass'n v. City of Los Angeles*
7
    119 F.Supp.3d 1177 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016)......13

8
*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*
9
    --- F.4th ----, 2021 WL 3745777 (9th Cir. Aug. 25, 2021) ...............................28

10
*Ariz. Dream Act Coal. v. Brewer*
    855 F.3d 957 (9th Cir. 2017) ............................................................................20

11
*Ashcroft v. Iqbal*
12
    556 U.S. 662 (2009) ..........................................................................................10

13
*Associated Builders & Contractors of Southern Calif., Inc. v. Nunn*
14
    356 F.3d 979 (9th Cir. 2004) ............................................................................14

15
*Baltimore Teachers Union v. Mayor & City Council of Baltimore*
16
    6 F.3d 1012 (4th Cir. 1993) ..............................................................................29

17
*Barnes v. Stone Container Corp.*
18
    942 F.2d 689 (9th Cir. 1991) ............................................................................16

19
*Bell Atl. Corp. v. Twombly*
20
    550 U.S. 544 (2007) ..................................................................................10, 27

21
*Birkenfeld v. City of Berkeley*
    17 Cal.3d 129 (1976) ........................................................................................31
22

23
*Broam v. Bogan*
    320 F.3d 1023 (9th Cir. 2003) ..........................................................................10
24

25
*Brown v. Hotel Employees*
    468 U.S. 491 (1984) ..........................................................................................13

26
*Brown v. Pro Football, Inc.*
27
    518 U.S. 231 (1996) ..................................................................................11, 16

28

*CalFarm v. Deukmejian*
  48 Cal.3d 805 (1989) ................................................................31

*Chamber of Commerce v. Bragdon*
  64 F.3d 497 (9th Cir. 1995) .......................................................14

*Chamber of Commerce v. Brown*
  554 U.S. 60 (2008) ...............................................................14, 15

*Charles v. City of Los Angeles*
  757 F. Supp. 2d 989 (C.D. Cal. 2010).......................................19

*City of Cleburne v. Cleburne Living Center, Inc.*
  473 U.S. 432 (1985) .............................................................21, 24

*Columbia Park Golf Course, Inc. v. City of Kennewick ex rel. Washington*
  No. CV-07-5054-EFS, 2009 WL 36770 (E.D. Wash. Jan. 6, 2009).................26

*Conn. Power Co.*
  271 NLRB 766 (1984)................................................................17

*Elgin v. U.S.*
  594 F. Supp. 2d 133 (D. Mass. 2009)........................................30

*Energy Reserves Group, Inc. v. Kansas Power Light Co.*
  459 U.S. 400 (1983) .........................................................23, 26, 29

*FCC v. Beach Comm'ns, Inc.*
  508 U.S. 307 (1993) .............................................................20, 23

*First National Maintenance Corp v. NLRB*
  452 U.S. 666 (1981) ..................................................................12

*Fort Halifax Packing Co. v. Coyne*
  482 U.S. 1 (1987) .....................................................................12

*Fowler Packing Co. v. Lanier*
  844 F.3d 809 (9th Cir. 2016) .........................................19, 23, 24, 30

*Franceschi v. Yee*
  887 F.3d 927 (9th Cir. 2018) .....................................................31

*Gerhart v. Lake County*
  637 F.3d 1013 (9th Cir. 2011) ..................................................20

SMRH:4813-0011-4940.8   CONSOLIDATED OPP. TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

*Golden State Transit Corp. v. Los Angeles*
    475 U.S. 608 (1986) ...................................................................12, 17

*Golden State Transit Corp. v. Los Angeles*
    493 U.S. 103 (1989) ...................................................................11, 32

*Graham v. Long Island R.R.*
    230 F.3d 34 (2d Cir. 2000) ................................................................25

*H. K. Porter Co. v NLRB*
    397 U.S. 99 (1970) .............................................................................15

*Heller v. Doe*
    509 U.S. 312 (1993)  ...................................................................20, 22

*Kirschner v. Zoning Bd. of Appeals of Valley Stream*
    924 F. Supp. 385 (E.D.N.Y. 1996).....................................................25

*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008).......................................................21, 24

*Livadas v. Bradshaw*
    512 U.S. 107 (1994) ..........................................................................13

*Machinists v. Wisconsin Employment Relations Comm'n*
    427 U.S. 132 (1976) .............................................11, 12, 13, 14, 15, 32

*Metropolitan Life Ins. Co. v. Massachusetts*
    471 U.S. 724 (1985) ...................................................................11, 13

*Nayab v. Cap. One Bank (USA), N.A.*
    942 F.3d 480 (9th Cir. 2019) .............................................................10

*NLRB v. Burns International Security Services, Inc.*
    406 U.S. 272 (1972) ..........................................................................11

*NLRB v. Jones & Laughlin Steel Corp.*
    301 U.S. 1 (1937) .......................................................................12, 15

*Nordlinger v. Hahn*
    505 U.S. 1 (1992) .......................................................................18, 20

*Prime Healthcare Servs., Inc. v. Harris*
    No. 3:16-cv-00778-GPC-AGS, 2017 WL 3525169 (S.D. Cal. Aug. 16, 2017)....................................................................................................19

SMRH:4813-0011-4940.8    CONSOLIDATED OPP. TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

*Railway Express v. New York*
   336 U.S. 106 (1949) ............................................................................. 8

*Reed v. Reed*
   404 U.S. 71 (1971) ............................................................................... 22

*Rhode Island Hospitality Ass'n v. City of Providence*
   667 F.3d 17 (1st Cir. 2011) ................................................................ 13

*Romer v. Evans*
   517 U.S. 620 (1996) ....................................................................... 18, 24

*RUI One Corp. v. City of Berkeley*
   371 F.3d 1137 (9th Cir. 2004) ........................................................ 25, 26

*SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*
   309 F.3d 662 (9th Cir. 2002) .............................................................. 30

*Seattle, R. & S. Ry. Co. v. City of Seattle*
   190 F. 75 (9th Cir. 1911) .................................................................... 26

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*
   468 U.S. 841 (1984) ............................................................................ 30

*Shoshone-Bannock Tribes v. Fish Game Comm'n*
   42 F.3d 1278 (9th Cir. 1994) .............................................................. 32

*Sonoma Cty. Org of Pub. Employees v. Cty. of Sonoma*
   23 Cal.3d 296 (1979) .......................................................................... 29

*St. Joseph Abbey v. Castille*
   712 F.3d 215 (5th Cir. 2013) .............................................................. 18

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ............................................................ 10

*U.S. v. Brown*
   381 U.S. 437 (1965) ............................................................................ 30

*U.S. Dep't of Agric. v. Moreno*
   413 U.S. 528 (1973) ....................................................................... 19, 24

*Veasey v. Abbott*
   830 F.3d 216 (5th Cir. 2016) .............................................................. 18

SMRH:4813-0011-4940.8   CONSOLIDATED OPP. TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

*Village of Willowbrook v. Olech*
    528 U.S. 562 (2000) ....................................................................................... 25

*Waddell Eng'g Co.*
    305 NLRB 279 (1991) ...................................................................................... 17

*Weinberger v. Wiesenfeld*
    420 U.S. 636 (1975) ....................................................................................... 21

*Whole Woman's Health v. Jackson*
    No. 21A24, 2021 WL 3910722 (U.S. Sept. 1, 2021) .................................... 32

*Williamson v. Lee Optical of Okla., Inc.*
    348 U.S. 483 (1995) ....................................................................................... 20

<u>Statutes</u>

29 U.S.C. § 158(b)(4)(A) ........................................................................................ 15

29 U.S.C. § 158(d) .................................................................................................. 11

29 U.S.C. § 158(d)(1) ............................................................................................. 17

Cal. Bus. & Prof. Code § 17204 ............................................................................. 32

Cal. Bus. & Prof. Code § 17206 ............................................................................. 32

Cal. Health & Safety Code § 1250(a) ..................................................................... 27

National Labor Relations Act ...................................8, 10, 11, 12, 13, 14, 15, 16, 17

## I.   <u>INTRODUCTION</u>

Southern California Hospital at Culver City's ("SCHCC") first amended complaint ("FAC") pleads facts that, as a matter of law, are sufficient to state a claim that the Ordinance is preempted by the National Labor Relations Act ("NLRA" or "Act"). The FAC alleges not only the irrationality of regulatory lines drawn, but also why these lines were drawn to single out SCHCC. The FAC details a strategy, orchestrated at the behest of SEIU, to target SCHCC immediately following completion of collective bargaining agreement ("CBA") renewal negotiations.

Accepting SCHCC's allegations as true, the only plausible explanation is that SCHCC was targeted for the illegitimate purpose of responding to the demands of a political constituent. Legislatures may "tackle problems incrementally," but they may not "pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected." *Railway Express v. New York*, 336 U.S. 106, 112-13 (1949) (Jackson, J., concurring).

## II.   <u>RELEVANT FACTUAL AND PROCEDURAL BACKGROUND</u>

This Court is already familiar with the procedural posture of this case, including the pendency of an interlocutory appeal, and a motion for a stay pending appeal. While SCHCC's appeal challenges both the legal standards applied as well as this Court's application of the facts to the law, preemption presents a purely legal question: Whether the Ordinance violates section 8(d) of the NLRA or is preempted because it interferes with the collective bargaining process. The Motions raise these same issues already identified in SCHCC's opening brief on appeal filed over six weeks ago. ECF 72-1 [Ex. 1, AOB pp. 17-18, 24-25, 33-34, 83]. Briefing on the appeal will be complete on October 8, 2021. ECF 83 [p. 12, ¶2]. Oral argument should be held on the next available calendar. *Id.* [p. 9:15-16].

While the appeal was pending, the City and SEIU moved to dismiss the original complaint. ECF 70 & 71. SCHCC opposed on the merits and because the same issues

were before the Ninth Circuit. ECF 72. On September 1, 2021, this Court issued a minute order "remind[ing] Plaintiff that it still may, without leave of the Court, amend its complaint to address deficiencies identified in the Injunction Order and to incorporate extraneous materials that are not presently included in the Complaint" and stating that "[s]hould Plaintiff so amend, the Court will vacate the hearing and would consider a separate motion to stay." ECF 75. The City and SEIU would not agree to withdraw their motions to dismiss in anticipation of SCHCC filing an amended complaint. ECF 83 [p. 12, ¶3 & Ex. 1]. On September 8, SCHCC filed the FAC, adding material factual allegations and exhibits as this Court noted it could do. ECF 76 [¶¶ 4-5, 8, 32-37, 44, 48, 54, 57, 60, 70, 92, 102, 125-42, 144-46 & 160; Exs. U, V, W and X]. On September 9, this Court denied the motions to dismiss as moot and vacated the hearing. ECF 77. On September 13, the City and SEIU requested to meet and confer on their proposed motions to dismiss the FAC. ECF 83 [Ex. 2]. During the meet and confer, which addressed the proposed motions to dismiss and motion to stay, SCHCC proposed that the motion to stay be heard first for efficiency; however, the City and SEIU rejected that proposal. ECF 83 [p. 12, ¶4]. On September 22, the City and SEIU filed the Motions and SCHCC filed its motion to stay.

The latest round of motions essentially repeat the City's and SEIU's arguments in support of their motions to dismiss the original complaint. *Compare* ECF 70 3:25-18:14 *and* ECF 71 1:2-2:26 *with* ECF 79 3:20-19:3 *and* 84 6:7-21:22. These arguments, in turn, parrot the City's arguments in opposition to SCHCC's motion for preliminary injunction. *See* ECF 26 6:1-22:14. SEIU asks this Court to dismiss the FAC based on the same reasons which led the Court to deny the Hospital's preliminary injunction motion. ECF 84 1:3-6. Because both Motions focus on the issues currently on appeal, SCHCC has requested that this Court should defer ruling on this motion until the Ninth Circuit has had the opportunity to review the Court's preliminary injunction order.

III.   **LEGAL STANDARD**

Rule 12(b)(6) motions are generally disfavored. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The purpose of the complaint is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint need only contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept as true all factual allegations in the operative complaint" and "construe them in the light most favorable to Plaintiff as the non-moving party." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019). Even "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]" *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). If a court dismisses a complaint for failure to state a claim, leave to amend should be liberally granted. *Olivas v. Nevada, ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 n.2 (9th Cir. 2017)

## IV.  SCHCC HAS MET ITS PLEADING BURDEN

Unlike SCHCC's preliminary injunction motion, which required a showing that SCHCC was "likely" to succeed on the merits, to state a plausible claim for relief, a plaintiff is not required to show that the claim is probable. *Iqbal*, 556 U.S. at 679. Moreover, Movants raise fact issues—interpreting facts and drawing inferences and legal conclusions—that cannot be resolved on a motion to dismiss. The FAC's factual allegations must be accepted by this Court, and to the extent Movants seek to refute or do not agree with them, the proper course is to conduct discovery and move for summary judgment. Should this Court determine SCHCC has not sufficiently pled its claims, leave to amend should be granted.

### A.  The FAC Sufficiently Pleads NLRA Preemption

1. **The Ordinance Directly "Alters The Balance Of Power Between The Parties To The Labor Contract"[1]**

Section 8(d) of the NLRA requires an employer and union to make every good faith effort to reach an agreement. This statutory bargaining obligation "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). Because the Act "is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions," *Metropolitan Life*, 471 U.S. at 753, and because "Congress intended that the parties should have wide latitude in their negotiations, unrestricted by any government power to regulate the substantive solution of their differences, the Act generally leaves the outcome of negotiations to the parties, with government intervention largely proscribed." *Brown v. Pro Football, Inc.*, 50 F.3d 1041, 1051 (D.C. Cir. 1995) (cleaned up). And, because "the Act protects certain rights of labor and management against governmental interference" in that collective bargaining relationship, *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 111 (1989) (*"Golden State II"*), "the States have no such power or authority to influence the substantive terms of collective-bargaining agreements." *Id.* at 115 (Kennedy, J., dissenting) (citing *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 151 (1976) ("*Machinists*").)

"This bargaining freedom means both that parties need not make any concessions as a result of Government compulsion and that they are free from having contract provisions imposed upon them against their will." *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 287 (1972). "Freedom of contract," along with the requirement of mutual, good faith collective bargaining, is the overriding purpose of the NLRA, which (as codified in section 8(d) of the Act),

---

[1] See *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 751 (1985).

"does not compel agreements between employees and employers, or compel any agreement whatever." *First National Maintenance Corp v. NLRB*, 452 U.S. 666, 679, n.16 (1981) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937)) (cleaned up).

While the NLRA contains no "express preemption" provisions – Movants organize their briefs based on a caricature of SCHCC's statutory argument – neither SEIU or the City acknowledges that the Act protects against government intrusion into the substantive aspects of the collective bargaining relationship. Simply put: "The cornerstone of the NLRA is free collective bargaining. Government may not step in and become a party to the negotiations." *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 619 (1986) (cleaned up) ("*Golden State I*").

According to Movants, the *Machinists* rule extends no further than to prohibit interference with the parties' choice of "economic weapons" during the bargaining process, and therefore have little, if any, bearing on the Court's analysis of the Ordinance, since bargaining had concluded before the Ordinance was enacted. ECF 84 10:8-13. Instead, they claim that there is a "strong presumption against preemption,"[2] or that "substantive state labor standards are not preempted by the NLRA," because the Ordinance is a "classic minimum labor standard of general applicability" which does not interfere with the mechanics of bargaining, ECF 79 3:20-4:4, 4:24-5:8 & 5:21-7:22; ECF 84 7:9-9:10, or a "valid and unexceptional exercise" of "police power." ECF 79 6:14-25 (citing *Fort Halifax*, 482 U.S. at 20-22).

---

[2] Movants cite cases which apply this "presumption" in non-NLRA preemption cases. And although the Supreme Court has expressed its reluctance to infer preemption, *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 3-4 (1987), this does not necessarily translate into a "presumption" against preemption. Given Section 8(d)'s express protection of SCHCC against the City's attempt to dictate the terms of its economic relationship with SEIU, that presumption ought to have no bearing where Congressional intent is clear, as it is in this case.

This argument depends on the Court's willingness to equate "Premium Hazard Pay" with a "minimum labor standard" (ECF 84 9:3-6), or suspend disbelief by accepting Movants' claim that special legislation targeting one employer constitutes a "standard."[3] Movants' *per se* rule–really just a semantic game– misapprehends the core purpose of the *Machinists* doctrine, which enjoins any interference between the parties in a collective bargaining relations that "would upset the balance of power between labor and management expressed in our national labor policy."[4] *Metropolitan*, 471 U.S. at 750 (cleaned up). "Where, as here, the issue is one of an asserted substantive conflict with a federal enactment, then the relative importance to the State of its own law is not material … for the Framers of our Constitution provided that the federal law must prevail." *Brown v. Hotel Employees*, 468 U.S. 491, 503 (1984) (cleaned up).

## 2. The Ordinance Explicitly And Impliedly Prohibits Culver City's Interference With SCHCC's Freedom of Contract

---

[3] One circuit court has questioned the relevance of a preemption analysis that turns on "when, if ever, a state law that is not a 'minimum labor standard' can survive *Machinists*." *Rhode Island Hospitality Ass'n v. City of Providence*, 667 F.3d 17, 32-33 n.14 (1st Cir. 2011) ("The Supreme Court has not indicated what differentiates a "minimum labor standard" from other labor standards, nor has it explained why such standards are by virtue of that status not usually inconsistent with the goals of the NLRA. It is far from clear that use of the phrase helps achieve clarity as to the boundaries of permissible state regulation.").

[4] Movants cite approvingly *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016), for the proposition a wage regulation would have to be "completely arbitrary and [have] no rational basis" to be "considered an extreme case that compels preemption." *Id.* at 1191-92. ECF 79 6:1-3 & 7:2-12; ECF 84 9:3-10 & 10:14-18. There is no such "reasonable" standard or rational basis test under NLRB preemption. *See Livadas v. Bradshaw*, 512 U.S. 107, 120 (1994) ("In labor preemption cases, as in others under the Supremacy Clause, our office is not to pass judgment on the reasonableness of state policy. It is instead to decide if a state rule conflicts with or otherwise stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the federal law.).

Movants' preemption arguments largely depend on creating a false equivalence between wage ordinances of general applicability—even where applicable to only one trade, classification, or industry—and Culver City's bespoke, class-of-one legislation—which applies to only one employer.[5] It is also irrelevant. One case suffices to prove the point.

In *Chamber of Commerce v. Brown*, the Supreme Court held that a California statute (AB 1889), which prohibited certain employers "that receive state funds from using the funds 'to assist, promote, or deter union organizing," was preempted under *Machinists*. 554 U.S. 60, 62 (2008) (cleaned up).  The question presented was whether this law was "preempted by federal law mandating that certain zones of labor activity be unregulated." *Id*. AB 1889 was held preempted under the *Machinists* rule because California attempted to regulate conduct–noncoercive speech about unionization–"that Congress intended particular conduct to 'be unregulated because left 'to be controlled by the free play of economic forces.'" *Brown*, 554 U.S. at 65 (quoting *Machinists,* 427 U.S. at 140). Specifically, the court held that the NLRA's protection of noncoercive speech "is both implicit and explicit." As the court explained "Sections 8(a) and 8(b) demonstrate that when Congress has sought to put limits on advocacy for or against union organization, it has expressly set forth the mechanisms for doing so." *Id.* at 68. But Congress' amendment of the Act in 1947—the same year it enacted Section 8(d)—reflects a clear legislative intent to expressly preclude regulation of speech about unionization "so long as the communications do not contain a 'threat of

---

[5] Movants draw a distinction between *Chamber of Commerce v. Bragdon,* 64 F.3d 497, 502 (9th Cir. 1995) and *Associated Builders & Contractors of Southern Calif., Inc. v. Nunn*, 356 F.3d 979 (9th Cir. 2004). As did this Court, Movants put considerable weight on *Nunn* without acknowledging *Nunn*'s own attempt to differentiate its holding from *Bragdon*. *See* 356 F.3d at 991 n.8 ("In invalidating Contra Costa County's *prevailing* wage ordinance, we carefully distinguished, for purposes of preemption, state established *minimum* wage regulations, which we acknowledged to be lawful.") (italics original).

reprisal or force or promise of benefit.' " *Id.* (quoting *NLRB v. Gissel Packing Co.,* 395 U.S. 375, 618 (1969)). The Court concluded:

> The explicit direction from Congress to leave noncoercive speech unregulated makes this case easier, in at least one respect, than previous NLRA cases because it does not require us "to decipher the presumed intent of Congress in the face of that body's steadfast silence." *Id.*, at 68-69 (citation omitted).

*Brown* applies with equal force here.  First, Section 8(d), like Section 8(c), is an also an explicit prohibition on state attempts to interfere with collective bargaining relationships.  There is no need "to decipher" Congress' presumed intent.  Second, when Congress enacted Section 8(d) to codify the holding in *Jones & Laughlin*, 301 U.S. at 45 (the NLRA "does not compel agreements between employees and employers, or compel any agreement whatever"), it did so in response to Congressional concerns that the NLRB had "gone very far . . . in setting itself up as the judge of what concessions an employer must make and of the proposals and counterproposals that he may or may not make. . . ." *H. K. Porter Co. v NLRB*, 397 U.S. 99, 105 (1970) (citation and quotation omitted). Section 8(c) was also a response to Board rulings which constricted employer free speech. *Brown*, 554 U.S. at 60. Third, Congress also knew how to put limits on certain forms of "economic weapons," including by prohibiting so-called "hot cargo" clauses, which prohibit an employer from conducting business with some other person with whom the union has or may have a dispute.  *See* 29 U.S.C. § 158(b)(4)(A).

*Brown* is on all fours with this case.  It leaves no room for debate as to whether the Ordinance is preempted under *Machinists*.

### 3.  The Ordinance Directly Alters The Economic Balance In SCHCC's Collective Bargaining Relationships

The City asserts that the Ordinance "does not prevent SCHCC from taking any action (e.g., reduction in hours), it includes the ability to 'opt-out' in a collective bargaining agreement, and it does not preclude bargaining (or unilateral action, as to

non-unionized employees) on any term of employment." ECF 79 1:23-26.[6] SEIU argues that "the opt-out provision is in no way illusory, as the Hospital is free to negotiate midterm modifications to its collective bargaining agreement with either SEIU or CNA if it can secure consent," and the "opt-out provision only underscores that the Ordinance does not 'dictate' the terms of the Hospital's CBAs, much less interfere with the bargaining process." ECF 84 11:6-9 & 11:16-18. These arguments are disingenuous.

A necessary corollary to Section 8(d)'s prohibition against government-compelled contractual concessions is that collective bargaining negotiations sometimes reach an "impasse," i.e., a point where the parties are deadlocked on one or more issues and continued negotiations for a final contract appear futile. When such an impasse is reached, the employer is entitled to act unilaterally and to implement those changes contained in its final offer to the union. *See Pro Football*, 518 U.S. at 238. In this case, SCHCC would have been in a very different bargaining posture had SEIU proposed what the City later imposed; it would likely have modified its bargaining proposals, or bargained to impasse if neither party was willing to budge. Certainly SCHCC's stance would have been influenced if the City had dictated Premium Hazard Pay *before* negotiations closed.

Once negotiations have concluded with the adoption of a contract, the rules of the game change. Section 8(d)(1) states that neither party to a collective bargaining

---

[6] This Court suggested that the Ordinance does not prohibit SCHCC from making unilateral modifications to the CBAs to "offset[ ] increased compliance costs" and does not prohibit "future voluntary negotiations." ECF 59 8:14-24. SCHCC respectfully submits that this cannot even qualify as wishful thinking. The Ordinance did not "equalize bargaining power," as the Act aimed to achieve. The City "meddl[ed] at the heart of the employer-employee relationship at a time when such interference was most harmful"—after SCHCC was barred, by the NLRA, from demanding mid-term negotiations. *Barnes v. Stone Container Corp.*, 942 F.2d 689, 693 (9th Cir. 1991).

agreement "shall terminate or modify such contract" before its expiration date absent the consent of the other. 29 U.S.C. § 158(d)(1). During the term of the contract, the parties have an absolute right to reject, and even to refuse to negotiate over, contract modifications. *Conn. Power Co.*, 271 NLRB 766, 767 (1984). In this context, "[n]either a claim of economic necessity nor a lack of subjective bad-faith intent, even if proven, constitutes an adequate defense to an allegation that an employer has violated Section 8(a)(5) of the [NLRA] by failing to abide by provisions of a collective-bargaining agreement." *Waddell Eng'g Co*., 305 NLRB 279, 282 (1991) (footnote omitted).

The City (as alleged, at SEIU's behest) dictated what concessions SCHCC would be compelled to make to employees represented by SEIU and CNA. The City did not introduce the Ordinance until *after* SCHCC concluded its contract renewal negotiations with SEIU, thereby foreclosing SCHCC's ability to reopen negotiations or obtain offsetting concessions. Thus, the City did more than "step in and become a party to the negotiations." *Golden State I*, 475 U.S. at 619; the effect of its intrusion undermines SCHCC's ability to negotiate on terms of equality with the unions.

Regarding SCHCC's ability to take action, the NLRA prohibits unilateral modifications. ECF 72-1 [Ex. 1, AOB pp. 28-29, 49-55]. Regarding SCHCC's ability to opt-out, Movants concede, in this Court and on appeal, that the unions have no obligation to reopen contract negotiations or incentive to bargain at all. ECF 26 11 n.2; City Answering Brief ECF 21-1 [p. 26]; SEIU Answering Brief ECF 24 [p. 22]. That the Ordinance cannot, as a matter of law and practically, be avoided further demonstrates that it dictates terms. The City claims that nothing prevents SCHCC from making unilateral changes to non-union employees' wages to offset the Ordinance's cost. While this concedes that the Ordinance does not treat union and non-union workers alike, it also overlooks why the Ordinance impairs not only SCHCC's contractual obligations with its unions, but its agreements with third party service contractors, who supply this non-union labor. SCHCC has no legal right to

1  rewrite those contracts, even if the City chose to rewrite an essential aspect of

2  SCHCC's agreements with its unions.

3      **B.**    **SCHCC Has Sufficiently Pled Equal Protection And Special**

4              **Legislation Violations**[7]

5          SCHCC alleges that the Ordinance denies SCHCC equal protection of the law

6  in two, related aspects.  First, the distinctions drawn by the Ordinance are irrational,

7  either because there is no rational basis for how the "classifying trait" was drawn, or

8  the disconnect between the means and end of the statute is so arbitrary and attenuated

9  that, at some point, a court may no longer pretend to accept some hypothesized

10 alternative as a plausible basis for the law.  *See, e.g., Veasey v. Abbott*, 830 F.3d 216,

11 262 (5th Cir. 2016) ("Even under the least searching standard of review we employ

12 for these types of challenges, there cannot be a total disconnect between the State's

13 announced interests and the statute enacted); *St. Joseph Abbey v. Castille*, 712 F.3d

14 215, 226 (5th Cir. 2013) ("The great deference due state economic regulation does

15 not demand judicial blindness to the history of a challenged rule or the context of its

16 adoption nor does it require courts to accept nonsensical explanations for

17 regulation.").

18         Second, while an over- or underinclusive classification may not, standing

19 alone, suffice to invalidate a law, at some point "the underinclusiveness or the

20 overinclusiveness of a classification will be so severe that it cannot be said that the

21 legislative distinction 'rationally furthers' the posited state interest," *Nordlinger v.*

22 *Hahn*, 505 U.S. 1, 35 (1992); *Romer v. Evans*, 517 U.S. 620, 621 (1996) (striking

23 down law that "is at once too narrow and too broad," because it defines people by "a

24 single trait and then denies them protection across the board").  To the contrary: courts

25

26 ─────────────────────
   [7] As Movants concede SCHCC's special legislation claim is measured under the same

27 standard as its equal protection claims (ECF 79 21:25-22:4; ECF 84 11:19-22 &

28 17:14-18:5), SCHCC's special legislation claim will not be separately addressed.

view the lack of sufficient tailoring between means and ends as symptomatic of improper legislative purpose, whether based on animus, such as "a bare . . . desire to harm a politically unpopular group," *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973), or naked preferences, such as the legislative targeting of one group or entity in order to "respond to the demands of a political constituent" or "to procure the support of [a union]," *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016).

Where the claim is based on the selective enforcement of the law–a class of one claim–a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive. Targeting one employer in order to "respond to the demands of a political constituent" or "to procure the support of [a union]," *Fowler*, 844 F.3d at 815 (9th Cir. 2016), will not survive the rationality test. *See Prime Healthcare Servs., Inc. v. Harris*, Case No.: 3:16-cv-00778-GPC-AGS, 2017 WL 3525169, at *12 (S.D. Cal. Aug. 16, 2017) (allegations of a quid pro quo "may bear on the rational basis inquiry for [an] equal protection claim"). As *Fowler* teaches, the absence of any "reasonable conceivable state of facts that could provide a rational basis" for *carving out* every other first responder or frontline health care provider (other than SCHCC), while (as the City maintains), *carving in* only one (of three) skilled nursing facilities ("SNFs") operating in Culver City – the facility operated by SCHCC— demands at least some judicial scrutiny as to how lines were drawn.

The Ordinance requires SCHCC to pay its workers "Premium Hazard Pay" while excluding other employers of frontline healthcare workers and first responders, including the City itself. Under this traditional "classification" equal protection claim, the Ordinance's stated purposes are not rational given the distinction between SCHCC and other similarly situated employers. *See generally Charles v. City of Los Angeles*, 757 F. Supp. 2d 989, 1005 (C.D. Cal. 2010) (discussing distinction between "classification" and "class of one" claims). But the Ordinance also intentionally "singles out" SCHCC for arbitrary or discriminatory treatment. Unlike traditional

equal protection claims, which focus on whether there is a rational basis for requiring SCHCC to pay bonuses to its employees, this "class of one" claim analyzes whether there is a rational basis for treating SCHCC differently from other entities. As the Ninth Circuit has recognized, "the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*." *Gerhart v. Lake County*, 637 F.3d 1013, 1023 (9th Cir. 2011) (emphasis original).

Regardless of the label, all equal protection claims require a rational basis for differential treatment of similarly situated persons. *Gerhart*, 637 F.3d at 1023 n.9. To determine whether groups being classified are "similarly situated," the correct inquiry is whether the government "'treat[s] differently persons who are in all *relevant* respects alike.'" *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 981 (9th Cir. 2017) (Berzon, J. concurring) (emphasis original) (quoting *Nordlinger*, 505 U.S. at 10). "'*Relevant* respects' are only those respects that relate to the goals of the challenged state law." *Id.* (emphasis original).

1. **The FAC Alleges An Irrational Classification Based On Exclusion Of All Frontline Healthcare Providers And First Responders Except SCHCC**

While the Supreme Court has said its "inquiry is at an end" where "there are plausible reasons for [a legislative body's] action" (*FCC v. Beach Comm'ns, Inc.*, 508 U.S. 307, 313-14 (1993)), a hypothesized purpose must still have "footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. 312, 321 (1993). If the requirement of "plausibility" has any meaning, there should some causal link between a legislature's action and the "considerations" and "evidence" that were "before the legislature," or the actual "evil at hand for correction." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1995). Even a hypothesized purpose must "conceivably" or "reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Nordlinger*, 505 U.S. at 15. Under this standard, a

1   "State may not rely on a classification whose relationship to an asserted goal is so

2   attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v.*

3   *Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985).

4      "The first step in equal protection analysis is to identify the defendants'

5   classification of groups." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 589 (9th Cir.

6   2008). "To accomplish this, a plaintiff can show that the law is applied in a

7   discriminatory manner or imposes different burdens on different classes of people."

8   *Id.* An allegation of irrational differential treatment properly states an equal protection

9   claim. *Id.* at 590. Courts are not required "to accept defendants' characterization of

10   what classification they made." *Id.* at 589. In *Lazy Y Ranch*, "the nature of the

11   classification—i.e., what line Defendants drew—[was] at the center of the dispute."

12   *Id.* at 590. The Ninth Circuit allows plaintiffs "to rebut the facts underlying

13   defendants' asserted rationale for a classification, to show that the challenged

14   classification could not reasonably be viewed to further the asserted purpose." *Id.* at

15   590-91. Even then, hypothesized purposes cannot rescue a law that has been tainted

16   by animus or improper purpose. To the contrary, the Supreme Court has repeatedly

17   shown skepticism toward such hypothesized purposes when animus is alleged

18   because "the mere recitation of a benign, compensatory purpose is not an automatic

19   shield which protects against any inquiry into the actual purposes underlying a

20   statutory scheme." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 (1975).

21      The FAC alleges an irrational classification because the Ordinance treats

22   SCHCC differently from other healthcare and first responder employers in the City.

23   ECF 76 ¶¶125 & 184. The City makes an essentially *ipso facto* argument: "While the

24   other types of facilities may provide healthcare services, they are not hospitals, and

25   thus cannot be similarly situated." ECF 79 11:16-18; *see also* ECF 84 15:11-16:5.

26   The City argues that hospitals are "meaningfully distinct from skilled nursing

27   facilities and other licensed or exempt health care facilities" without citing any

28   support other than the "judicially noticeable fact" that "only hospitals have emergency

departments and ICUs." ECF 79 11:19-21. That SCHCC is the only hospital in the City that maintains an ER or ICU is only relevant where these characteristics have "a fair and substantial relation to the object of the legislation." *Reed v. Reed*, 404 U.S. 71, 76 (1971). They do not.

The FAC alleges that COVID-19 risk is not limited to, or even predominant at, general acute care hospitals. ECF 76 ¶¶136-146. There are over two dozen licensed healthcare facilities in the City, including three SNFs. *Id.* ¶126. Workers at these types of healthcare facilities faced the same, if not greater, risks during the COVID-19 pandemic. *Id.* ¶¶136-146. The FAC alleges that the Ordinance treats SCHCC differently by requiring SCHCC to pay premium wages while other healthcare and first responder employers—whose employees faced the same risks and burdens of COVID-19—are not required to pay premium wages. *Id.* ¶125. SCHCC alleges that the proffered reason for the classification between SCHCC and others, i.e., its status as a general acute care hospital, does not justify the classification when measured against the Ordinance's purpose to remunerate "healthcare workers" (not differentiating between those working in general acute care hospitals or elsewhere) and first responders for the burdens borne during the COVID-19 pandemic. *Id.* ¶¶187-188; *Heller*, 509 U.S. at 321 ("even the standard of rationality … must find some footing in the realities of the subject addressed by the legislation"). SCHCC alleges that the exclusion of SNFs is also irrational because "COVID-19 spreads more easily in communal settings like SNFs and assisted living facilities." ECF 76 ¶144.[8]

The City ignores the burdens placed on workers in such facilities, and the "judicially noticeable fact" that the COVID-19 infection rates in hospitals and skilled nursing and long-term care facilities are virtually the same. *Id.* ¶¶139-146. It cannot

---

[8] The City contradicts itself in a contorted attempt to explain that while the general acute care hospital is not comparable to SNFs, the SNF located on SCHCC's campus *is* similarly situated to the general acute care hospital because a single comprehensive license covers both facilities. ECF 76 ¶33. This just further illustrates the irrationality of the Ordinance.

be said as a matter of law that the Hospital and skilled nursing and long-term care facilities in the City are not similarly situated with respect to the purpose of the Ordinance. That purpose is not to reward and retain emergency department and ICU workers, but to reward and retain healthcare workers in the City who bear the burdens of workplace COVID-19 exposure. *Id.* ¶125. SCHCC has also alleged that the Ordinance draws irrational distinctions among SCHCC's own workers, providing premium pay to those working in the general acute portions of the hospital while excluding workers in the SNF and Psych/Detox units, and excluding supervising nurses, physicians, and others who have direct contact with COVID-19 patients, while including workers, e.g., clerical, who have no such contact. ECF 76 ¶¶185-186.[9]

After all of these purported justifications are negatived, all that is left is an illegitimate justification for the Ordinance: the City acted solely at the behest of a special interest. *See Fowler*, 844 F.3d at 815; *Energy Reserves Group, Inc. v. Kansas Power Light Co.*, 459 U.S. 400, 412 (1983) (legislature may not arbitrarily exclude individuals to "provid[e] a benefit to special interests").

### 2.   The FAC Alleges The Ordinance's Improper Motivation

Movants argue that under the rational basis standard what the City does is "virtually unreviewable." ECF 79 13:13-16; ECF 84 12:9-21 (quoting *Beach*, 508 U.S. at 313). But *Beach* itself says that its highly deferential rational basis standard will not apply where there is "some reason to infer antipathy." *Id*. at 314. When

---

[9] The City dismisses as "nonsensical" the allegation that "the City treated SCHCC's similarly situated *employees* different" (ECF 12:6-8), but does not dispute this disparate treatment. SEIU argues "there is no relevance to the Hospital's erroneous insistence that certain workers at the Hospital are not covered by the Ordinance." ECF 84 14:18-15:10. SEIU is referring to SCHCC's interpretation of the Ordinance as not covering workers in SCHCC's SNF and Psych/Detox units. ECF 76 ¶153. This issue cannot be resolved at the pleading stage. In any event, SEIU cannot dispute that many other workers at the Hospital at risk of COVID-19 exposure are not covered. ECF 76 ¶¶151-153.

legislation is motivated by animus or antipathy toward a group or individual, that factor is relevant to rational basis scrutiny. *See, e.g.*, *Romer*, 517 U.S. at 635; *Cleburne*, 473 U.S. at 448. In *Lazy Y Ranch*, the Ninth Circuit held allegations showing the government's proffered justification had only been raised to deny leases to conservationists, coupled with allegations showing the justification was raised "only out of bias against conservationists and market newcomers," were sufficient to state an equal protection claim "even under rational basis review." 546 F.3d at 591-92; *Moreno*, 413 U.S. at 534 (citing a legislative history snippet indicating the challenged law's purpose was to deny food stamps to "'hippie' communes" in combination with lack of justification for the law's overinclusive and underinclusive redefinition of "household" to determine the law was irrational). *Id.* Vice-Mayor Lee's statements are far more significant and revealing—including private comments to SEIU representatives (ECF 76 ¶¶79-84) and public statements describing SCHCC as a "profit generator that endangers our most vulnerable population," insinuating that patients would die if treated at SCHCC because of its "predatory business model." ECF 76 ¶80. Thus, SCHCC has sufficiently pled intentional targeting and animus.

In support of its preliminary injunction motion, SCHCC submitted substantial evidence of improper motivation. ECF 12. Although this Court viewed such evidence as not "relevant" then (ECF 59 5:6-9), now this Court can and should consider the FAC's well-pled allegations and judicially noticeable facts of improper motivation. ECF 76 ¶¶79-84, 92-94, 98, 195. These allegations, which must be accepted at the pleading stage, show "the disadvantage imposed is born of animosity toward the class of persons affected" (*Romer,* 517 U.S. at 634), or was the product of "irrational prejudice" (*Cleburne*, 473 U.S. at 450), can be explained only as the product of responding to demands of a politically powerful interest (*Fowler*, 844 F.3d at 815). The prejudice is directed against SCHCC and the politically powerful interest is SEIU.

### 3. The FAC Adequately Alleges A "Class of One" Equal Protection Violation

The Supreme Court has recognized equal protection claims brought by a "class of one" where the plaintiff alleges that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (applying both traditional equal protection principles and class of one theory). As a general rule, whether persons are similarly situated is a fact issue that should be submitted to the jury. *See*, *e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Kirschner v. Zoning Bd. of Appeals of Valley Stream*, 924 F. Supp. 385, 394 (E.D.N.Y. 1996).

The FAC alleges that the City Council acted at the behest of SEIU by accepting, among other things, an offer of legal support in exchange for passing the Ordinance. ECF 76 ¶¶110-116. The FAC also alleges intentionally different treatment and animus by the City Council, most notably Vice-Mayor Lee who introduced the Ordinance to secure SEIU's support for his senate campaign and evinced overt hostility toward SCHCC. *Id.* ¶¶79-84, 92-94, 97-98, 106, 110-12, 117-18, 195. These allegations, which must be accepted as true at the pleading stage, strongly suggest the Ordinance was passed to support a special interest—SEIU—which harbored animus toward one employer—SCHCC.[10] The FAC sufficiently pleads a class of one theory by identifying similarly situated comparators, at least the SNFs in the City whose employees bore the risks and burdens of COVID-19, who are excluded from the Ordinance. ECF 76 ¶¶136-146.[11] Whether comparators identified in the original

---

[10] Moreover, the FAC alleges more facts (ECF 76 ¶196-198) and SCHCC may present further evidence of animus following discovery, allowing this Court to determine whether the proffered reasons for the law are pretense for purposes of SCHCC's equal protection claims.

[11] Movants argue the City is entitled to act "incrementally" and the Hospital is not a "class of one" because the City first chose to enact hazard pay for grocery workers. ECF 79 2:22-25 & 13:1-16; ECF 84 12:22-13:17 (citing *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1155 (9th Cir. 2004)). SEIU apparently would place the only general acute care hospital in the City in the same classification as the Ralphs on

1  complaint are sufficient for purposes of SCHCC's equal protection claims is presently
2  before the Ninth Circuit, and the issue may be remanded for further factual
3  determination. ECF 72-1 [Ex. 1, AOB at 67]. If the original complaint is sufficient,
4  the FAC necessarily is.

5  **C.   The FAC Sufficiently Alleges Contracts Clause Violations**

6  To establish a Contracts Clause violation, a plaintiff must allege the challenged
7  law constitutes a "substantial impairment" of contracts. *Energy Reserves*, 459 U.S. at
8  411. Whether a contract has been substantially impaired is generally an issue of fact.
9  *Seattle, R. & S. Ry. Co. v. City of Seattle*, 190 F. 75, 79 (9th Cir. 1911). "The
10 circumstances which render the operation of the law an impairment may often be
11 brought to the knowledge of the court by parol proof." *Id.*; *Columbia Park Golf*
12 *Course, Inc. v. City of Kennewick ex rel. Washington*, No. CV-07-5054-EFS, 2009
13 WL 36770, at *2 (E.D. Wash. Jan. 6, 2009) (substantial impairment could be
14 submitted to jury prior to court determining constitutionality). If a plaintiff shows
15 substantial impairment, a court must determine whether the challenged law has a
16 "significant and legitimate" public purpose under a rational basis standard. *Energy*
17 *Reserves*, 459 U.S. at 411-412.

18 The FAC alleges the existence of contracts and contractual provisions that were
19 substantially impaired and attaches the contracts as exhibits. ECF 76 ¶¶206-220 &

22 _____
23 Jefferson Boulevard, while at the same time arguing the Hospital is nothing like other
   healthcare facilities in the City. The fact remains that the Hospital is not a grocery
24 store, the Ordinance's stated justifications all pertain to healthcare workers, and
   SCHCC is the only healthcare employer singled out. Indeed, the City argues "the need
25 for 'hero pay' was most acute for hospital workers" (ECF 79 13:22-23), yet acted first
   with respect to grocery workers. That is irrational because the justification for acting
26 incrementally is that the City is allowed to first "address[ ] itself to the phase of the
27 problem which seems ***most acute*** to the legislative mind." *RUI One*, 371 F.3d at 1155
28 (emphasis added).

1    Exs. U-X.[12] SCHCC alleges its contracts are substantially impaired because it is

2    required to incur significantly increased wage costs under the CBAs with SEIU and

3    CNA and under its vendor contracts—alleged to be in excess of two million dollars

4    over the 120 day period of the Ordinance's duration. ECF 76 ¶216. The City ignores

5    that SCHCC is a safety net hospital operating on tight budgetary requirements due to

6    the reimbursement rates of Medicare and Medi-Cal. ECF 76 ¶¶191, 249. The

7    Ordinance's cost is not insignificant, particularly considering that "Covered

8    Hospitals" as defined in the Ordinance are required to remain open 24 hours per day.

9    Cal. Health & Safety Code §1250(a). It exacts a significant and unanticipated cost

10   increase that can be extended at the City's discretion. ECF 76 ¶¶216-219. At the

11   pleading stage, SCHCC is only required to plead facts sufficient to give notice of its

12   claims. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 545. The City raises fact issues—

13   contending SCHCC's contracts are not substantially impaired because SCHCC

14   operates in a "heavily regulated industry" and CBA provisions remain in full force

15   and effect. ECF 79 16:3-22. SEIU interprets fact allegations against finding

16   substantial impairment and challenges whether the promise to provide legal support

17   constitutes an unlawful *quid pro quo*. ECF 84 18:7-19:2 & n.19.[13] These issues must

18   be resolved in SCHCC's favor at the pleading stage.

19       The City cites the Ninth Circuit's recent decision upholding a COVID-19

20   related eviction moratorium as "reaffirm[ing] the forgiving standard of modern

21   Contracts Clause analysis" under which courts "must 'refuse to second-guess' the

22

23   _____

24   [12] SEIU incorrectly argues that SCHCC "does not identify any specific contractual
     provision that has allegedly been substantially impaired." ECF 84 18:18-20.

25   [13] The City questions the relevance of the vendor contract attached to the FAC because
     the contracting party is "Alta Hospitals System, LLC." ECF 79 19 n.3. However,

26   evidence in the record shows that Alta is a wholly-owned subsidiary of Prospect
     Medical Holdings, Inc., that in turn wholly owns PMH's California entities which

27   operate hospitals throughout the state, including Southern California Healthcare
     System, Inc., which owns and operates SCHCC. ECF 11-5 [¶1].

28

City's determination . . . in the face of a public health situation like COVID-19." ECF 79 17:8-16 (quoting *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, --- F.4th ----, 2021 WL 3745777 at *7 (9th Cir. Aug. 25, 2021)). The City asserts the Ordinance "survives this test." ECF 79 17:17. *Apartment Ass'n* presented a very different scenario. Tenant payment obligations were merely deferred (*id.* at *7), which is different in kind from requiring a landlord to forego rent entirely. The eviction moratorium did not ban evictions, but only created an affirmative defense in unlawful detainer actions. *Id.* at *11. The eviction moratorium was enacted based on a "local emergency declared by the Mayor" and its duration was tied to that declaration. *Id.* at *10. The stated purpose—to, during the emergency, maintain "housing security," avoid "unnecessary displacement of City residents," and "protect public health" given the "relationship between housing and physical health during the pandemic"—was directly served by the eviction moratorium. *Id.* at *8. *Apartment Ass'n* cited Supreme Court precedent that "identified several factors that supported the state law's constitutionality," including "that the law contained a declaration of emergency, 'protect[ed] a basic societal interest,' was 'appropriately tailored,' and imposed 'reasonable' conditions 'limited to the duration of the emergency.'" *Id.* at *23 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978); citing *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 444-47 (1934)).

Here, the City did not invoke its power to enact the Ordinance on an "urgency" basis, as permitted under section 614 of the City Charter. Although the City Manager issued a "Proclamation of Local Emergency," that proclamation was issued 15 months before the Ordinance was adopted and duration of the Ordinance is not tied to it. ECF 76 [Ex. A, pp. 75, 84]. The City has no answer to the arbitrary amount and duration of the Ordinance. The Ordinance's narrow targeting further raises the reasonable inference that it was not designed to address a broad "societal interest." The City argues that "[t]he express 'aim' of the Ordinance to 'promote job retention' alone provides a basis to uphold it." ECF 79 17:17-18. Putting aside whether it is in the

City's purview to promote job retention of a private employer, the City's own evidence submitted in opposition to SCHCC's motion for preliminary injunction shows the Ordinance does not serve that aim—not one Hospital worker declarant testified he or she would have quit or even considered quitting if the Ordinance had not been adopted. ECF 26-6, 26-7, 26-8, 26-10, 26-11. Moreover, the "aim" to promote job retention ignores the reality that during the time SCHCC voluntarily paid COVID-19 related bonuses, there was significant turnover. ECF 11-3 ¶¶22-24.

The City refuses to squarely address the implications of the SEIU's fingerprints on the Ordinance. The Ordinance's *ex post facto* burdens were enacted "for the advantage of particular individuals," namely SEIU (and incidentally CNA), not for a greater social good. *Sonoma Cty. Org of Pub. Employees v. Cty. of Sonoma*, 23 Cal.3d 296, 306 (1979) (citing *Blaisdell*, 290 U.S. 398).[14] "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves*, 459 U.S. at 412. Given the class of one created by the Ordinance and its dubious justifications (essentially retrospective in purpose and effect), "this law can hardly be characterized as one enacted to protect a broad societal interest rather than a narrow class." *Spannaus*, 438 U.S. at 248-49 (cleaned up). No public need justifies the retroactive upward adjustment of contractual wages paid by a single employer.

### D. The FAC Sufficiently Alleges Bill Of Attainder Claims

A bill of attainder is "'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a

---

[14] The City views *Sonoma Cty.* and *Baltimore Teachers Union v. Mayor & City Council of Baltimore* 6 F.3d 1012 (4th Cir. 1993), inapposite because they involved contracts to which the government was a party. ECF 79 18:4-11. SCHCC cited these cases for a proposition that applies equally to private contracts, i.e., that "negotiation over wages goes to the 'very heart' of the collective bargaining relationship." ECF 72-1 [Ex. 1, p. 71].

judicial trial.'" *Fowler*, 844 F.3d at 816. The "key features" are: "the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668–69 (9th Cir. 2002). The prohibition functions as "a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *U.S. v. Brown*, 381 U.S. 437, 442 (1965).

The Ordinance singles out SCHCC by requiring it to pay its workers more for risks borne during COVID-19, while relieving other employers of the same liability. It does so solely on the basis of bare accusation, not a judicial determination of guilt. There are at least two areas of factual dispute, both going to the definition of punishment: "[1] whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and [2] whether the legislative record 'evinces a congressional intent to punish.'" *Elgin v. U.S.*, 594 F. Supp. 2d 133, 140 (D. Mass. 2009) (quoting *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 852 (1984)).[15] SCHCC alleges the burdens imposed by the Ordinance are severe, and do not further a nonpunitive legislative purpose. ECF 76 ¶¶233-234. SCHCC alleges "the Ordinance constitutes punishment because it marks SCHCC with the badge of infamy." ECF 76 ¶232. Viewing these facts as true, the Ordinance imposes severe burdens that do not further a nonpunitive purpose. SEIU's assertion that there is no case law linking the "badge of infamy" to a bill of attainder (ECF 84 23:1-1) is incorrect. *See SeaRiver Maritime*, 309 F.3d at 673 (traditional punishments under bills of attainder "often work[ed] a destruction of one's social, cultural, and political existence"). SCHCC also alleges the City's intent to punish SCHCC in response to complaints by SEIU representatives at

---

[15] Courts also consider whether the challenged law falls within the historical meaning of legislative punishment, but all three factors do not need to be met for a law to constitute punishment. *SeaRiver Maritime*, 309 F.3d at 673.

City Council meetings and in private messages. ECF 76 ¶¶79-84, 92-94, 98, 195. Taking these allegations as true, the FAC sufficiently alleges the City Council's intent to punish SCHCC, rendering the Ordinance an unconstitutional bill of attainder.

### E.   The FAC Sufficiently Alleges Procedural Due Process Claims

Where a law does not infringe upon a fundamental right, courts apply rational basis review to determine whether it violates the Due Process clause. *Franceschi v. Yee*, 887 F.3d 927 (9th Cir. 2018). In addition to irrational distinctions the Ordinance creates (*see* Part IV.B.), SCHCC alleges the Ordinance deprives it of substantive due process by failing to provide any exemption. ECF 76 ¶247. Before an employer can be required to comply with a law of general application that could be economically ruinous, due process requires some mechanism to obtain an exemption. In *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 173 (1976), a city rent control ordinance was invalidated because "the inexcusably cumbersome rent adjustment procedure" was "not reasonably related to [its] stated purpose of preventing excessive rents" and thus deprived landlords of due process. "[A] regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties." *Id.* at 165; *CalFarm v. Deukmejian*, 48 Cal.3d 805, 815, 819 (1989) (invalidating Proposition 103 provision prohibiting Insurance Commissioner from approving increase to automobile insurance rate unless insurer was "substantially threatened with insolvency"). Movants do not contest that the Ordinance provides no escape mechanism. Instead, the City asserts *Birkenfeld* does not apply because it is a "price control" case. ECF 79 22:22-23:12. Yet, the City has previously quoted *Birkenfeld's* holding that price control regulations are judged "like any other form of regulation." ECF 70 22:9-10. The Ordinance is distinguishable from cases like *Fortuna*, 673 F.Supp.2d at 1009, where an ordinance was upheld, in part, because there was an economic hardship exemption. Moreover, Movants ignore that a $5/hour wage increase *is* a price control or rate regulation on wages. Should this

1    Court determine SCHCC has not pled sufficient facts to show the Ordinance prevents
2    a fair rate of return, that may be remedied by amendment.

3       **F.    The FAC Sufficiently Alleges A §1983 Claim**

4          To state a §1983 claim, a plaintiff must allege "(1) acts by the defendants (2)
5    under color of state law (3) depriving them of federal rights, privileges or immunities
6    (4) causing them damage." *Shoshone-Bannock Tribes v. Fish Game Comm'n*, 42 F.3d
7    1278, 1284 (9th Cir. 1994). SCHCC alleges the City's enactment of the Ordinance,
8    done under color of state law, deprives SCHCC of rights and privileges under federal
9    law, and alleges damages flowing from the City's action. ECF 76 ¶¶220, 260-261.
10   *See*, *e.g.*, *Golden State II*, 493 at 108-112 (upholding § 1983 action for compensatory
11   damages based on *Machinists* preemption). The City raises a fact issue, arguing there
12   are no damages because "the City has not and does not enforce the Ordinance." ECF
13   79 24:23-25:6. This argument is absurd. During the meet and confer for the Motions,
14   the City argued SCHCC did not have standing to sue and was not injured because the
15   City did not enforce the Ordinance, private individuals did. *See* Declaration of
16   Barbara E. Taylor, ¶2 & Ex. 1. This argument is frivolous: (1) SCHCC does not have
17   to violate the law and wait for a private individual to sue to challenge the Ordinance;
18   (2) SCHCC's "injury" is having to expend money to comply with the Ordinance and
19   an order invalidating the Ordinance and requiring the City to pay damages for
20   compliance costs would redress that injury; (3) City Attorney has authority to enforce
21   the Ordinance per section 620 of the City Charter; (4) City Attorney may sue under
22   the UCL (Cal. Bus. & Prof. Code §§17204 & 17206) for violations; (5) existence of
23   a private right of action does not divest the City's enforcement authority; and (6)
24   recent federal cases the City cited (*e.g., Whole Woman's Health v. Jackson*, No.
25   21A24, 2021 WL 3910722 (U.S. Sept. 1, 2021)) are inapposite. The reincarnation of
26   this argument in support of the absence of damages is equally frivolous.

27   **V.    CONCLUSION**

28          For the foregoing reasons, this Court should deny the Motions to Dismiss.

1    Dated:  October 4, 2021

2

3                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5

6                        By

7                                   DAVID A. SCHWARZ
                                  BARBARA E. TAYLOR

8                                   ZACHARY J. GOLDA

9                      Attorneys for Appellant Southern California Healthcare System, Inc. d/b/a Southern

10                      California Hospital at Culver City

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4813-0011-4940.8     CONSOLIDATED OPP. TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

1    <u>DECLARATION OF BARBARA E. TAYLOR</u>

2        I, Barbara E. Taylor, declare as follows:

3        1.    I am an attorney duly admitted to practice before this Court.  I

4    am Special Counsel to Sheppard, Mullin, Richter & Hampton LLP, attorneys of

5    record for Southern California Healthcare System, Inc. d/b/a Southern California

6    Hospital at Culver City ("SCHCC"). If called as a witness, I could and would

7    competently testify to all facts within my personal knowledge except where stated

8    upon information and belief.  This declaration is submitted in support of SCHCC's

9    Consolidated Opposition to the Motions to Dismiss of the City of Culver City (the

10   "City") and Service Employees International Union--United Healthcare Workers

11   West's ("SEIU").

12       2.    Attached as Exhibit 1 is a copy of the City's meet and confer

13   letter regarding the City's proposed motion to dismiss the first amended complaint.

14       I declare under penalty of perjury under the laws of the United States of

15   America that the foregoing is true and correct.

16       Executed on this 4th day of October, 2021, at Los Angeles, California.

17

18

19

20                                                    _____

21                                                    Barbara E. Taylor

22

23

24

25

26

27

28